# EXHIBIT B

Proposed Amended Complaint
(redlined version)

# UNITED STATES DISTRICT COURT
# DISTRICT OF VERMONT

| | |
|---|---|
| ~~Jane DOE,~~[†] KSENIIA PETROVA, | ) |
| | ) Case No. 2:25-cv-00240-CR |
| Petitioner~~/Plaintiff~~, | ) |
| | ) |
| | ) |
| | ) [PROPOSED] |
| v. | ) |
| | ) FIRST AMENDED PETITION FOR ~~WRIT OF~~ |
| UNITED STATES~~v.~~ | ) ~~HABEAS CORPUS AND~~ |
| | ) ~~COMPLAINT FOR~~ |
| ~~U.S.~~ DEPARTMENT OF | ) WRIT OF HABEAS CORPUS |
| HOMELAND | ) SECURITY; |
| | ) AND |
| | ) COMPLAINT FOR DECLARATORY ~~AND~~ |
| ~~SECURITY;~~ KRISTI NOEM, Secretary ~~of the~~ | ) , AND |
| | ) INJUNCTIVE RELIEF |
| U.S. Department of Homeland Security ~~, in her~~ | ); |
| ~~Official capacity;~~ | ) |
| PETE R. FLORES, Acting Commissioner, | ) |
| U.S. Customs and Border Protection; | ) |
| | ) |
| JULIO CARAVIA, Director, | ) |
| Boston Logan Airport Port of Entry, | ) |
| U.S. Customs and Border Protection; | ) |
| | ) |
| PAMELA J. BONDI, U.S. Attorney General; | ) |
| | ) |
| THERESA MESSIER, | ) |
| Superintendent, | ) |
| Chittenden Regional Correctional | ) |
| Facility, ~~in her official capacity,~~ | ) |
| South Burlington, VT | ) |
| | ) |
| PAUL CAMPBELL, Warden, | ) |

---

[†] ~~The complaint is filed under a pseudonym to protect Petitioner-Plaintiff from the persecution she fears in her country of origin. Undersigned counsel will file a motion for leave to appear under a pseudonym as expeditiously as possible and disclose her identity to the Court and opposing counsel.~~

Ouachita Correctional Center, Monroe, LA    )

    )

KEITH DEVILLE, Warden,    )

Richwood Correctional Center, Monroe, LA    )

    )

    Respondents/Defendants.    )

    )

## ~~INTRODUCTION~~

## SUMMARY OF THE CASE AND REQUESTED RELIEF

1.      This is ~~aan amended~~ petition for a writ of habeas corpus and a complaint for declaratory and injunctive relief on behalf of ~~Jane Doe (Ms. Doe),~~Kseniia Petrova, a research scientist at Harvard University, ~~who is presently detained in Chittenden, Vermont by U.S. Immigration and Customs Enforcement (ICE) following the unlawful cancellation of her valid research visa and purported issuance of an expedited removal order~~whom the United States government has unlawfully detained for over three months. The detention stems from arbitrary, capricious, and unlawful actions by U.S. Customs and Border Protection (CBP) at Boston Logan ~~International~~ Airport on February 16, 2025.~~Both CBP and ICE have refused to provide Ms. Doe's counsel with copies of the alleged final order of removal and the sworn statement taken from her at the time of entry in violation of her statutory and regulatory rights. The position of Respondent Defendant U.S. Department of Homeland Security (DHS) is that Ms. Doe cannot be released because she expressed a fear of return to Russia, and this must await an interview before an asylum officer to determine whether her fear is credible before they will consider release on parole. However, U.S. Citizenship and Immigration Services (USCIS), the entity responsible for conducting that credible fear interview, has refused to schedule it despite an expedited request to do so.~~

        ~~1.      This matter arises from Ms. Doe's inadvertent failure to declare on a customs form non-hazardous, noninfectious, and non-toxic frog embryos that she was bringing to the United States at the request of Dr. Leond Peshkin, the leader of the research group at Harvard Medical School under whose leadership she works. The law provides a process and penalties for failing to disclose articles on a customs form as well as remittance of liability. There was no cause for CBP to instead follow an entirely different process, that of expedited removal in which~~

~~CBP erroneously looked beyond Ms. Doe's valid research visa, canceled that visa, issued a baseless expedited removal order, apprehended her, and is continuing to detain her. ICE and CBP have compounded their errors by refusing to provide counsel with documentation of the encounter. Moreover, USCIS has yet to expedite the interview in which Ms. Doe can demonstrate her fear of deportation to Russia is credible and thereafter qualify for release from detention.~~

~~2.      Accordingly, to vindicate Ms. Doe's statutory, constitutional, and regulatory rights, this Court should grant the instant petition for a writ of habeas corpus pursuant to 8 U.S.C. § 1252(e)(4) to require that DHS place Ms. Doe in removal proceedings before an immigration judge and/or reinstate her valid J-1 visa (Count I), issue an order compelling CBP and ICE to release to counsel all paperwork related to the order (Count II), or, alternatively, issue an order compelling USCIS to expeditiously schedule and conduct a credible fear interview (Count III). Moreover, this Court should exercise its authority to order DHS not to transfer Ms. Doe out of this District and away from counsel while this case is pending.~~

**2.**      The original petition was filed on February 23, 2025, while Ms. Petrova was detained at the Chittenden Regional Correctional Facility in Vermont. It invoked habeas jurisdiction under 8 U.S.C. § 1252(e)(2), based on the government's assertion that Ms. Petrova had been ordered removed under the expedited removal statute, 8 U.S.C. § 1225(b)(1)(A)(i). The petition accordingly sought the limited relief authorized by § 1252(e)(4)(B).

**3.**      The government has now conceded that no expedited order of removal was ever issued against Ms. Petrova. As such, she is not subject to the limitations set forth in § 1252(e)(4)(B) and now seeks immediate release under 28 U.S.C. § 2241.

**4.**    Respondents have repeatedly confirmed that CBP's decision to deem Ms. Petrova inadmissible and to cancel her J-1 visa was based on her failure to declare research materials she was transporting from *Institut Curie* in France to her lab at Harvard University.

**5.**    Ms. Petrova's subsequent detention by U.S. Immigration and Customs Enforcement (ICE) resulted directly from CBP's inadmissibility finding and visa cancellation. Because CBP lacked a lawful basis for either action, Ms. Petrova challenged the resulting ICE detention as blatantly unlawful.

**6.**    On May 14, 2025—less than two hours after this Court set a bail hearing to consider Ms. Petrova's release—the U.S. Department of Justice initiated her arrest and transfer from ICE to U.S. Marshals custody. Simultaneously, U.S. Department of Homeland Security (DHS) lodged an immigration "detainer" expressly designed to ensure Ms. Petrova's re-detention by ICE upon any release from criminal custody.

