UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| **KSENIIA PETROVA**,<br><br>    Petitioner,<br><br>v.<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM**, Secretary of the U.S. Department of Homeland Security, in her official capacity; **THERESA MESSIER**, Superintendent, Chittenden Regional Correctional Facility, in her official capacity,<br><br>    Respondents. | Case No. 2:25-cv-00240-CR |

**PETITIONER'S BRIEF REGARDING THIS COURT'S HABEAS AUTHORITY**

Petitioner Kseniia Petrova is a research scientist at Harvard University, whom the United States government has unlawfully detained for over three months. The detention stems from arbitrary, capricious, and unlawful actions by U.S. Customs and Border Protection (CBP) at Boston Logan Airport on February 16, 2025.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 2025, Petrova was returning to the United States from Europe to resume her scientific research duties at Harvard Medical School. Dkt. 1 *at* ¶ 32. At the airport, she presented her valid J-1 visa to a CBP officer, who verified her lawful status, placed a J-1 admission stamp in her passport—indicating that Petrova was admitted to the United States as a J-1 scholar—and generated an I-94 Record of Admission, pursuant to standard CBP protocols. *Id*. at ¶ 38, Dkt. 41-3.

While retrieving her luggage, Petrova was approached by another CBP officer and escorted to a room for examination of her luggage. Dkt. 1 at ¶ 38. In her luggage, CBP found research samples that Petrova was bringing from *Institut Curie* in France to Harvard Medical School to continue an experiment at her lab. *Id*. at ¶ 35. Petrova did not have a completed customs declaration form in her possession.

The research samples— non-living frog embryos embedded in paraffin—were "incapable of growing or transmitting disease. (Similar material can be found in high school and college biology laboratories throughout the United States.)." **Exhibit C**, **Letter from Dr. Martin Chalfie**, at 1. Under the regulations promulgated by the United States Department of Agriculture—the appropriate agency that regulates the importation of embryos and similar material—the embryos are not classified as a biological material. **Exhibit A**, **Declaration of Peter A. Quinter**, ¶ 8(m). Furthermore, under applicable customs laws and regulations, the embryos are not classified as prohibited items and do not require a permit for importation into the United States. **Exhibit B**, **Declaration of U.S. Customs Broker**.

Upon discovering the samples, the CBP officer failed to follow the statutory and regulatory procedures governing undeclared items in luggage. **Exhibit A** at ¶ 8. Petrova was neither served with any customs-related documentation nor issued the requisite penalty under 19 U.S.C. § 1497 for failure to declare an article in her possession. *Id*. Because Petrova's research samples were seized, the CBP officer was required to "refer the matter to the nearest CBP Fines, Penalties, and Forfeitures Office, which would issue a formal Notice of Seizure." *Id.* CBP has never provided a Notice of Seizure to Petrova or her counsel.

Instead of following the statutory and regulatory requirements to address Petrova's alleged customs violation, the officer referred Petrova to another CBP officer who conducted a second interview into her immigration status, a process commonly referred to as "secondary inspection." This "secondary" officer asked Petrova a series of purely customs-related questions, and then abruptly declared Petrova "inadmissible pursuant to INA 212(a)(7)(A)(i)(I) as an immigrant without a valid and unexpired immigrant document." *See* Dkt. 24 at 14. The "secondary" officer, or another CBP officer at Logan, then marked the J-1 visa in Petrova's passport as "CANCELLED – BOS." **Exhibit D**, **Canceled J-1 Visa**. Upon information and belief, the J-1 admission stamp in Petrova's passport was also canceled, as was her I-94 Record of Admission, as per CBP's protocol.

After putting the "CANCELLED – BOS" stamp on Petrova's visa, the CBP officer added some handwritten notations on the face of the canceled visa. *Id*. These notations reference 22 C.F.R. § 41.122—which allows immigration officers to cancel a visa for someone "who requests and is granted permission to withdraw the application for admission"—and 8 U.S.C. § 1182(a)(7)(A)(i)(I), which renders inadmissible "any immigrant …who is not in possession of a valid unexpired immigrant visa." Notably, the handwritten notations did not include any reference to 8 U.S.C. § 1182(a)(7)(B) which renders inadmissible "any *nonimmigrant* who… is not in possession of a valid *nonimmigrant* visa…" *See* **Exhibit D**.

