# EXHIBIT G

## DECLARATION OF HARVEY KAPLAN

I, Harvey Kaplan, Esq., declare under penalty of perjury under the laws of the United States that the following is true and correct to the best of my knowledge and belief:

1. I have practiced immigration law for over fifty years. Presently, I work as a volunteer attorney at the Greater Boston Legal Services. Prior to that, I was a founding partner of the firm Kaplan, Friedman & Associates, LLP.

2. My practice has always been exclusively focused on immigration and nationality law. For more than fifty years, I have represented hundreds of clients in proceedings before immigration judges and the Board of Immigration Appeals. I have filed, or participate in, over twenty-five petitions for review in courts of appeals, a number of which resulted in important precedent decisions, such as: *Cho v. Gonzales*, 404 F.3d 96 (1st Cir. 2005); *I.N.S. v. Gailius*, 147 F.3d 34 (1st Cir. 1998); *Navia-Duran vs. I.N.S.*, 568 F.2d 803 (1st Cir. 1977); *Cordero-Trejo v. I.N.S.*, 40 F.3d 482 (1st Cir. 1994).

3. In 2011, I was named Boston's Best Immigration Lawyer by *Best Lawyers in America*, where I have been consistently listed for over three decades. I have also received the *Carol King Award* for excellence in the practice of immigration law from the National Immigration Project of the National Lawyers Guild, as well as the *Outstanding Immigration Lawyer Award* from the Brazilian Immigration Center. In 2018, I was honored with the *Humanitarian Rights Award* from the Open Avenues Foundation. Most recently, I received the 2023 *Southgate Award* from Greater Boston Legal Services for

outstanding volunteer services and the 2024 *Silver Shingle Award for Service to the Community* from Boston University School of Law.

4. In addition to my immigration practice, I taught immigration law as an adjunct faculty member at Northeastern University School of Law for twenty-five years and previously taught at Harvard Law School. In 2002, I received the American Immigration Lawyers Association (AILA) *Elmer Fried Award of Excellence* in teaching immigration law.

5. I have been following the case of Kseniia Petrova and have reviewed the following documents:

    - Form I-867A, *Record of the Sworn Statement in Proceedings Under Section 235(b)(1) of the Act*;

    - Form I-867B, *Jurat for Record of the Sworn Statement in Proceedings Under Section 235(b)(1) of the Act*;

    - Form I-860, *Notice and Order of Expedited Removal* (incomplete and unsigned at the bottom);

    - Form I-213, *Record of Deportable/Inadmissible Alien*, submitted in connection with Ms. Petrova's removal proceedings;

    - Form I-261, *Additional Charges of Inadmissibility / Deportability*, submitted in connection with Ms. Petrova's removal proceedings;

    - Criminal complaint against Ms. Petrova, including an affidavit in support of the complaint signed by Special Agent Brian Goldsworthy from Homeland Security Investigations;

    - The government's motion to seal the criminal complaint;

- Declaration of Peter A. Quinter; and
- Respondent's Written Pleadings, submitted to the U.S. Immigration Court, Jena, LA by Ms. Petrova in her removal proceedings.

6. In my fifty years of practice as an immigration attorney I have never witnessed such malfeasance by the United States government as that evident in Ms. Petrova's case.

7. From the documentation I reviewed, it is clear to me that the Custom and Border Protection (CBP) agents who inspected Ms. Petrova on February 16, 2025 committed a number of gross errors, which resulted in Ms. Petrova's transfer into ICE detention. Instead of rectifying those errors, the Department of Homeland Security has sought to justify the unlawful detention of Ms. Petrova and has taken deliberate steps to ruin her good name and deport her to Russia, where she fears persecution due to her opposition to Putin's invasion of Ukraine.

8. It is particularly troubling that once Ms. Petrova justifiably challenged the government's lack of a legal basis to cancel her visa, the Justice Department decided to bring criminal charges against her.

9. It is axiomatic that a mere customs violation does not trigger immigration penalties under U.S. immigration laws. Inadmissibility is governed by statute – Section 212 of the Immigration and Nationality Act (8 U.S.C. § 1182) – and no where in that statute does it say that a customs violation makes an individual inadmissible to the United States. The regulation which permits CBP officers to cancel a visa in certain situations (22 C.F.R. § 41.122) is also not triggered by a customs violation. Therefore, even assuming that Ms.

3

Petrova intentionally failed to declare the research material she was bringing to her lab at Harvard, CBP had no legal authority to take the actions it did at Logan Airport.

10. I have represented thousands of immigration clients in my fifty-year career, and I have never seen anyone arrested and charged with smuggling for failure to declare a single item that is otherwise lawful to bring into the United States. My outrage is only heightened by the statement of Attorney Peter A. Quinter that the government, in addition to immigration irregularities, failed to follow basic customs-related protocols in the handling of this case.

11. The criminal charge is especially shocking in light of CBP's initial decision to altogether forego the customs protocol typically followed for failure-to-declare violations. To me, the government's decision to press criminal charges against Ms. Petrova – and the timing of her arrest, which occurred three months after her entry and within two hours of an evidentiary hearing in her federal *habeas* case – clearly indicate vindictive prosecution and bad faith on the part of the U.S. government.

12. I am also dismayed by the disingenuous argument in the government's motion to seal the complaint: "As grounds for this motion, the government states that public disclosure of these materials might jeopardize… the government's ability to arrest the defendant." As the government was undoubtedly aware, Ms. Petrova was in ICE custody when the motion was filed, and its "ability to arrest the defendant" was never at issue.

13. Although Ms. Petrova has designated France as the country to which she is to be deported, the choice is not hers. Section 241(b)(2)(C)(iii) permits the government to disregard Ms. Petrova's designation if "the Attorney General decides that removing the

4

alien to the [designated] country is prejudicial to the United States." The Justice Department has declared publicly (and in court) that it is seeking her deportation to Russia.1 Apparently, taking her from her life's work, detaining her in an ICE detention facility for months on end, smearing her with baseless accusations, and attempting to burden her with a criminal record is not enough for this government; they intend to hand her over to Vladimir Putin's Russia where she faces almost certain incarceration, disappearance, cruelty, mental and physical abuse, and, very possibly, death.

14. Overall, I am shocked by the government's actions against Ms. Petrova. A case that began with a simple dubious civil _customs_ violation has been escalated by the government into current _immigration_ detention and the threat of _criminal_ imprisonment of up to 20 years. Never have I seen such a case, and such a blatant misapplication of the law by our government.

DATED: May 20, 2025

*Harvey Kaplan*

Harvey Kaplan

---

1 "The charges against Petrova, announced Wednesday, came just hours after a habeas hearing in Vermont where prosecutors said they planned to deport Petrova back to Russia, despite her fear of being returned to her home country where she said she faced past persecution for her political activities." https://abcnews.go.com/US/harvard-researcher-russia-faces-20-years-undeclared-frog/story?id=121838232