# UNITED STATES DISTRICT COURT
# DISTRICT OF VERMONT

| | |
|---|---|
| **KSENIIA PETROVA**, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> **U.S. DEPARTMENT OF HOMELAND** ) <br> **SECURITY; KRISTI NOEM**, Secretary of the ) <br> U.S. Department of Homeland Security, in her ) <br> official capacity; **THERESA MESSIER**, ) <br> Superintendent, Chittenden Regional Correctional ) <br> Facility, in her official capacity, ) <br> ) <br> Respondents. ) <br> ) | Case No. 2:25-cv-00240-CR |

## PETITIONER'S REPLY TO
## FEDERAL RESPONDENTS' BRIEF ADDRESSING THE BAIL REQUEST

The government is correct: Congress empowered immigration officers to detain noncitizens at ports of entry to determine whether to admit or remove them. Dkt. 63 at 14. And under Supreme Court precedent, any due process rights Ms. Petrova had when she sought reentry in J-1 status were limited to the process prescribed by Congress. *See DHS v. Thuraissigiam*, 591 U.S. 103, 138 (2020) ("[T]he decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.") (cleaned up); *see also Knauff*, 338 U.S. at 544 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").

But Congress did not authorize immigration officers to invent inadmissibility grounds in order to revoke a properly issued visa and deny admission to the United States. Nor did it authorize CBP officers to use immigration penalties for a non-immigration violation where no immigration violation exists. By revoking Ms. Petrova's valid J-1 visa, canceling her admission stamp and I-94 Record of Admission, and finding her inadmissible based on an alleged customs infraction, CBP violated governing statutes, regulations, and procedures. And because CBP was not "acting within powers expressly conferred by Congress" (*Thuraissigiam* at 138) the agency also violated Ms. Petrova's due process rights – as limited as they were.

Ms. Petrova's immigration detention is equally unlawful because it stems from the same unlawful conduct by CBP officers at Logan Airport on February 16, 2025. Had those officers acted "within powers expressly conferred by Congress," Ms. Petrova would still be conducting her critically important medical research at Harvard today. Instead, absent this Court's intervention, she is about to be returned to ICE detention, and held for an indefinite period, as her asylum process is expected to take many months—if not years—to be concluded.

## A. MS. PETROVA'S PETITION IS NEITHER MOOT OR UNRIPE.

1. <u>Ms. Petrova's Petition is Not Moot.</u>

The government asserts that Ms. Petrova's habeas claim "is moot because she was arrested on May 14, 2025, for smuggling in violation of 18 U.S.C. § 545." Dkt. 63 at 5. It further speculates that "it is unclear when or where Ms. Petrova would be detained by DHS if she was released on bail." *Id*. at 6. This argument does not comport with the facts. As soon as Ms. Petrova was transferred from ICE to criminal custody, DHS lodged an immigration detainer in her case in order to re-detain her upon any release from criminal custody. *See* Dkt. 61-5. The agency has consistently maintained that Ms. Petrova is subject to mandatory immigration detention. *See, e.g.*, Dkt. 63 at 8-13. And it is quite clear where Ms. Petrova would be detained upon her return to DHS custody. In its most recent filing in Ms. Petrova's removal proceedings, DHS stated the following in response to Ms. Petrova's request to transfer the case out of Louisiana: "The respondent has a Mapp hearing schedule in United States District Court, District of Vermont, on May 28, 2025 and the outcome of that hearing will determine whether a change of venue of her immigration court proceeding is proper." **Exhibit A**.

Because DHS has clearly stated its intent to re-detain Ms. Petrova following any release from criminal custody, an actual and ongoing controversy remains. The parties "continue to have a personal stake in the outcome of the lawsuit." *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990) (internal quotation marks omitted). If this Court concludes that Ms. Petrova's immigration detention is unlawful, it has the inherent authority to prevent her re-detention by ICE–without waiting for her to be transferred back to ICE custody under the existing detainer. *See Simmonds v. INS*, 326 F.3d 351, 355-56 (2d Cir. 2003) (concluding that

petitioner with a final order of removal serving a criminal sentence was "in INS custody for purposes of § 2241").

Moreover, the government should not be encouraged to bring criminal charges against ICE detainees in order to moot their habeas petitions. This is especially important since it is the government's position that the mere arrest under criminal charges—whether genuine or pretextual—would suffice to moot an ICE detainee's habeas petition.

