# DECLARATION OF PETER A. QUINTER

I, Peter A. Quinter, Esq., declare:

1. I am the Shareholder in Charge of the U.S. Customs and International Trade Law Group at Gunster, a nationally recognized law firm with 13 offices throughout the State of Florida. Prior to joining Gunster, I was a partner at a major commercial law firm, and head of its U.S. Customs and International Trade Law practice. I am Board Certified in International Law by the Florida Bar.

2. I have practiced U.S. Customs and International Trade Law for over 30 years, advising individuals and companies involved in the wide variety of legal issues related to international trade and transportation. I am ranked both globally and in the United States in the prestigious Chambers USA and Chambers Global legal directories as a premier U.S. Customs and International Trade attorney.

3. One of the main areas of my expertise is regulatory compliance and enforcement by the U.S. Department of Homeland Security (DHS) including U.S. Customs and Border Protection (CBP), Transportation Security Administration (TSA) and Immigration and Customs Enforcement (ICE). I advise individual and corporate clients on U.S. Food and Drug Administration (FDA)-regulated products, such as food, dietary supplements, and cosmetics, including matters involving detained or refused merchandise.

4. In my career as a customs attorney, I have filed thousands of administrative petitions with the Fines, Penalties and Forfeiture Offices of CBP around the United States in various cases, including those involving allegations of violations under both 19 U.S.C. § 1497 (failure to declare) and 18 U.S.C. § 545 (smuggling).

5. Prior to private practice, I served as legal counsel at the Southeast Regional Headquarters of the U.S. Customs Service (now known as U.S. Customs and Border Protection) in Miami, Florida. My responsibilities included providing legal advice and representation to U.S. Customs management on all matters involving the administration and enforcement of the customs and international trade laws.

6. In my capacity as legal counsel for the U.S. Customs Service, I was regularly consulted by U.S. Customs Special Agents and Inspectors about search and seizure matters, including declarations by arriving international passengers. I was also consulted by Federal Prosecutors requesting legal support for actions contemplated or taken by U.S. Customs personnel.

7. I have reviewed the following documentation in connection with Kseniia Petrova's immigration and criminal cases:

   - Form I-867A, *Record of the Sworn Statement in Proceedings Under Section 235(b)(1) of the Act*;

   - Form I-867B, *Jurat for Record of the Sworn Statement in Proceedings Under Section 235(b)(1) of the Act*;

   - Form I-213, *Record of Deportable/Inadmissible Alien*, submitted in connection with Ms. Petrova's removal proceedings;

   - Form I-261, *Additional Charges of Inadmissibility / Deportability*, submitted in connection with Ms. Petrova's removal proceedings;

   - Criminal complaint against Ms. Petrova, including an affidavit in support of the complaint signed by Special Agent Brian Goldsworthy from Homeland Security Investigations;

   - The government's motion to seal the criminal complaint.

8. Some of the information contained in the documents I reviewed is internally inconsistent and conflicts with agency regulations, procedures, and protocols. Specifically:

   a. CBP officers have considerable discretion in enforcing immigration laws, but their authority is limited by the Immigration and Nationality Act (INA) and the Code of Federal Regulations (CFR).

   b. In Form I-261, Department of Homeland Security alleges that "an immigration officer found [Kseniia Petrova] to be inadmissible to the United States due to having undeclared biological material, to wit, frog embryos, in [her] possession."

   c. Failure to declare an item by itself does not make a noncitizen inadmissible. Never in my 35-year career in the customs field have I heard of an instance where someone is found inadmissible simply for failure to declare an item.

   d. There is a protocol CBP officers follow when they discover an undeclared item in the person's luggage. The officers rely on 19 U.S.C. § 1497 and 19 C.F.R. § 148.18 to address these situations. Depending on whether the *de minimis* exception ($800.00 or less) applies and the circumstances of each individual case (such as the type of item that was undeclared and whether the failure to declare was willful), the CBP officers may confiscate the item, impose a monetary penalty up to $500.00, or both. If there is a seizure of the undeclared merchandise, the CBP officer would refer the matter to the nearest CBP Fines, Penalties, and Forfeitures Office, which would issue a formal Notice of Seizure.