**7.**    Upon information and belief, Ms. Petrova is currently detained at the Ouachita Correctional Center in Monroe, Louisiana. On May 15, 2025, the United States District Court for the Western District of Louisiana issued an Order of Commitment to Another District, directing the U.S. Marshals to transport her to Boston, Massachusetts, to face a criminal charge of smuggling—based on the same alleged failure to declare the research samples Ms. Petrova had in her possession on February 16, 2025, at Logan Airport.

**8.**    This Court should exercise its authority to enjoin DHS from re-detaining Ms. Petrova upon her potential release on bail from criminal custody. Alternatively, this Court should prohibit her transfer outside New England—away from her immigration and criminal counsel, her colleagues at Harvard University, and potential witnesses relevant to her removal proceedings in immigration court—if she is re-detained by ICE.

## JURISDICTION

~~2.~~**9.**    This action arises under the Constitution of the United States ~~and~~**,** the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*~~.~~**.,** and the Tariff Act of 1930, 19 U.S.C. §§ 1202~~, 1683g~~.

~~3.~~**10.**    This Court has habeas jurisdiction under ~~8 U.S.C. § 1252(e)(2) (habeas corpus proceedings),~~ 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). ~~Under 8 U.S.C. § 1252(e)(2)(B), this Court has jurisdiction to determine whether, in fact, the removal order against Ms. Doe was lawful such that she was "ordered removed under [8 U.S.C. § 1225(b)(1)]." Under 8 U.S.C. § 1252(a)(4)(B), this Court is authorized to "require [Ms. Doe] be provided a hearing in accordance with [8 U.S.C. § 1229a]" in which she can "thereafter obtain judicial review of any resulting final order of removal pursuant to [8 U.S.C. § 1252(a)(1)]." The Court may also grant relief pursuant to the habeas corpus statutes,~~**The Court may grant habeas relief pursuant to** 28 U.S.C. § 2241 *et seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

~~4.~~**11.**    This Court **also** has subject matter jurisdiction under **the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., and** 28 U.S.C. § 1331 (federal question~~) and 28 U.S.C. § 1361 (Mandamus Act).~~**).** **The APA directs that courts "shall hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 702(2)(A).** ~~The government has waived its sovereign immunity pursuant to 5 U.S.C. § 702.~~ The Court may grant declaratory and injunctive relief pursuant to ~~28 U.S.C. §§ 2201-02,~~ 5 U.S.C. §§ 702, 706~~.~~**,;** 28 U.S.C. ~~§ 1361,~~**§§ 2201–02;** and 28 U.S.C. § 1651. **The government has waived its sovereign immunity pursuant to 5 U.S.C. § 702.**

12.     This Court has jurisdiction over the alleged FOIA violation under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.*, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act). CBP's failure to make a determination on Petitioner's properly filed FOIA request within the statutory time period constitutes a constructive denial of her FOIA request. Thus, Petitioner is deemed to have exhausted her administrative remedy. 5 U.S.C. § 552(a)(6)(C)(i).

## VENUE

5.13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(e).) because this is a civil action in which Respondents Defendants are is brought against officers or employees of the United States, acting in their official capacity, and Ms. Doe is currently Petitioner was detained at the Chittenden Regional Correctional Facility in Chittenden South Burlington, Vermont, which is within the jurisdiction of this District, a substantial part at the time of the events or omissions giving rise to her claims occurred in initial filing. Although Petitioner was subsequently transferred outside this District, and no real property is involved in this action. Court retains jurisdiction under *Ex parte Endo*, 323 U.S. 283, 306 (1944); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("Endo stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction.").

## REQUIREMENTS OF 28 U.S.C. § 2243

6.14.    With respect to Ms. Doe's Petitioner's habeas claim, the Court must grant the petition for

writ of habeas corpus or issue an order to show cause (OSC) to Respondents "forthwith," unless ~~Ms. Doe~~ Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

~~7.~~ 15.   Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## **PARTIES**

~~8.~~ 16.   Petitioner ~~Plaintiff Jane Doe~~ Kseniia Petrova is native of Russia and a resident of Boston, Massachusetts. She has been conducting research at Harvard University since May 2023 pursuant to a valid J-1 exchange visitor visa. She is currently detained at the ~~Chittenden Regional~~ Ouachita Correctional ~~Facility~~ Center in ~~Chittenden, Vermont.~~ Monroe, Louisiana.

~~9.~~ 17.   Respondent ~~Defendant~~ U.S. Department of Homeland Security is the federal agency responsible for implementing and enforcing the Immigration and Nationality Act and the Tariff Act of 1930. DHS oversees its component agencies, including U.S. Customs and Border Protection, and U.S. Immigration and Customs Enforcement~~, and U.S. Citizenship and Immigration Services.~~. Relevant here, CBP is responsible for the inspection and admission of noncitizens arriving in the United States, and ICE is responsible for the detention and removal of noncitizens~~, and U.S. Citizenship and Immigration Services' asylum office is responsible for conducting interviews of noncitizens who express a fear of return to their country of origin~~.

~~10.~~ 18.   Respondent ~~Defendant~~ Kristi Noem is sued in her official capacity as the Secretary of the

U.S. Department of Homeland Security (DHS). In this capacity, she is responsible for the

implementation and enforcement of the Immigration and Nationality Act and Tariff Act of 1930.

Ms. Secretary Noem is responsible for the oversight of CBP, and ICE, and USCIS and is a legal

custodian of Ms. DoePetrova.

19.    Respondent Pete R. Flores is sued in his official capacity as Acting Commissioner of the

U.S. Customs and Border Protection, a component agency of DHS. Mr. DefendantFlores has

served as the Acting Commissioner of CBP since January 20, 2025, overseeing all CBP

operations nationwide.

20.    Respondent Julio Caravia is sued in his official capacity as the Director of the Boston

Logan Airport Port of Entry, U.S. Customs and Border Protection. As Port Director, Mr. Caravia

is responsible for CBP operations at Boston Logan International Airport in Boston,

Massachusetts.

21.    Respondent Theresa Messier is the Superintendent of the Chittenden Regional

Correctional Facility, and she has .  When the initial complaint was filed, Superintendent Messier

had physical custody of Ms. DoePetrova pursuant to the facility's contract with ICE to detain

noncitizens. Ms. Messier is a legal

22.    Respondent Paul Campbell is the Warden of the Ouachita Correctional Center in Monroe,

Louisiana.  Because Petitioner is currently detained at that facility, Warden Campbell is her

immediate custodian of Ms. Doe.for purposes of this action.

23.    Respondent Keith Deville is the Warden of the Richwood Correctional Center, Monroe,

Louisiana.  Upon information and belief, Petitioner was continuously detained at the Richwood

Correctional Center from February 24, 2025 to May 14, 2025 and is likely to be returned to that

facility upon release from criminal custody.