There was no legal basis for the CBP officer to cancel Petrova's valid, unexpired J-1 visa. Petrova was never granted permission to withdraw her application for admission. *See* 22 C.F.R. § 41.112(e)(3). She had always maintained her lawful

3

nonimmigrant status and had been previously inspected and admitted to the United States as a bona fide nonimmigrant on multiple occasions. Dkt. 1 at ¶ 33.

After declaring Petrova inadmissible, the "secondary" officer presented Petrova with a choice: to withdraw her application for admission and apply for a new visa overseas or be subjected to expedited removal and barred from admission to the United States for five years. Dkt. 24 at 14-15. Petrova requested that her admission be withdrawn and asked to return to Paris, France, from whence her journey originated. *Id*. Rather than processing her request, the CBP officer asked, "Would you like the U.S. government to contact the Russian government to let them know you are here?" *Id*. at 15.

When Petrova responded that she feared persecution and stated, "I am afraid the Russian Federation will kill me for protesting against them," CBP detained her and issued Form I-860 (Notice and Order of Expedited Removal) alleging that she is subject to expedited removal under 8 U.S.C. § 1225(b)(1) for being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for being "an immigrant not in possession of a valid, unexpired immigrant visa." Dkt. 1-4. As a justification for the inadmissibility finding, the notice stated that Petrova was "an intending immigrant …as [she] claimed credible fear to return to [her] home country of Russia," *id.,* even though Petrova did not express a fear of the Russian Federation until <u>*after* the CBP officer had made the inadmissibility finding</u>. Dkt. 24 at 14-15. The bottom portion of the Form I-860, containing the expedited removal order to be signed by a supervisory officer, was never completed. *Id*.

On February 17, 2025, Petrova was transferred to ICE custody and transported to the Chittenden Regional Correctional Facility in South Burlington, Vermont, purportedly to await her credible fear interview under 8 U.S.C. § 1225(b)(1)(A)(ii). On February 24,

4

2025, without any notice to her counsel, Petrova was transferred to the Richwood Correctional Center in Monroe, Louisiana.

Petrova was never afforded an opportunity to have a credible fear interview under 8 U.S.C. § 1225(b)(1)(A)(ii). Instead, ICE served her with a Notice to Appear and placed her in full removal proceedings under 8 U.S.C. § 1229a, in an attempt to moot both her habeas petition and her mandamus claim before this Court. Dkt. 24 at 24, ¶ 5. Petrova's removal current proceedings are pending in the Jena, Louisiana Immigration Court and she is yet to be scheduled for a hearing on her asylum claim. *See* Dkt. 41 at 4.

Being statutorily ineligible for bond under 8 U.S.C. §§ 1225(b)(1)(B)(ii), (iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii) and *Jennings v. Rodriguez*, 583 U.S. 281, 297-303 (2018), Petrova submitted several requests to U.S. Immigration and Customs Enforcement (ICE) to be released on parole under 8 U.S.C. § 1182(d)(5), 8 C.F.R. 212.5(b). *See, e.g.*, Dkt. 32-2. She provided extensive evidence demonstrating that she is neither a danger to the community nor a flight risk. *Id*.

ICE summarily denied each request, citing generic and contradictory rationales. *See* Dkts. 32-3, 32-4. In its March 14, 2025 Notification Declining to Grant Parole, ICE checked the box indicating that Petrova did "not established to ICE's satisfaction that you are not a flight risk." *See* Dkt. 32-3. In its March 30, 2025 Notification Declining to Grant Parole, ICE checked two additional boxes: (1) "you have not established to ICE's satisfaction that you are not a danger to the community," and (2) "ICE previously provided you with a written decision declining to grant parole, and you have failed to provide additional documentation or to demonstrate any significant changed circumstances which would alter ICE's previous determination." *See* Dkt. 32-4.