This Court also has the authority to restrain the government from re-detaining Ms. Petrova upon release. This is precisely what the court did in *Basank v. Decker*, 613 F. Supp. 3d 776 (S.D.N.Y 2020) when it ordered that "(1) Petitioners shall remain released…, and (2) Respondents are RESTRAINED from arresting Petitioners for civil immigration detention purposes unless Respondents first obtain the Court's permission." *Id*. at 796. In finding that jurisdiction persisted despite petitioners' release from ICE custody, the *Basank* court relied on *Leybinsky v. U.S. Immigration and Customs Enforcement*, 553 F. App'x 108 (2d Cir. 2014). In *Leybinsky*, the Second Circuit explained that "the capable-of-repetition" doctrine applies when there is "a reasonable expectation that the same complaining party will be subjected to the same action again." *Id*. at 109 (cleaned up). In *Basank*, that expectation was more than reasonable: "Given Respondents' repeated emphasis on the statutory and regulatory regime that, in its regular course, would allow Petitioners to be 'at any time ... arrested and taken into custody,' it is clear that a live case or controversy exists as to the remaining Petitioners." *Basank*, 613 F. Supp. 3d at 783.

2. Ms. Petrova's Petition is Ripe.

In arguing that Ms. Petrova's habeas claim is unripe, the government relies on *Simmonds v. INS*, 326 F.3d 351 (2d Cir. 2003). But a closer reading of *Simmonds* confirms that Ms. Petrova's claim is, in fact, ripe. The Second Circuit explained that a case is not ripe it "will be

3

*better* decided later and… the parties will not have constitutional rights undermined by the delay." *Id.* at 357. Because Simmonds challenged a potential future release from criminal custody more than a decade away (the habeas petition was filed in 2000, but the petitioner was not eligible for parole until at least 2013), the court agreed that it was "not prudent for us to hear this case now, rather than at some later point, when the issues will be more amenable to a final resolution in the district court and still before the parties will have suffered any real hardship as a result of the delay." *Id*. at 359.

By contrast, Ms. Petrova faces ongoing and immediate harm. DHS intends to re-detain her upon any release from criminal custody, despite the fact that her initial detention was premised on clearly unlawful agency conduct. Given these circumstances, there is no plausible argument that Ms. Petrova's case "will be *better* decided later" or that she will not "have suffered any real hardship as a result of the delay."

### B. NO STATUTORY OR JURISDICTIONAL LIMITATION PRECLUDES THIS COURT FROM DETERMINING THAT MS. PETROVA HAS RAISED SUBSTANTIAL CLAIMS ON THE MERITS.

Ms. Petrova has raised substantial claims on merits. She has demonstrated that her detention lacked legal basis because it was based on arbitrary, capricious, and unlawful conduct by CBP officers at Logan Airport. Dkt. 61 at 7-9. A customs expert with over 35 years of experience has confirmed that CBP's actions at Logan Airport were in conflict "with agency regulations, procedures, and protocols." Dkt. 61-1 at 4. The Commonwealth of Massachusetts in its *amicus curae* noted a troubling "practice of targeting international students and academics in Massachusetts for visa revocation and detention for nonexistent or minor offenses that are not grounds for inadmissibility." Dkt. 43-1 at 3.

In response, the government contends that "Ms. Petrova cannot meet her burden to establish a substantial claim because her detention is neither unconstitutional nor contrary to law." It then attempts to shield its conduct behind a wall of jurisdictional limitations, arguing that this Court lacks authority to review her claims. As explained below, however, no statutory or jurisdictional bar precludes this Court from reviewing the lawfulness of Ms. Petrova's detention.

The government first contends that "Ms. Petrova cannot establish that her habeas petition raises a substantial claim because Congress unequivocally mandated her detention until her removal proceedings before an immigration judge under 8 U.S.C. § 1229a conclude." Dkt. 63 at 9. But, as Petitioner has already explained, detention under § 1225(b)(1) is authorized only when a noncitizen is found inadmissible under 8 U.S.C. § 1182(a)(6) or § 1182(a)(7). Ms. Petrova was not properly found inadmissible under either of those sections, however. Her detention is unlawful, because the inadmissibility finding upon which it is based was unlawful. That finding must be set aside under the Administrative Procedure Act. *See* Dkt. 61 at 7-9; *Atanackovic v. Duke*, 399 F. Supp. 3d 79, 92 (W.D.N.Y. 2019) ("Because CBP officers can only deny admission if they find an applicant 'to be inadmissible under ... any provision of law' and Dr. Atanackovic was not inadmissible, the CBP officer's actions were arbitrary and capricious, and not in accordance with law.").

Unable to defend CBP's conduct on the merits—after all, it is clear that a customs violation is not a ground of inadmissibility under the Immigration and Nationality Act and does not authorize CBP to cancel a valid visa—the government instead turns to jurisdiction-stripping provisions to avoid review.

1. "Those claims must be exhausted in removal proceedings, 8 U.S.C. §§ 1201(i), 1252(d)(1)."

Neither of these two statutory provisions has any bearing on Ms. Petrova's case.