   e. The aforementioned two penalties for failure to declare – seizure of the undeclared item and a monetary penalty under 19 U.S.C. § 1497 – are confirmed

in the "You Have Arrived" video posted by the U.S. Customs and Border Protection on YouTube: https://www.youtube.com/watch?v=WHt2xnXk8AI.

f. Ms. Petrova's failure to declare the frog embryos should have been handled in accordance with the aforementioned customs protocol. I do not know what the value of the frog embryos was and whether the $800.00 *de minimis* exception to the declaration requirements applies. Assuming Ms. Petrova was required to declare the embryos, the appropriate penalties for her failure to declare were seizure of the embryos and a potential monetary penalty. If this was Ms. Petrova's first customs violation, if I were Ms. Petrova's customs attorney, I would have petitioned to mitigate the penalty to $50.00 and requested the return of the seized merchandise. In my experience, such petitions in failure-to-declare cases are typically granted, particularly when it is the passenger's first violation.

g. From the documentation I reviewed, it appears that the CBP officers at Logan Airport did not follow the required protocol and decided to cancel Ms. Petrova's visa instead. I have not seen a formal Notice of Seizure or any other evidence indicating that the CBP officers followed the proper customs protocol in this case.

h. The typical scenarios in which a person seeking entry into the United States may be charged with smuggling include bringing in prohibited items (such as narcotics) or attempting to evade customs duties by failing to declare large amounts of merchandise or currency.

i. Never in my career as legal counsel for the U.S. Customs Service or as a customs attorney have I seen CBP pursue smuggling charges for failure to declare a

research sample, or a similar item, whether the failure to declare was willful or not.

j.  When the inspecting CBP officer determines that there is a potential for a criminal charge due to a passenger's failure to declare an item, the usual protocol is for the CBP officer to summon the duty agent of the ICE Homeland Security Investigations (HSI) stationed at the port of entry precisely for this purpose. The HSI agent then interviews the passenger and decides, sometimes after a consultation with a duty attorney at the local U.S. Attorney's Office, whether criminal charges should be pursued against the passenger.

k.  From my review of the affidavit submitted by HSI Special Agent Brian Goldsworthy in support of the criminal complaint, I see no evidence that Special Agent Goldsworthy, or any other HSI agent, interviewed Ms. Petrova. Indeed, Special Agent Goldsworthy appears to have not been present or personally involved in the events that occurred on February 16, 2025, at Logan Airport. The affidavit indicates that the CBP officer elected to bypass the standard customs procedures, including any consideration of smuggling charges, and instead initiated immigration-related penalties against Ms. Petrova.

l.  Never in my 35-year career as legal counsel for the U.S. Customs Service and as a customs attorney have I seen a situation, in which someone is not even processed for a "failure to declare" violation, and then charged with smuggling in connection with the same incident three months later.

m. While the Record of Sworn Statement classifies the frog embryos as "biological material," under the regulations promulgated by the United States Department of

Agriculture – the appropriate agency that regulates the imported material – it would not be classified as a biological material. A biological product is defined in 9 C.F.R. § 101.2, as:

> The term biological products, also referred to in this subchapter as biologics, biologicals, or products, shall mean all viruses, serums, toxins (excluding substances that are selectively toxic to microorganisms, e.g., antibiotics), or analogous products at any stage of production, shipment, distribution, or sale, which are intended for use in the treatment of animals and which act primarily through the direct stimulation, supplementation, enhancement, or modulation of the immune system or immune response. The term "biological products" includes but is not limited to vaccines, bacterins, allergens, antibodies, antitoxins, toxoids, immunostimulants, certain cytokines, antigenic or immunizing components of live organisms, and diagnostic components, that are of natural or synthetic origin, or that are derived from synthesizing or altering various substances or components of substances such as microorganisms, genes or genetic sequences, carbohydrates, proteins, antigens, allergens, or antibodies.

n. The Record of Sworn Statement suggests that Ms. Petrova was asked whether she was "traveling with any biologicals materials." This is not a kind of question CBP officers typically ask during primary inspection, which usually lasts less than one minute. In my 35-year customs career, I have not heard a CBP officer at the primary inspection ask a person whether they are "traveling with any biological materials." The phrasing used – 'biological materials' – suggests that this questioning may have occurred at secondary inspection, despite the implications to the contrary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of knowledge and belief.

Executed on May 19, 2025

                                                            _____
                                                            Peter A. Quinter