## **LEGAL FRAMEWORK**

### *Process and Penalties for Failure to Declare*

~~11.~~24.  The law governing the process and penalties for failure to declare an article on a customs

form or upon interrogation at the time of entry to the United States is the Tariff Act of 1930,

also known as the Smoot-Hawley Act. Pursuant to 19 U.S.C. § 1497, the statute provides:

> (a) In general
> (1) Any article which—
> (A) is not included in the declaration and entry as made or transmitted; and
> (B) is not mentioned before examination of the baggage begins—
> (i) in writing by such person, if written declaration and entry was required, or
> (ii) orally, if written declaration and entry was not required;
>
> shall be subject to forfeiture and such person shall be liable for a penalty determined under paragraph (2) with respect to such article.
> (2) The amount of the penalty imposed under paragraph (1) with respect to any article is equal to—
> ~~article is equal to~~
> (A) if the article is a controlled substance, either $500 or an amount equal to 1,000 percent of the value of the article, whichever amount is greater; and
> (B) if the article is not a controlled substance, the value of the article.

~~12.~~25.  The implementing regulations provide that CBP may seize "[a]ny article in the baggage

of a passenger arriving from a foreign country which is not declared" and "the personal penalty

prescribed by section 497, Tariff Act of 1930 ~~(19 U.S.C. 1497),~~(19 U.S.C. 1497), *shall* be

demanded from the passenger." 19 C.F.R. § 148.18(a) (emphasis added). ~~Furthermore, if~~If CBP

elects not to seize the article, "a claim for the personal penalty *shall* be made against the person

who imported the article without declaration." *Id.* (emphasis added).

~~13.~~26.  The regulations and guidelines further permit remission or mitigation of liability ~~in the

form of forfeiture of.~~ Thus, CBP is authorized to reduce or forgo the personal penalty and

forfeiture of property. 19 C.F.R. § 148.18(b); Guidelines for Disposition of Violations of 19 U.S.C. 1497, 19 U.S.C. 1497, available at https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/Mitigation-Guidelines-Seizures-Penalties-Passenger-Failure-to-Declare.pdf (last visited on Feb. 23, 2025); Appendix A to Part 171—Guidelines for Disposition of Violations of 19 U.S.C. 1497, available at https://www.ecfr.gov/current/title-19/chapter-I/part-171/appendix-Appendix%20A%20to%20Part%20171 (last visited Feb. 23 on May 21, 2025).

27.    The two penalties for failure to declare—seizure of the undeclared item and a monetary penalty under 19 U.S.C. § 1497—are confirmed in the "You Have Arrived" video posted by the U.S. Customs and Border Protection on YouTube: https://www.youtube.com/watch?v=WHt2xnXk8AI (last visited on May 21, 2025).

### *Smuggling (18 U.S.C. § 545)*

28.    18 U.S.C. § 545 criminalizes the unlawful importation of "merchandise" into the United States and penalizes the knowing receipt, concealment, or sale of such unlawfully imported goods:

> Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—
>
> Shall be fined under this title or imprisoned not more than 20 years, or both.

29.　　When the inspecting CBP officer determines that there is a potential for a criminal charge due to a passenger's failure to declare an item, the usual protocol is for the CBP officer to summon the duty agent of the ICE Homeland Security Investigations (HSI) stationed at the port of entry. **Exhibit A, Declaration of Peter A. Quinter**. The HSI agent then interviews the passenger and decides, sometimes after a consultation with a duty attorney at the local U.S. Attorney's Office, whether criminal charges should be pursued against the passenger. *Id.*

### *Expedited Removal and Credible Fear Interviews Process*

14.30.　The expedited removal statute provides that the a process for removing noncitizens from the United States in an expedited fashion without the commencement of removal proceedings against the noncitizen. The process begins—and often effectively concludes—with an inspection by an ICE or CBP immigration officer. The officer must, first, determine if the individual is a noncitizen who is inadmissible because he or she has engaged in certain kinds of fraud to obtain an immigration benefit or lacks valid entry documents. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii) (citing 8 U.S.C. § 1182(a)(6)(C), (a)(7)).

15.31.　If the officer concludes that the individual is inadmissible under an applicable ground,one of those two grounds (i.e., either fraud to obtain an immigration benefit or lack of valid entry documents), the officer "shall," with the concurrence of a supervisor, 8 C.F.R. § 1235.3(b)(7), order the individual removed "without further hearing or review unless the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

16.32.　At any time during the expedited removal process, the officer may permit the individual to withdraw her application for admission and allow the person to depart the country without issuing an expedited removal order. 8 U.S.C. § 1225(a)(4).

~~17.~~**33.**  For those who express a fear of return to their countries of origin, the expedited removal statute provides a limited additional screening. But the additional screening does not remotely approach the type of process that asylum seekers receive in regular immigration proceedings before an immigration judge under 8 U.S.C. § 1229a.

~~3.~~ During the inspection process, if an individual indicates an intention to apply for asylum or expresses fear of return to his or her country of origin, the immigration officer must refer the individual for a rudimentary screening interview with an asylum officer, referred to as a "credible fear" interview, to determine whether the expedited removal process should be placed on hold while the individual ~~should be able to apply~~petitions for asylum and related humanitarian relief.  8 U.S.C. § 1225(b)(1)(A)(ii), (B); 8 C.F.R. §§ 235.3(b)(4), 208.30(d)~~()~~(e).

~~4.     To prevail at the credible fear interview,~~In order for the ~~applicant~~expedited removal process to be suspended, the noncitizen must show "a significant possibility, taking into account the credibility of the statements made by the [noncitizen] in support of the [noncitizen's] claim and such other facts as are known to the officer, that the [noncitizen] could establish eligibility for asylum."  8 U.S.C. § 1225(b)(1)(B)(v).

~~18.~~**34.**  ~~Applicants~~Noncitizens who satisfy the credible fear standard after the issuance of an expedited removal order have their expedited removal orders cancelled by operation of law and are placed into ~~regular~~ removal proceedings under 8 U.S.C. § 1229a, where they have the opportunity to apply for asylum and other relief from removal, present and cross-examine evidence before an immigration judge (IJ), preserve objections, and appeal any adverse decision to the Board of Immigration Appeals and court of appeals.  8 C.F.R. § 208.30(f); *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

~~19.~~**35.**  Applicants ~~who do~~whom ICE has deemed to have not ~~pass~~satisfied the credible fear

~~interview~~standard may request review of the decision by an IJ, but ~~do~~are not ~~receive~~entitled to a full hearing or any subsequent administrative appellate review. ~~8~~ U.S.C. § 1225(b)(1)(B)(iii)(II)~~()~~-(III); *see also* 8 C.F.R. § 208.30(g)(1).~~-~~

~~20.~~36.  During the inspection and credible fear stages of expedited removal, DHS typically detains the noncitizen. *See* 8 U.S.C. §§ 1225(b)(1)(B)(ii), (iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii). In *Jennings v. Rodriguez*, the Supreme Court held that individuals in expedited removal who demonstrate a credible fear are not statutorily eligible for bond hearings. 583 U.S. 281, 297-303 (2018).