5

On May 14, 2025—within two hours of this Court setting a bail hearing to consider Petrova's release—the U.S. Department of Justice initiated her arrest and transfer from ICE custody into the custody of the United States Marshals Service. On the same day, the government unsealed a criminal complaint charging Petrova with smuggling—based on the same alleged failure to declare the research samples that she had in her possession on February 16, 2025, at Logan Airport. **Exhibit D**, **Criminal Complaint and Affidavit**.

Simultaneously, the U.S. Department of Homeland Security (DHS) issued a memorandum stating that ICE has "lodged an immigration detainer" in Petrova's case. Such "detainer" requires U.S. government agencies, including the Federal Bureau of Prisons and the U. S. Marshalls Service, to turn Petrova over to ICE to be re-detained in immigration custody upon any release from criminal custody. **Exhibit E**, **United States Government Memorandum**. The same U.S. Government memorandum acknowledges that Petrova "does not pose a danger to the community," directly contradicting ICE's March 30, 2025 determination. *Id*.

In its motion to seal the complaint filed on May 12, 2025—while Petrova remained in ICE custody at the Richwood Correctional Center—the government claimed that that public disclosure of the criminal complaint might jeopardize…the government's ability to arrest the defendant." **Exhibit F**, **Motion to Seal Complaint**.

On May 15, 2025, the United States District Court for the Western District of Louisiana issued an Order of Commitment to Another District, directing the U.S. Marshals to transport Petrova to Boston, Massachusetts. DHS has confirmed that it plans to re-detain Petrova upon her potential release from criminal custody. **Exhibit E**.

## II. ARGUMENT

### A. PETROVA'S ICE DETENTION LACKED LEGAL BASIS.

#### 1. Basis for Detention

It is indisputable that, had CBP not revoked Petrova's valid J-1 visa, canceled her admission stamp, and voided her Record of Admission, she would not have been detained. In fact, she would still be conducting research at Harvard University today. It is equally indisputable that her detention was based on the expedited removal statute, 8 U.S.C. § 1225(b)(1).

As the Supreme Court explained, "Section 1225(b)(1) applies to [noncitizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See §1225(b)(1)(A)(i) (citing §§1182(a)(6)(C), (a)(7))." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). These noncitizens are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," then that alien is referred for an asylum interview. §1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." §1225(b)(1)(B)(ii).

The government has repeatedly confirmed that Petrova was detained—and remained detained—pursuant to § 1225(b)(1). *See, e.g.*, Dkt. 24 at 1, Dkt. 38 at 5. In fact, there was no other plausible legal basis for her detention. At the May 14, 2025 hearing, the government for the first time argued that Petrova was also detained under § 1225(b)(2). That claim lacks merit. Petrova was never subject to detention under § 1225(b)(2). As the Supreme Court explained, § 1225(b)(2) "serves as a catchall

7

provision that **applies to all applicants for admission not covered by §1225(b)(1)**… Those [noncitizens] 'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country. § 1225(b)(2)(A). *Jennings v. Rodriguez*, 583 U.S. at 287 (emphasis added).

On February 16, 2025, a CBP officer found Petrova inadmissible under 8 U.S.C. §1182(a)(7) and completed Form I-860 "Notice and Order of Expedited Removal," pursuant to 8 U.S.C. § 1225(b)(1). *See* Dkt. 1-4. She was first detained "pending a final determination of credible fear of persecution" under § 1225(b)(1)(B)(iii)(IV), and then "for further consideration of the application for asylum" under § 1225(b)(1)(B)(ii). Because Petrova was clearly processed under § 1225(b)(1), the catchall detention provision in § 1225(b)(1) simply does apply to her. See *Jennings v. Rodriguez*, 583 U.S. at 287.

2. Petrova's Detention Under § 1225(b)(1) Is Unlawful Because It Rests on an Inadmissibility Finding That Must be Set Aside.

Detention under § 1225(b)(1) is permissible only when a noncitizen is found inadmissible under 8 U.S.C. § 1182(a)(6) or § 1182(a)(7). This is clear from the statute's plain language, which provides: "If an immigration officer determines that an alien … who is arriving in the United States… is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall…" § 1225(b)(1)(A)(i). The remainder of § 1225(b)(1) sets forth the framework for expedited removal and the credible fear proceedings—but only if this threshold inadmissibility finding is properly made.