5

As explained in Petitioner's Opposition to Motion to Dismiss, "the plain language of § 1201(i) indicates that it applies solely to revocations by a consular officer overseas or the Secretary of State, and not to revocations by CBP employees at ports of entry." Dkt. 41 at 10. And § 1252(d)(1) regulates review of final orders of removal, making it clearly inapplicable to Ms. Petrova's situation.

Regarding the exhaustion of remedies pertaining to Ms. Petrova's habeas claim, the government has conceded that she has already exhausted her administrative remedies by repeatedly requesting parole. Dkt. 63 at 9, fn. 4.

As to her APA claims, exhaustion of administrative remedies is not a blanket requirement. Instead, it is contingent on whether a statute or agency rule explicitly mandates exhaustion. The Supreme Court in *Darby v. Cisneros* clarified that, "where neither the statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review," courts cannot impose exhaustion requirements. 509 U.S. 137, 138 (1993). This principle ensures that litigants are not unduly burdened by optional or discretionary administrative processes before seeking judicial review. "Congress clearly was concerned with making the exhaustion requirement unambiguous so that aggrieved parties would know precisely what administrative steps were required before judicial review would be available. If courts were able to impose additional exhaustion requirements beyond those provided by Congress or the agency, the last sentence of § 10(c) [of the APA] would make no sense." *Id*. at 146-47.

While Petitioner continues to strongly aver that the government has failed to identify a single applicable remedy that Ms. Petrova needs to, and has not, exhausted (*see* Dkt. 41 at 17-18), this Court need not reach the APA exhaustion issue to proceed. Courts have long recognized exceptions to exhaustion requirements in specific circumstances, to ensure that the exhaustion

doctrine does not operate as an unfair barrier to judicial review. For example, any APA exhaustion requirement would ordinarily be waived when "the administrative process would be incapable of granting adequate relief" or when "an unreasonable or indefinite timeframe for administrative action may sufficiently prejudice plaintiffs to justify a federal court in taking a case prior to the complete exhaustion of administrative remedies…" *See Washington v. Barr*, 925 F. 3d 109, 118-19 (2nd Cir. 2019) (cleaned up).

Ms. Petrova has already explained that her removal proceedings do not provide an opportunity to pursue any of the remedies she is seeking under the Administrative Procedure Act. She was placed in removal proceedings "for further consideration of [her] application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Neither an immigration judge nor the Board of Immigration Appeals has jurisdiction to set aside: CBP's failure to follow applicable customs laws, its imposition of an unauthorized immigration penalty, the unlawful cancellation of Petrova's valid J-1 visa, a clearly erroneous inadmissibility finding under 8 U.S.C. § 1182(a)(7)(A)(i), and other violations of CBP's own regulations and procedures. *See Matter of Hector Ponce De Leon-Ruiz*, 21 I. & N. Dec. 154, 165 (BIA 1996) ("[The BIA does not] assess[] regulatory compliance with the APA, ... [and should make no] observations in this area where we lack expertise. We ourselves are exclusively a creature of the Attorney General's regulations, and we have properly left it to the courts to resolve questions of APA compliance.")[1]

---

[1] The government asserts that the challenges Ms. Petrova raises to the revocation to her J-1 visa "can be addressed through a motion to terminate filed with an immigration judge." Dkt. 63 at 17. This is clearly incorrect. A motion to terminate under 8 C.F.R. § 1003.18(d) merely halts removal proceedings—it does not reinstate a canceled visa or confer any immigration status.

2. <u>"This Court lacks jurisdiction to review the initiation of removal proceedings, 8 U.S.C. § 1252(g)."</u>

The government's reliance on § 1252(g) is misplaced. The Second Circuit has repeatedly rejected attempts to invoke § 1252(g) to bar review in immigration detention cases. Most recently, in *Mahdawi v. Trump*, the court reaffirmed the narrow scope of § 1252(g):

> The Supreme Court and our Court have explained that § 1252(g)'s bar on jurisdiction is "narrow[]," and "applies only to three discrete actions": a decision "to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g) (emphases adopted)); *see also Oztürk*, 2025 WL 1318154, at *8. Section 1252(g) is thus "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9.

*Mahdawi v. Trump*, No. 25-1113, 2025 U.S. App. LEXIS 11240, at *10 (2d Cir. May 9, 2025).

Ms. Petrova is challenging her unlawful detention—not a discretionary decision "to commence proceedings, adjudicate cases, or execute removal orders." While DHS eventually initiated removal proceedings against Ms. Petrova (*see* Dkt. 32-1), those proceedings did not begin until March 7, 2025—well after her habeas petition was filed. *See* Dkt. 1.