~~5.      An expedited removal order comes with significant consequences beyond removal itself. Noncitizens with expedited removal orders are subject to a five-year bar on admission to the United States unless they qualify for a discretionary waiver.  8 U.S.C. § 1182(a)(9)(A)(i); 8 C.F.R. § 212.2.~~

~~6.      Congress provided limited habeas review in individual cases. Relevant here, a federal district court may review whether the individual "was ordered removed under 8 U.S.C. § 1225(b)(1). *See* 8 U.S.C. § 1252(e)(2)(B). Although the statute provides that such review must be limited to "whether such an order in fact was issued and whether it relates to the petitioner" and may not include review of whether a noncitizen "is actually inadmissible or entitled to any relief from removal," *see* 8 U.S.C. § 1252(e)(5), if the Court finds in the petitioner's favor, the court can order placement in removal proceedings under 8 U.S.C. § 1229a, *see* U.S.C. § 1252(e)(4)(B).~~

~~7.      In *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), the Supreme Court upheld a lack of habeas jurisdiction where the noncitizen petitioner entered the United States without inspection and then challenged flaws in the credible fear proceeding and sought a "new~~

opportunity to apply for asylum" and "the opportunity to remain lawfully in the United States." 591 U.S. at 115, 119. Concurring in the judgement, Justice Breyer expressed concern about future readings of the decision to foreclose *all* habeas claims, including a claim of "natural-born U.S. citizen[ship]," "a claim that rogue immigration officials forged the record of a credible-fear interview that . . . never happened," or a claim that an asylum officer made a "dead-wrong legal interpretation." *Id*. at 151 (Breyer, J., concurring in the judgment).

### *Statutory and Regulatory Requirements to Disclose Entry-Related Records*

8. The Immigration and Nationality Act mandates the disclosure of all records related to Ms. Doe's entry and expedited removal proceeding. It provides:

> In any removal proceeding under part IV of this subchapter against any person, the burden of proof shall be upon such person to show the time, place, and manner of his entry into the United States, but in presenting such proof *he shall be entitled* to the production of his visa or other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry in the custody of the Service.

8 U.S.C. § 1361 (emphasis added). Expedited removal proceedings under 8 U.S.C. § 1225(b) is in Part IV of the subchapter. *See also* 8 U.S.C. § 1229a(c)(2) (providing noncitizens "shall have access to" a "visa or other entry document, if any, and any other records and documents" "pertaining to the [noncitizen's] admission or presence in the United States" in meeting their burden of proof in removal proceedings).

9. The regulations implement these statutory rights:

Service upon and action by attorney or representative of record.

(a) *Representative capacity*. Whenever a person is required by any of the provisions of this chapter to give or be given notice; to serve or be served with any paper other than a warrant of arrest or a subpoena; to make a motion; to file or submit an application or other document; or to perform or waive the performance of any act, such notice, service, motion, filing, submission, performance, or waiver shall be given by or to, served by or upon, made by or, or requested of the attorney or representative of record, or the person himself if unrepresented.

15

*See* 8 C.F.R. § 292.5(a). In immigration cases, a signed Form G-28 (Notice of Entry of Appearance as Attorney or Accredited Representative) is proof of attorney-client relationship.

**37.** At any time during the credible fear stages of expedited removal, ICE has discretionary authority to release noncitizens on parole, provided they "present neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5), 8 C.F.R. 212.5(b).

### *Visa Cancellations by CBP Officers*

**38.** Pursuant to 8 U.S.C. § 1201(i), the authority to revoke and/or cancel properly issued visas rests with consular officials or the Secretary of State: "After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation."

**39.** Immigration officers in the United States have limited authority "to revoke a valid visa by physically canceling it" in nine distinct instances described in 22 C.F.R. § 41.112(e). Relevant here, an immigration officer is authorized to revoke a visa when the noncitizen is "removed from the United States pursuant to [8 U.S.C. § 1225(b)]" or when the noncitizen "requests and is granted permission to withdraw the application for admission." 22 C.F.R. § 41.112(e)(2), (e)(3).

### *Freedom of Information and Privacy Act*

**40.** FOIA requires each agency, upon a request for records: (a) to conduct a search reasonably calculated to uncover all responsive documents; (b) to make the records available in the form or format requested if they are readily reproducible in that format; and (c) to promptly make available responsive records. 5 U.S.C. § 552(a)(3)(A)–(C).

**41.** FOIA also requires the agency to make a determination of whether it will comply with the request within 20 business days. 5 U.S.C. § 552(a)(6)(A)(i); 6 C.F.R. § 5.6(c).

42.    If the agency finds that unusual circumstances apply, it must request, by written notice, no more than an additional 10 business days to issue its determination. 5 U.S.C. § 552(a)(6)(B)(i).

43.    If an agency fails to comply with the time periods set forth in the statute, the requester is "deemed to have exhausted his administrative remedies" and may seek judicial review. 5 U.S.C. § 552(a)(6)(C)(i).

## STATEMENT OF FACTS

21.44.  Ms. DoeKseniia Petrova is a 30-year-old research scientist born in Russia. On May 11, 2023, she entered the United States on a valid J-1 visa. A J-1 visa is a non-immigrant visa that allows people to participate in exchange visitor programs in the United States. The programs are intended to promote cultural exchange and international cooperation. Research scholars and professors regularly hold J-1 status.

22.45.  Ms. DoePetrova has been conducting groundbreaking scientific research at Harvard University under Dr. Leond Peshkin, a Principal Research Scientist in Systems Biology and a leading scholar in the fields of embryology and the biology of aging. The research she has been conducting "is essential for understanding how cells and organisms develop, grow, and age, and how these processes go awry in diseases, including cancers." **Exhibit** AC, **Letter from Martin Chalfie**.

23.46.  Since May 2023, Ms. DoePetrova has traveled in and out of the United States on several occasions without issue. She has never violated the terms or conditions of her nonimmigrant status.

24.47.  In lateOn or about January 23, 2025, Ms. DoePetrova traveled to Europe for personal reasons.on vacation.

**48.** Prior to her return from the trip, Dr. Leon Peshkin——Ms. Petrova's boss at Harvard University——asked Ms. Doeher to bring histological samples of frog embryos from his scientific collaborators at the *Institut Curie Centre de Recherche* in France back to Harvard, so that their lab could continue processing and analyzing data from them. Exhibit A.

25.**49.** The samples were non-hazardous, noninfectious, and non-toxic, intended solely for fundamental research purposes. Exhibit BThe embryos were non-living, embedded in paraffin, and "incapable of growing or transmitting disease. (Similar material can be found in high school and college biology laboratories throughout the United States.)." **Exhibit A**.

**50.** Under applicable customs laws and regulations, the embryos were not classified as prohibited items and did not require a permit for importation into the United States. **Exhibit B, Declaration of U.S. Customs Broker**.

26.**51.** Dr. Peshkin's request for Ms. DoePetrova to transport the samples in person stemmed from his prior experience in shipping similar samples that were either seriously delayed or lost in transit. Exhibit ADkt. 1-2.

27.**52.** Having no prior experience transporting biologicalresearch samples, Ms. DoePetrova was unfamiliar with U.S. customs requirements regarding these samples. She simply placed the samples in her luggage, and did not declare them to CBP at the time of her entry on Sunday, February 16, 202 45, at Boston Logan International Airport.