Petrova has demonstrated that CBP's actions at Logan Airport on February 16, 2025, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

Respondents have repeatedly stated that CBP deemed Petrova inadmissible and canceled her J-1 visa based on her failure to declare research samples in her possession. Most recently, on May 14, 2025, the United States Attorney for the District of Massachusetts confirmed that Petrova's visa was canceled as a result of her customs violation. *See* U.S. Attorney's Office, District of Massachusetts. (May 14, 2025). *Russian National Charged with Smuggling Biological Material Into Boston* [Post]. https://x.com/DMAnews1/status/1922765637815849015 (last visited on May 21, 2025).

But as Petrova has explained, a customs violation is not a ground of inadmissibility under the Immigration and Nationality Act. Nor did any of the nine conditions for visa revocation under 22 C.F.R. § 41.112(e) apply to her case. Because the CBP officer's actions lacked any lawful basis, Petrova has asked this Court to set them aside under § 706(2) of the APA. Dkt. 1. If the Court grants that relief, the inadmissibility determination evaporates—and with it, the statutory foundation for detention under § 1225(b)(1).

**B. THIS COURT HAS AUTHORITY TO RELEASE PETITIONER FROM ICE DETENTION.**

This Court may release ICE detainees on personal recognizance, or alternatively on bail, pending adjudication of their petitions pursuant to the Court's inherent habeas authority. *See Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), *Mahdawi v. Trump*, No. 25-1113, 2d Cir. (May 9, 2025); *Öztürk v. Hyde*, No. 25-1019, 2d Cir. (May 7, 2025).

Numerous courts within this circuit have already ordered release pursuant to *Mapp*. *See, e.g., Avendaño Hernandez v. Decker*, 450 F. Supp. 3d 443 (S.D.N.Y. 2020); *D'Alessandro v. Mukasey*, No. 08-CV-914, 2009 WL 799957 (W.D.N.Y. Mar. 25, 2009); *S.N.C. v. Sessions*, No. 18 Civ. 7680, 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018); *Kiadii v. Decker*, 423 F. Supp. 3d 18 (S.D.N.Y. 2018). This Court should do the same. Under *Mapp*, "a court considering a habeas petitioner's fitness for bail" must analyze: (1) whether the habeas petition raises "substantial claims" and (2) whether "extraordinary circumstances" exist "that make the grant of bail necessary to make the habeas remedy effective.'" 241 F.3d at 230 (cleaned up).

To raise a substantial claim, "the Second Circuit does not require that the petitioner convince every court, let alone the court considering the bail application, that he will succeed; rather, he need only show that his claims are 'substantial.'" *D'Alessandro*, 2009 WL 799957, at *3. This standard is largely akin to demonstrating a "likelihood of success." *See e.g., id*. at *3; *Kiadii*, 423 F. Supp. 3d at 20. At the same time, a broad range of circumstances may qualify as "extraordinary," including severe health issues, lack of flight risk or dangerousness, and the nature of the government behavior giving rise to the habeas claim. *See, e.g., Coronel v. Decker*, 449 F. Supp. 3d 274, 289 (S.D.N.Y. 2020); *D'Alessandro*, 2009 WL 799957, at *3. Where, as here, the petitioner would face "the very outcome they seek to avoid" if they remained in detention pending determination of the merits, release is necessary to make the habeas remedy effective. *See Coronel*, 449 F. Supp. 3d at 289.

### C. PETROVA SATISFIES THE REQUIREMENTS FOR RELEASE UNDER *MAPP*.

All of Petrova's claims for relief are substantial—although the Court need only find only one such claim to be substantial under the *Mapp* standard, *see Avendaño Hernandez*, 450 F. Supp. 3d at 447. She has demonstrated that CBP had no legal basis to revoke her valid J-1 visa, cancel her admission stamp, and void her Record of Admission.

In addition, Petrova's case presents extraordinary circumstances. Petrova is a brilliant researcher who "has made significant contributions to the United States through her research. She is an exceptionally accomplished bioinformatician working on early cell development—research that is essential for understanding how cells and organisms develop, grow, and age, and how these processes go awry in diseases, including cancers." *See* **Exhibit C**.