3. <u>"8 U.S.C. §§ 1252(b)(9), 1252(a)(5)"</u>

These provisions are equally inapplicable. Section 1252(a)(5) strips district courts of jurisdiction to review "an order of removal," but no such order is at issue here. 8 U.S.C. § 1252(a)(5); *Mahdawi*, 2025 U.S. App. LEXIS 11240, at *17. Section 1252(b)(9), often described as a "zipper clause," is similarly limited in scope. As the Second Circuit recently clarified, "the very text of § 1252(b) sets out requirements only "[w]ith respect to review of an order of removal under subsection (a)(1)." 8 U.S.C. § 1252(b). No such order of removal is at issue here." *Oztürk v. Hyde*, No. 25-1019, 2025 WL 1318154, at *30 (2d Cir. May 7, 2025). The court concluded that even if Oztürk's claims "have a relationship to pending removal proceedings, her

claims do not themselves challenge removal proceedings and thus § 1252(b)(9)'s channeling function has no role to play." *Id*. at *32 (cleaned up).

So too here. Ms. Petrova is not challenging a removal order or even her ongoing removal proceedings in Jena, Louisiana. Instead, she is challenging the unlawful conduct of CBP officers at Logan Airport—conduct that occurred before her removal proceedings were initiated—and the resulting unlawful detention that has now lasted for over three months. Therefore, Section 1252(b)(9) does not bar review of her claims.

4. "8 U.S.C. §§ 1252(a)(2)(A), 1252(e)(4)-(5)."

Once again, the government invokes a jurisdiction-stripping provision that applies only to review of removal orders—and is therefore inapplicable to Ms. Petrova's case. This Court is not being asked to review a removal order, as the government has conceded that no such order has ever been issued against Ms. Petrova. *See* Dkt. 63 at 3.

In sum, none of the jurisdictional-stripping provisions cited by the government bars judicial review of the unlawful actions challenged here. As the Second Circuit explained:

> These arguments are unlikely to succeed in no small part because our analysis is guided by longstanding principles of statutory interpretation requiring Congress to speak clearly and specifically when it wishes to deprive the federal courts of jurisdiction… Because Öztürk challenges her arrest and detention, and not her removal, we find that the government is unlikely to make such a showing.

*Öztürk,* 2025 WL 1318154, at *30.

### C. MS. PETROVA'S CASE PRESENTS EXTRAORDINARY CIRCUMSTANCES THAT MAKE A GRANT OF BAIL NECESSARY TO RENDER THE HABEAS REMEDY EFFECTIVE.

Contrary to the government's contention, the extraordinary circumstances in Ms. Petrova's case extend well beyond "her employment as a researcher." Dkt. 63 at 17.

9

First, Ms. Petrova has submitted unrefuted evidence showing that she poses no risk of flight or danger to the community. *See* Dkt. 32-2. Courts have found such a showing to constitute an extraordinary circumstance justifying release on bail. *See, e.g., Mahdawi v. Trump*, No. 2:25-cv-389, 2025 WL 1243135, at *12 (D. Vt. Apr. 30, 2025). Second, and more critically, Ms. Petrova has presented compelling evidence of improper government conduct—including efforts to jail and prosecute her—over a minor customs violation. If re-detained by ICE, there is a substantial and well-founded risk that she will be unlawfully removed to Russia—despite her past political persecution there. The risk is not hypothetical. ICE has recently compiled a troubling record of noncompliance with immigration law and federal court orders. For example, on May 21, 2025, *ABC News* reported that the Department of Homeland Security unlawfully deported eight migrants to South Sudan in violation of a federal court order. Quinn Owen, *8 Migrants Deported to South Sudan Despite Court Order, Officials Confirm*, ABC News (May 21, 2025).

The government had unlawfully used immigration enforcement penalties to enforce an alleged customs violation where there was no immigration violation. This wrongful action has directly resulted in Ms. Petrova's lengthening wrongful detention. Given the government's growing record of such abuses of power—and the exceptional equities present here—continued detention would render the habeas remedy meaningless. Release on bail is therefore necessary to ensure that the habeas remedy Ms. Petrova seeks accomplishes its purpose.

Dated: May 27, 2025

Respectfully submitted,

/s/ *Brian Scott Green*
Brian Scott Green
Law Office of Brian Green
9609 S University Boulevard #630084
Highlands Ranch, CO 80130
(443) 799-4225
briangreen@greenusimmigration.com

/s/ *Gregory Romanovsky (pro hac vice)*
Gregory Romanovsky
Romanovsky Law Offices
12 Marshall Street
Boston, MA 02108
(617) 787-0000
gr@romanovskylaw.com

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Reply Brief filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

| | | |
|---|---|---|
| Dated: May 27, 2025 | By: | <u>/ s / Gregory Romanovsky</u><br>Gregory Romanovsky |