28.**53.** At the airport, Ms. DoePetrova presented her valid J-1 visa to the inspecting CBP officer, who verified her documentation and continuous J-1 status. The officer then placed a J-1 an admission stamp in Ms. Doe'sher passport, indicating that she was admittedher admission to the United States as a J-1 visa holder. Around the same time, CBP generated an I-94 Record of Admission for Ms. Petrova in accordance with standard CBP protocols.

29.54. At the luggage conveyor belt, Ms. DoePetrova was approached by another CBP officer and escorted to a room for questioning and examination of her luggage.

30.55. Upon discovery of the samples following a search of her luggage, and despite her attempts to explain, the CBP officer failed to pursue the statutory and regulatory process for failure to declare an article in luggage. Ms. Rather, the officer marked Ms. Doe's J-1 visa in her passport as "cancelled." Petrova was neither served with any customs-related documentation nor issued a penalty under 19 U.S.C. § 1497 for failure to declare an article in her possession.

56. Because Ms. Petrova's research samples were seized, the CBP officer was required to "refer the matter to the nearest CBP Fines, Penalties, and Forfeitures Office, which would issue a formal Notice of Seizure." **Exhibit A**. CBP has never provided a Notice of Seizure to Ms. Petrova or her counsel.

57. Instead of following the statutory and regulatory requirements to address Ms. Petrova's alleged customs violation, the officer referred Ms. Petrova to another CBP officer who conducted a second interview into her immigration status, a process commonly referred to as "secondary inspection."

58. This "secondary" officer asked Ms. Petrova a series of purely customs-related questions, and then abruptly declared Ms. Petrova "inadmissible pursuant to INA 212(a)(7)(A)(i)(I) as an immigrant without a valid and unexpired immigrant document." (*See* Dkt. 24 at 14)

59. The "secondary" officer, or another CBP officer at Logan, then marked the J-1 visa in Ms. Petrova's passport as "CANCELLED – BOS." **Exhibit D**, **Canceled J-1 Visa**. Upon information and belief, the J-1 admission stamp in Ms. Petrova's passport was also canceled, as was her I-94 Record of Admission, as per CBP's protocol.

**60.** After putting the "CANCELLED – BOS" stamp on Ms. Petrova's visa, the CBP officer added some handwritten notations on the face of the canceled visa. Id. These notations reference 22 C.F.R. § 41.122—which allows immigration officers to cancel a visa for someone "who requests and is granted permission to withdraw the application for admission"—and 8 U.S.C. § 1182(a)(7)(A)(i)(I), which renders inadmissible "any immigrant …who is not in possession of a valid unexpired immigrant visa."

**61.** The handwritten notations did not include any reference to 8 U.S.C. § 1182(a)(7)(B) which renders inadmissible "any *nonimmigrant* who… is not in possession of a valid *nonimmigrant* visa…"

~~31.~~**62.** There was no legal basis for the CBP officer to cancel Ms. ~~Doe's J-1 visa. It was valid and she~~Petrova's valid, unexpired J-1 visa. Ms. Petrova was never granted permission to withdraw her application for admission. *See* 22 C.F.R. § 41.112(e)(3). She had ~~never violated the terms or conditions of J-visa status~~always maintained her lawful nonimmigrant status and had been previously inspected and admitted to the United States as a bona fide nonimmigrant on multiple occasions.

**63.** ~~The CBP officer then went on to present Ms. Doe~~When announcing the filing of the criminal complaint against Ms. Petrova on May 14, 2025, the United States Attorney for the District of Massachusetts once again confirmed that Ms. Petrova's visa was canceled as a result of her customs violation. U.S. Attorney's Office, District of Massachusetts. (May 14, 2025). *Russian National Charged with Smuggling Biological Material Into Boston* [Post]. https://x.com/DMAnews1/status/1922765637815849015 (last visited on May 21, 2025).

32.**64.** After declaring Ms. Petrova inadmissible, the "secondary" officer presented Ms. Petrova with a choice: to withdraw her application for admission and apply for a new visa overseas or be subjected to expedited removal and barred from admission to the United States for five years.

33.**65.** Ms. ~~Doe~~Petrova requested that her admission be withdrawn and asked to return to Paris, France, from whence her journey originated.

**66.** ~~The CBP officer continued to question~~ Ms. ~~Doe, asking her whether she had a fear of returning home. Ms. Doe stated that she had a~~ Petrova has a valid Schengen visa (which allows her entry to 29 countries in Europe, including France~~) and had no fear of returning to France, but did have a~~ **). Exhibit E, Petitioner's Schengen Visa**.

**67.** Instead of granting Ms. Petrova permission to withdraw her application for admission, the CBP officer then asked her: "Would you like the U.S. government to contact the Russian government to let them know you are here?" Dkt. 24 at 15.

34.**68.** Ms. Petrova requested that the Russian government not be contacted and indicated that she had a fear of returning to Russia, ~~where she faced past persecution for her political activities~~stating "I am afraid the Russian Federation will kill me for protesting against them." *Id*.

35.**69.** At this point CBP ~~subsequently~~ apprehended and detained Ms. ~~Doe~~Petrova.

~~10.    During questioning, CBP officers created Form I-867A (Record of Sworn Statement) from Ms. Doe. *See* 8 C.F.R. §§ 235.3(b)(2), (b)(4).~~

36.**70.** CBP then issued Form I-860 (Notice and Order of Expedited Removal) alleging that Ms. ~~Doe~~Petrova is subject to expedited removal under 8 U.S.C. § 1225(b)(1) for being inadmissible under 8 U.S.C. § 1182(a)(7~~) for lacking a valid entry document. The portion of the form given to Ms. Doe is only the notice and determination of inadmissibility. The bottom portion of the form, containing the expedited removal order signed by a supervisory officer, is not complete. Exhibit~~

C. )(A)(i)(I) for being "an immigrant not in possession of a valid, unexpired immigrant visa." Dkt. 1-4. As a justification for the inadmissibility finding, the notice stated that Ms. Petrova was "an intending immigrant …as [she] claimed credible fear to return to [her] home country of Russia," *id.,* even though Ms. Petrova did not express a fear of the Russian Federation until *after* the CBP officer had made the inadmissibility finding. Dkt. 24 at 14-15.

37.71.  Neither CBP nor ICE have provided counsel with a completed Form I-860. However, on information and belief, the The bottom portion of the form was completed and signed, and the purported Form I-860, containing the expedited removal order was issued on February 16, 2025to be signed by a supervisory officer, was never completed. *Id*

38.72.  On February 17, 2025, Ms. DoePetrova was then transferred to ICE custody, where she now awaits and transported to the Chittenden Regional Correctional Facility in South Burlington, Vermont, purportedly to await her credible fear interview. Exhibit D.  under 8 U.S.C. § 1225(b)(1)(A)(ii).