Petrova's case also presents extraordinary circumstances due to the extraordinary efforts by the United States Government to jail, prosecute, and deport Petrova to Russia – a country where the government knows she faces persecution due to her political stance and her opposition to the invasion of Ukraine. "Apparently, taking her from life's work, detaining her in an ICE detention facility for months on end, smearing her with baseless accusations, and attempting to burden her with a criminal record is not enough for this government; they intend to hand her over to Vladimir Putin's Russia where she faces almost certain incarceration, disappearance, cruelty, mental and physical abuse, and, very possibly, death." *See* **Exhibit G**, **Declaration of Harvey Kaplan**, at 5.

These extraordinary circumstances "make the grant of bail necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d at 230. Each additional day Petrova may spend in ICE detention would keep her away from her life's work and hurt the

11

scientific community of the United States. An order enjoining ICE from re-detaining Petrova upon her release from criminal custody is necessary to preserve the effectiveness of the habeas remedy. *See Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("habeas corpus is, at its core, an equitable remedy"); 28 U.S.C. § 1651(a) (authorizing federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); 8 U.S.C. § 2243 (habeas courts authorized to order relief "as law and justice require").

### D. IN THE ALTERNATIVE, IF SHE IS RE-DETAINED, PETROVA SHOULD NOT BE REMOVED FROM NEW ENGLAND.

Petrova is, at the time of the submission of this brief, in the process of being transferred from the Ouachita Correctional Center in Monroe, LA, to a federal criminal detention facility in Massachusetts where she has been charged with Smuggling in U.S. District Court Case No. 25-5150-JGD. If Petrova is not released during the pendency of this petition and, instead, is returned to ICE detention, she should be held not far from Boston, MA, where she faces those criminal charges, where her immigration and criminal counsel are located, where the events leading to her arrest, detention, removal proceedings and criminal charges occurred, and where she has the strongest ties to work, friends and colleagues. The remedy of prohibiting her removal from the local area is an appropriate exercise of this Court's equitable habeas power in response to the government's decision to secretly spirit her 1500 miles away within hours of the filing of the complaint in this habeas action. An order prohibiting her removal from the six New England states of Connecticut, Rhode Island, Massachusetts, Vermont, New Hampshire and Maine, is also appropriate to prevent impermissible forum shopping (Compl., Exh. I,

Senators' Letter to DHS) by the government. *See Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("habeas corpus is, at its core, an equitable remedy"); 28 U.S.C. § 1651(a) (authorizing federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); 8 U.S.C. § 2243 (habeas courts authorized to order relief "as law and justice require").

### E. ANY REQUIREMENT OF TO EXHAUST ADMINISTRATIVE REMEDIES AS RELATED TO PETROVA'S HABEAS PETITION HAS BEEN MET OR SHOULD BE WAIVED

There is no statutory requirement that a Petitioner exhausts administrative remedies before bringing a habeas petition under 28 U.S.C. § 2241. In this Circuit, however, courts have imposed a judicially mandated exhaustion requirement. "While § 2241 does not include a statutory exhaustion requirement, district courts in this Circuit have recognized such a requirement as a prudential matter 'before immigration detention may be challenged in federal court by a writ of habeas corpus.'" *Michalski v. Decker,* 279 F. Supp. 487, 495 (S.D.N.Y. 2018) quoting *Paz Nativi v. Shanahan*, 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017). Unlike a statutorily mandated exhaustion requirement, a district court may in its discretion excuse judicially mandated exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

A noncitizen held under 8 U.S.C. § 1225(b)(1) has no right to a bond determination, and can only be released on parole under 8 U.S.C. § 212(d)(5). Because the grant of parole is entirely discretionary, there is no appeal available for a denial of

13

parole. *Id.* Petitioner exhausted her administrative remedy by requesting parole on several occasions.