11.    On Wednesday, February 19, 2025, undersigned counsel Gregory Romanovsky contacted David W. Johnston, Supervisory Detention and Deportation Office in St. Albans, Vermont to request all documents related to Ms. Doe's interactions with CBP. Officer Johnston told Mr. Romanovsky that he needed to work with CBP to get the requested documentation.

12.    On Thursday, February 20, 2025, Mr. Romanovsky emailed the Chief CBP Officer at Boston Logan International Airport and requested the sworn statement and any additional documentation related to the expedited removal order. Exhibit E. The Chief CBP Officer instructed Ms. Romanovsky counsel to "work with ERO with this." Id.  "ERO" stands for Enforcement and Removal Operations, a subdivision within ICE.

13. Mr. Romanovsky then emailed Officer Johnston in St. Albans, Vermont, and requested this sworn statement. Exhibit F. To date, neither Officer Johnston nor anyone else at the ICE ERO office in St. Albans has respond to counsel's inquiry.

39.73. On Friday, February 21, 2025, Mr. Romanovsky Petitioner's counsel submitted a request to the Acting Field Officer Director of the Boston ERO Field Office to release Ms. Doe on for parole under 8 U.S.C. § 21182(d)(5). Exhibit G.), along with supporting documentation demonstrating that Ms. Petrova poses neither a danger to the community nor a flight risk. The request was submitted to the Acting Director of the ICE's Boston Enforcement and Removal Operations (ERO) Field Office, which has jurisdiction over detainees at the Chittenden Regional Correctional Facility. Dkt. 32-2. The supporting materials included affidavits from Ms. Petrova's friends and colleagues, a letter from her landlord, a letter from Senator Edward Markey, and other documentation attesting to her exemplary character and community ties. *Id.* The Boston ERO Field Office has notnever responded to this request.

74. On the same day, February 2123, 2025, Mr. Romanovsky submittedPetitioner filed a request to the USCIS Newark Asylum Office to expedite the schedulingpetition for a writ of Ms. Doe'shabeas corpus and a complaint for declaratory and injunctive relief with this Court. Dkt. 1.

75. On February 24, 2025, with no notice to her counsel, Petitioner was transferred to the Richwood Correctional Center in Monroe, Louisiana.

76. Petitioner was never afforded an opportunity to have a credible fear interview. Exhibit H. The Newark Asylum Office under 8 U.S.C. § 1225(b)(1)(A)(ii). Instead, ICE served her with a Notice to Appear and placed her in full removal proceedings under 8 U.S.C. § 1229a, in an attempt to moot both her habeas petition and her mandamus claim before this Court. Dkt. 24 at 24, ¶ 5.

77.     On March 13, 2025, Petitioner's counsel submitted a second request for parole under 8 U.S.C. § 212(d)(5), along with supporting documentation demonstrating that Ms. Petrova poses neither a danger to the community nor a flight risk. The request was submitted to the deportation officer assigned to Ms. Petrova's case. The supporting materials again included affidavits from Ms. Petrova's friends and colleagues, a letter from her landlord, and other documentation attesting to her exemplary character and community ties. *Id.*

78.     On March 14, 2025, ICE denied Ms. Petrova's parole request citing concerns that she posed a flight risk. Dkt. 32-3.

79.     After several reconsideration requests by Petitioner's counsel, ICE produced a new decision dated March 30, 2025, denying Ms. Petrova's request for release on parole, this time finding that Ms. Petrova is not only a flight risk, but a danger to the community. Dkt. 32-4.

80.     On April 10, 2025, Petitioner's counsel submitted a request under the Freedom of Information Act (FOIA) to U.S. Customs and Border Protection, seeking "any and all records regarding [Ms. Petrova's] entry/admission at Boston Logan Airport …on February 16, 2025" and "any and all records related to an alleged customs violation on or around February 16, 2025." **Exhibit F, Confirmation of FOIA Submission**.

~~40.~~**81.**  CBP has not responded to ~~counsel's~~the FOIA request.

82.     On May 14, 2025—within two hours of this Court setting a bail hearing to consider Ms. Petrova's release—the U.S. Department of Justice initiated her arrest and transfer from ICE custody into the custody of the United States Marshals Service.

83.     On the same day, the government unsealed a criminal complaint charging Ms. Petrova with smuggling—based on the same alleged failure to declare the research samples that she had in her possession on February 16, 2025, at Logan Airport. **Exhibit G, Criminal Complaint and Affidavit**.

**84.**    Simultaneously, the U.S. Department of Homeland Security (DHS) issued a memorandum stating that ICE has "lodged an immigration detainer" in Ms. Petrova's case. Such "detainer" requires U. S. government agencies, including the Federal Bureau of Prisons and the U. S. Marshalls Service, to turn Ms. Petrova over to ICE to be re-detained in immigration custody upon any release from criminal custody. **Exhibit H**, **United States Government Memorandum**.

**85.**    The same U.S. Government memorandum acknowledges that Ms. Petrova "does not pose a danger to the community," directly contradicting ICE's March 30, 2025 determination. *Id*.

**86.**    In its motion to seal the complaint filed on May 12, 2025—while Petitioner remained in ICE custody at the Richwood Correctional Center—the government claimed that that public disclosure of the criminal complaint might jeopardize...the government's ability to arrest the defendant." **Exhibit I**, **Motion to Seal Complaint**.

**87.**    Upon information and belief, Ms. Petrova is currently detained at the Ouachita Correctional Center in Monroe, Louisiana. On May 15, 2025, the United States District Court for the Western District of Louisiana issued an Order of Commitment to Another District, directing the U.S. Marshals to transport her to Boston, Massachusetts.

**88.**    On May 18, 2025, Petitioner's counsel contacted counsel for DHS and offered to postpone the bail hearing scheduled for May 28, 2025, if DHS would agree not to re-detain Ms. Petrova following her potential release from criminal custody.

**89.**    On May 20, 2025, counsel for DHS responded as follows: "DHS advised that it may detain Ms. Petrova as part of her ongoing removal proceedings if she is released from pre-trial criminal custody…"

41.90.  On information and belief, and consistent with ICE's policy and practice of transferring detained noncitizens to larger immigration facilities in the Southern part of the United States, ICE is likely to ~~imminently transfer Ms. Doe from Vermont and away from counsel at any time.~~ transfer Ms. Petrova—upon her release from criminal custody—from Massachusetts back to the Richwood Correctional Center or a similar facility in a "jurisdiction that is more favorable to the Trump administration deportation agenda." **Exhibit J**, **Senators' Letter to DHS**.

~~14.    On information and belief, ICE may transfer Ms. Doe to Guantanamo Bay.~~

**91.**    ~~The cancellation of Ms. Doe's valid J-1 visa~~If Ms. Petrova is re-detained by ICE, there is a substantial risk that she will be unlawfully removed to Russia, as a result of ICE's documented failures to comply with applicable immigration laws and federal court orders. As the latest example, on May 21, 2025, ABC News reported that the Department of Homeland Security unlawfully deported eight migrants to South Sudan in violation of a federal court order.[2]

42.92.  Ms. Petrova's continued detention and her absence from the research group at Harvard is harming the research being conducted and the public interest in the potentially ground-breaking results of that research. ~~Finding a replacement for her "might not be feasible at all,"~~[Ms. Petrova] brings important skills and ~~at best will take many months~~talents to our country that enrich our labs, spark innovation, and ~~arrest [] progress toward the aims funded~~advance research and ~~expected by the NIH's Director office ORIP (Office of Research Infrastructure Programs)."~~development." **Exhibit** ~~A~~C.