On February 21, 2025 Petitioner's counsel submitted a request for parole under 8 U.S.C. § 212(d)(5) along with supporting documentation demonstrating that Petrova poses neither a danger to the community nor a flight risk. The request was submitted to the Acting Director of the ICE's Boston Enforcement and Removal Operations (ERO) Field Office, which has jurisdiction over detainees at the Chittenden Regional Correctional Facility. Dkt. 32-2. The supporting materials included affidavits from Petrova's friends and colleagues, a letter from her landlord, a letter from Senator Edward Markey, and other documentation attesting to her exemplary character and community ties. *Id*. The Boston ERO Field Office has never responded to this request.
On March 13, 2025, Petitioner's counsel submitted a second request for parole under 8 U.S.C. § 212(d)(5), along with supporting documentation demonstrating that Petrova poses neither a danger to the community nor a flight risk. The request was submitted to the deportation officer assigned to Petrova's case. The supporting materials again included affidavits from Petrova's friends and colleagues, a letter from her landlord, and other documentation attesting to her exemplary character and community ties. *Id*. On March 14, 2025, ICE denied Petrova's parole request citing concerns that she posed a flight risk. Dkt. 32-3.

After several reconsideration requests by Petitioner's counsel, ICE produced a new decision on March 30, 2025, denying Petrova's request for release on parole, this time finding that Petrova is not only a flight risk, but a danger to the community. Dkt. 32-4.

Without addressing the fact that that Petrova has exhausted her administrative remedies for release from detention, Respondents have argued that Petrova must remain in detention until the conclusion of her removal proceedings and any appeals thereafter. "Ms. Doe's complaint does not allege (and contains no evidence) that she exhausted her claim that CBP lacked authority to revoke her J-1 visa before an IJ or the Board [of Immigration Appeals] as part of her ongoing removal proceedings under 8 U.S.C. § 1229a." Dkt. 38 at 11. It is not clear from Respondents' briefing whether this is a challenge to the Court's habeas authority to release (under *Mapp* or otherwise) or a challenge to the Court's authority to consider Petitioner's APA claims. Regardless, Petitioner has addressed this argument in her Memorandum in Opposition to Federal Respondent's Motion to Dismiss Complaint (Dkt. 41 at 17-18).

Moreover, assuming *arguendo* that this Circuit's judicially mandated exhaustion requirement applies, this Court should waive the requirement in the interests of justice because "available remedies provide no genuine opportunity for adequate relief" and "irreparable injury may occur without immediate judicial relief." *Beharry v. Ashcroft*, 329 F.3d at 62. "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992) (citations omitted). Where exhaustion is not statutorily required, Courts have waived the judicial requirement in cases of prolonged detention. *See Marquez v. INS,* 346 F.3d 892, 897 (2003); *Hermanowski v. Farquharson,* 39 F.Supp. 2d 148 (D.R.I. 2018). Even for detained noncitizens the asylum process is a lengthy one, and it is unlikely that Petrova's case will be heard in Immigration Court before the end of this year. Even if she is granted asylum by the

Immigration Judge, she will not be released until the end of a thirty-day appeal period, and if the government appeals, which is likely given its treatment of Petrova to date, she will remain in detention during the pendency of her appeal, which can be expected to take another six to eight months. This "remedy" (if one can call it that) of remaining in detention during a prolonged removal proceeding followed by a lengthy appeal process, is not a "genuine opportunity for adequate relief" in Petrova's case since her very detention is patently unlawful, based as it is on a misapplication of immigration enforcement laws to an alleged civil customs violation, a violation that, even if sustained, carries no possible term of confinement.

Respectfully submitted,

| | |
|---|---|
| Dated: May 22, 2025 | Respectfully submitted, |
| /s/ *Brian Scott Green* | /s/ *Gregory Romanovsky\** |
| Brian Scott Green | Gregory Romanovsky |
| Law Office of Brian Green | Romanovsky Law Offices |
| 9609 S University Boulevard #630084 | 12 Marshall Street |
| Highlands Ranch, CO 80130 | Boston, MA 02108 |
| (443) 799-4225 | (617) 787-0000 |
| briangreen@greenusimmigration.com | gr@romanovskylaw.com |
| | *\*Admitted pro hac vice* |

*Attorneys for Petitioner*

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: May 22, 2025         By:         /s/ Gregory Romanovsky
                                                Gregory Romanovsky

16