## CLAIMS FOR RELIEF

### COUNT ONE

---

[2]    Quinn Owen, *8 Migrants Deported to South Sudan Despite Court Order, Officials Confirm*, ABC News (May 21, 2025), https://abcnews.go.com/Politics/8-migrants-south-sudan-deportation-flight-officials-confirm/story?id=122033692.

**Violation of** ~~19 U.S.C. § 1497, 8 U.S.C. § 1225(b), and implementing regulations, and~~ **Administrative Procedure Act** ~~based on CBP's Cancellation of Ms. Doe's Valid Visa and Failure to Follow Lawful Procedures~~5 U.S.C. § 706

~~43.~~93.  ~~The~~ Petitioner incorporates the allegations in the ~~above~~ paragraphs ~~are realleged and incorporated herein.~~above as though fully set forth here.

~~44.~~94.  Upon discovering that Ms. ~~Doe~~Petrova failed to disclose ~~an article on a customs form~~the research samples, CBP was required to follow the process set forth in 19 U.S.C. § 1497, ~~the~~its implementing regulations, and associated guidelines. This process is mandatory.

~~45.~~95.  CBP had no authority to bypass this mandatory process~~.~~ in favor of an entirely different enforcement process.

~~15.    CBP had no authority to look beyond Ms. Doe's valid nonimmigrant visa to make an inadmissibility determination under 8 U.S.C. § 1182(a)(6)(C) or (a)(7).~~

96.    CBP had no authority to declare Ms. Petrova inadmissible for her alleged customs violation because a customs violation is not a ground of inadmissibility under section 212 of the Immigration and Nationality Act (8 U.S.C. § 1182). In finding Ms. Petrova inadmissible for the alleged customs violation, CBP action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "(D) without observance of procedure required by law" in violation of 5 U.S.C. § 706(2)(A)-(D).

~~46.~~97.  CBP had no authority to cancel Ms. ~~Doe's~~Petrova's valid nonimmigrant visa. In so doing, CBP action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of

statutory jurisdiction, authority, or limitations, or short of statutory right," and "(D) without observance of procedure required by law" in violation of 5 U.S.C. § 706(2)(A)-(D).

16.     ~~Ms. Doe's failure to disclose an article on customs form does not render the noncitizen inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7).~~

17.     ~~Ms. Doe's agreement to withdraw her application for admission to the United States to return to France, a country to which she has a valid visa, does not constitute immigrant intent.~~

18.     ~~Ms. Doe's expression of fear of return to her country of origin does not constitute immigrant intent, especially, where, as here, Ms. Doe has a valid visa to enter France and agreed to withdraw her application for admission to the United States and return to France.~~

**98.**    CBP had no authority to cancel Ms. Petrova's admission stamp and her Form I-94 Record of Admission for her alleged customs violation. In so doing, CBP action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "(D) without observance of procedure required by law" in violation of 5 U.S.C. § 706(2)(A)-(D).

19.     Because CBP ~~bypassed the lawful process it was required to follow upon discovering the failure to disclose the frog embryos, it was prohibited from making an inadmissibility determination under 8 U.S.C. § 1182(a)(7). In other words, CBP lacked the legal authority to make the § 1182(a)(7) determination and to issue an expedited removal order. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii) (citing 8 U.S.C. §§ 1182(a)(6)(C), (a)(7)).~~

20.     ~~Because Ms. Doe held a valid J-1 visa, CBP was prohibited from looking beyond that visa to make an inadmissibility determination under 8 U.S.C. § 1182(a)(7).~~

21.    Because CBP ~~has~~had no authority to ~~cancel~~revoke Ms. ~~Doe's~~Petrova's valid nonimmigration visa ~~without a basis in law or fact~~, find her inadmissible, and cancel her admission stamp and her Form I-94 Record of Admission, this Court must find that CBP acted unlawfully and set aside the ~~cancellation. *See*~~ unlawful actions pursuant to 5 U.S.C. § 706(2)~~.~~

~~47.~~99.    ~~Alternatively, because Ms. Doe was not lawfully subject to expedited removal proceedings, this Court must order Respondents Defendants "to require that [she] be provided a hearing in accordance with section 1229a of [8 U.S.C.]." 8 U.S.C. § 1252(e)(4)~~).

## COUNT TWO

**Violation of ~~Administrative Procedure Act~~FOIA, 5 U.S.C. § ~~706(1), Based on CBP and ICE's~~ 552**
**Failure to ~~Provide Counsel with~~Conduct an Adequate Search for Responsive Records**

Petitioner incorporates the ~~Expedited Removal Order and Related Paperwork~~

~~48.~~100.    ~~The~~ allegations in the ~~above~~ paragraphs ~~are realleged and incorporated herein~~above as though fully set forth here.

101.    CBP is obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to Petitioner's FOIA request submitted on April 10, 2025.

102.    Petitioner has a legal right to obtain such records, and no legal basis exists for Respondents' failure to search for them.

103.    CBP's online portal indicates that the agency has not begun a search of its records.

104.    CBP's failure to conduct a reasonable search for records responsive to Petitioner's FOIA request violates, at a minimum, 5 U.S.C. § 552(a)(3)(C), as well as the regulations promulgated thereunder.

## COUNT THREE

**Violation of** ~~Under the APA, federal agencies are required to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). The APA further provides that federal~~

courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." **FOIA, 5 U.S.C. § 552**
**Failure to Disclose Responsive Records**

**105.**  Petitioner incorporates the allegations in the paragraphs above as though fully set forth here.

**106.**  CBP is obligated under 5 U.S.C. § 552(a)(3) to promptly produce records responsive to Petitioner's FOIA request.

**107.**  Petitioner has a legal right to obtain such records, and no legal basis exists for Respondents' failure to disclose them.

**108.**  CBP's failure to disclose all responsive records violates, at a minimum, 5 U.S.C. § 552(a)(3)(A), as well as the regulations promulgated thereunder.

**COUNT FOUR**

**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Timely Respond**

**109.**  Petitioner incorporates the allegations in the paragraphs above as though fully set forth here.

**110.**  CBP is obligated under 5 U.S.C. § 552(a)(6)(A)(i) to promptly produce records responsive to Petitioner's FOIA request.

**111.**  CBP has not made a determination on Petitioner's FOIA request within the statutory time period under FOIA.

**112.**  Petitioner has a legal right to obtain such records, and no legal basis exists for Respondents' failure to disclose them.

**113.**  CBP's failure to disclose all responsive records within the statutory time period violates, at a minimum, 5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(A), as well as the regulations promulgated thereunder.

**COUNT FIVE**

**Violation of Due Process**

**114.**    Petitioner incorporates the allegations in the paragraphs above as though fully set forth here.

**115.**    The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

**116.**    CBP's unlawful actions in revoking Ms. Petrova's valid nonimmigrant visa and canceling her admission stamp and Form I-94 Record of Admission without any basis in law or fact violate Ms. Petrova's right to Fifth Amendment due process.

**117.**    In light of CBP's clearly erroneous actions at Logan Airport on February 16, 2025, the government's decision to continue detaining Ms. Petrova for over three months—despite overwhelming evidence that she poses no danger to the community or risk of flight—violates her right to Fifth Amendment due process.

**118.**    The government's decision to initiate criminal prosecution against Ms. Petrova to obtain leverage in her immigration case is appalling, unbecoming of the U.S. government, and violates Ms. Petrova's right to Fifth Amendment due process.

22.    **PRAYERS** 5 U.S.C. § 706(1).

23.    CBP and ICE have a nondiscretionary duty to provide counsel with the expedited removal order, record of sworn statement, and associated paperwork. *See* 8 U.S.C. § 1361 and 8 C.F.R. § 292.5(a); *cf.* 8 U.S.C. § 1229a(e)(2).

24.    CBP and ICE have not provided those documents to counsel despite repeated requests.

25.    By failing to provide counsel with those documents, Respondents Defendants have "unlawfully withheld or unreasonably delayed" the adjudicative and administrative functions delegated to them by law in violation of 5 U.S.C. § 706(1).

26.    Ms. Doe is entitled to relief under the APA in the nature of an order compelling Respondents Defendants to immediately produce the expedited removal order, record of sworn statement, and associated paperwork. 5 U.S.C. § 706(1).

COUNT III

Violation of Administrative Procedure Act, 5 U.S.C. § 706(1), Based on USCIS's Failure to Expeditiously Schedule and Conduct Credible Fear Interview in Light of Harm to Ms. Doe, the Public, and Likelihood of Transfer Away from Counsel

27.    The allegations in the above paragraphs are realleged and incorporated herein.

28.    Under the APA, federal agencies are required to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). The APA further provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

29.    Respondents Defendants have a nondiscretionary duty to schedule and conduct a credible fear interview within a reasonable time. Absent relief on Count I of this action, passing a credible fear interview is necessary to allow Ms. Doe to qualify for release from detention either by ICE or by an IJ.

30.    USCIS has not conducted a credible fear interview for over one week in violation of 5 U.S.C. § 706(1).

31.    Considering relevant factors, including the health and welfare of Ms. Doe, the public interest in the research she is conducting, the lack of evidence that expediting the agency's action would harm competing priorities, and the risk of being transferred away from counsel,

USCIS's delay is unreasonable in this case. *See Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)); *see also* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.").

32.    By failing to provide counsel with those documents, Defendants have "unlawfully withheld or unreasonably delayed" the adjudicative and administrative functions delegated to them by law in violation of 5 U.S.C. § 706(1).

33.    Ms. Doe is entitled to relief under the APA in the nature of an order compelling Defendants to immediately schedule an interview and conduct a credible fear interview. 5 U.S.C. § 706(1).

## ~~PRAYER~~ **FOR RELIEF**

Wherefore, ~~Ms. Doe~~Petitioner respectfully requests this Court to grant the following:

(1)    Assume jurisdiction over this matter;

(2)    Declare CBP's finding of inadmissibility against Ms. Petrova unlawful and set it aside;

(3)    Declare CBP's revocation of Ms. Petrova's valid nonimmigrant visa unlawful, set it aside, and order Respondents to reinstate it;

(4)    Declare CBP's cancellation of Ms. Petrova's valid admission stamp unlawful, set it aside, and order CBP to issue a new admission stamp dated February 16, 2025;

(5)    Declare CBP's cancellation of Ms. Petrova's Form I-94 Record of Admission unlawful, set it aside, and order CBP to create a new I-94 record of admission under 8 C.F.R. § 101.2 and in accordance with CBP protocol (*see CBP Inspector's Field Manual* § 15.12(b));

(6)    Declare that after the inadmissibility finding has been set aside, and the revocation of Ms. Petrova's visa has been set aside, and the cancellation of Ms. Petrova's admission stamp has been

set aside, and the cancellation of Ms. Petrova's Form I-94 Record of Admission has been set aside,

Ms. Petrova is, by law, lawfully admitted to the United States in J-1 visa status;

(7)      Order CBP to conduct a search for any and all records responsive to Petitioner's FOIA

request and demonstrate that it employed search methods reasonably likely to lead to the discovery

of records responsive to Petitioner's FOIA request;

(8)      Order Defendant to produce, by a date certain, any and all non-exempt records responsive

to Petitioner's FOIA request and a *Vaughn* index of any responsive records withheld under claim

of exemption;

(2)(9)  Issue an Order to Show Cause ordering Respondents Defendants to show cause why this

Ms. Petrova's habeas petition should not be granted within three days. ;

(10)     Declare Order Ms. Petrova's immediate release from custody;

(11)     Issue an Order enjoining Respondents Defendants cancellation of Ms. Doe's valid

nonimmigrant visa unlawful and Order from re-detaining Petitioner upon release from criminal

custody;

(3)(12) In the alternative, issue an order enjoining Respondents Defendants to set it aside from

transferring Petitioner outside of the six New England states of Connecticut, Rhode Island,

Massachusetts, Vermont, New Hampshire, Maine;

(4)(13) Issue a Writ of Habeas Corpus Award Petitioner attorney's fees and other litigation costs

reasonably incurred in this action pursuant to 85 U.S.C. § 1252(b552(a)(4) ordering

Respondents Defendants to place Ms. Doe in removal proceedings under 8 U.S.C. § 1229a;)(E);

and

(1) Order Respondents Defendants to immediately produce the expedited removal order,

record of sworn statement, and associated paperwork to counsel;

(2) In the alternative, order Respondents Defendants to immediately schedule and promptly conduct a credible fear interview;

(5)(14) Award Petitioner Plaintiff attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any other basis justified under law; and

(6)(15) Grant any further relief this Court deems just and proper.

Dated: May 22, 2025                           Respectfully submitted,

/s/ Trina RealmutoBrian Scott Green          /s/ Gregory Romanovsky*
Trina Realmuto                                Gregory Romanovsky
National Immigration Litigation Alliance      Romanovsky Law LLPOffices
10 Griggs Terrace                             12 Marshall Street
Brookline, MA 02446                           Boston, MA 02108
(617) 819-4447                                (617) 787-0000
trina@immigrationlitigation.orgBrian Scott    gr@romanovskylaw.com
Green
Law Office of Brian Green                      *Application forAdmitted pro hac vice
9609 S University Boulevard #630084            admission forthcoming
Highlands Ranch, CO 80130
(443) 799-4225
briangreen@greenusimmigration.com

Attorneys for Petitioner/Plaintiff

Dated: February 23, 2025

35