# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| **KSENIIA PETROVA**, | ) | |
| | ) | |
| Petitioner-Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-00240-CR |
| | ) | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM**, Secretary of the U.S. Department of Homeland Security, in her official capacity; **THERESA MESSIER**, Superintendent, Chittenden Regional Correctional Facility, in her official capacity; **PETE R. FLORES**, Acting Commissioner, U.S. Customs and Border Protection; **JULIO CARAVIA**, Director, U.S. Customs and Border Protection; **PAMELA J. BONDI**, U.S. Attorney General; **PAUL CAMBELL**, Warden, Ouachita Correctional Center; **KEITH DEVILLE**, Warden, Richwood Correctional Center, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Respondents-Defendants. | ) | |

## FEDERAL RESPONDENTS' ANSWER AND
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT,
## AND MEMORANDUM OF LAW IN SUPPORT OF MOTION

Federal Defendants, through undersigned counsel, move the Court to dismiss Plaintiff Jane Doe's ("Petrova") amended habeas petition and complaint, (ECF No. 73) which raises Administrative Procedure Act ("APA") and Freedom of Information Act ("FOIA") challenges, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because her claims are either moot or the Immigration and Nationality Act ("INA") removes this Court's jurisdiction to entertain them. The Court should also dismiss for improper venue under Rule 12(b)(3) because all of the events giving rise to her APA claim occurred in Massachusetts, and her FOIA claim cannot be

1

2:25-cv-00240-cr    Document 91    Filed 06/27/25    Page 2 of 25

raised in this venue either. Finally, Petrova's amended habeas petition and complaint must be denied because the government's authority to detain her is both statutorily authorized and constitutional.

## FACTUAL BACKGROUND

Petrova is a Russian citizen who applied for admission to the United States at Boston Logan International Airport by presenting a J-1 visa to a Customs and Border Patrol ("CBP") official on February 16, 2025, after allegedly returning from an academic conference in France. ECF No. 72 at ¶¶ 48-49; ECF No. 24, Response to Order to Show Cause, Ex. A at 3 (Mar. 17, 2025). Petrova's luggage contained frog embryos associated with her academic research. ECF No. 72 at ¶ 52; ECF No. 24, Ex. A at 4. Prior to her arrival, two of Petrova's scientific collaborators texted and advised her that she should declare the embryos to government officials at the airport using a form previously distributed to her laboratory. ECF No. 24, Ex. A at 5. Upon inspecting her for admission, a CBP officer and a CBP agricultural specialist asked Petrova whether she had biological materials in her luggage, and she replied "no." ECF No. 24, Ex. A at 4. When CBP subsequently searched Petrova's luggage, they discovered biological materials in "a Styrofoam box" and "multiple Ziplock bags[.]" ECF No. 24, Ex. A at 4. A CBP officer subsequently revoked Petrova's J-1 visa and issued a Form I-860, Notice and Order of Expedited Removal, after concluding that she was inadmissible and, therefore, not entitled to enter the United States. ECF No. 1-4.

To await a credible fear interview, Petrova was initially detained at the Chittenden Regional Correctional Facility. ECF No. 24, Ex. C., Decl. of Assistant Field Office Director Jacques Metoyer at ¶ 5. On February 24, 2025, Petrova was transferred by ICE to the Richwood

Correctional Facility in Monroe, Louisiana. *Id.* This Court ordered Petrova released on bail on May 28, 2025. ECF No. 70.

On March 7, 2025, U.S. Immigration and Customs Enforcement ("ICE") issued Petrova a Notice to Appear ("NTA") and filed the NTA with the Immigration Court in Louisiana, thereby vesting an immigration judge with jurisdiction over her removal proceedings under 8 U.S.C. § 1229a. ECF No. 24, Ex. B, Notice to Appear (Mar. 7, 2025); 8 C.F.R. § 1003.14(a). Petrova's removal proceedings are ongoing and she is not subject to a final removal order.

## APPLICABLE LEGAL STANDARDS

### I.    DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

On a Rule 12(b)(1) motion, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry . . . and a claim is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (citation and internal quotation marks omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (citation omitted).

### II.    DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), this Court "must accept the truth of factual allegations, and draw all reasonable inferences in a plaintiff's favor, [but] it need not accept as true a legal conclusion couched as a factual allegation." *Jenkins v. Miller*, 983 F. Supp. 2d 423, 450 (D. Vt. 2013).

3

## III.    JURISDICTIONAL REQUIREMENT OF A LIVE CASE OR CONTROVERSY

Federal courts are constrained to resolving cases and controversies.  U.S. Const. Art. III,

§ 2.  In other words, "a federal court has no authority to give opinions upon moot questions or

abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue

in the case before it."  *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)

(cleaned up).

## IV.    ADMINISTRATIVE PROCEDURE ACT

The APA generally authorizes courts to review final agency actions and to "hold unlawful

and set aside agency action, findings, and conclusions found to be . . . not in accordance with law."

*Loper Bright Enterp. v. Raimondo*, 603 U.S. 369, 392 (2024) (quoting 5 U.S.C. § 706(2)(A)).

However, judicial review under the APA is unavailable if: (1) another statute precludes judicial

review; or (2) agency action is committed to agency discretion by law.  5 U.S.C. § 701(a)(1)-(2);

*see Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (holding that 8 U.S.C. § 1252(a)(5)'s

jurisdictional bar precludes direct and indirect challenges to a request for permission to reenter the

United States).  Where jurisdiction is lacking under 5 U.S.C. § 701(a)(1) or (2), dismissal of an

APA complaint is appropriate.  *See Singh v. USCIS*, 878 F.3d 441, 446 (2d Cir. 2017) (dismissal

under 5 U.S.C. § 701(a)(1)); *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003) (dismissal

under 5 U.S.C. § 701(a)(2)).

## ARGUMENT

## I.    PETROVA'S AMENDED HABEAS PEITION SHOULD BE DENIED.

Petrova's habeas challenge to her detention under 28 U.S.C. § 2241 should be denied.  ECF

No. 72 at 2, 25.  A habeas petitioner "bears the burden of proving that [s]he is being held contrary

to law" and must satisfy that burden by a preponderance of the evidence.  *Skaftouros v. United*

*States*, 667 F.3d 144, 158 (2d Cir. 2011); 28 U.S.C. § 2241(c)(3).  Because Petrova cannot meet

that burden, this Court should deny her habeas petition and rescind its bail order.  ECF No. 70; *cf.*

*Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001) (bail is only warranted where a habeas petition

raises "substantial claims").

       **A.**       **Petrova's Detention Is Statutorily Authorized.**

       Every "alien who arrives in the United States or is present in this Country but has not been

admitted is treated as an applicant for admission."  *Jennings v. Rodriguez*, 583 U.S. 281, 287

(2018) (citing 8 U.S.C. § 1225(a)(1)).  A noncitizen seeking admission to the United States bears

the burden of demonstrating that she is "clearly and beyond a doubt entitled to be admitted."

8 U.S.C. § 1225(b)(2)(A); *see Jennings*, 583 U.S. at 287; 8 U.S.C. § 1201(h) (possession of a visa

"shall not be construed to entitle any alien . . . to be admitted" if she is found inadmissible).

       It is undisputed that Petrova is an arriving alien subject to the procedures established by

8 U.S.C. § 1225, because she was detained for secondary inspection at Boston Logan International

Airport while seeking admission to the United States, and has not been subsequently admitted to

the United States.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (every "alien who arrives

in the United States or is present in this Country but has not been admitted is treated as an applicant

for admission.") (citing 8 U.S.C. § 1225(a)(1)); *Correa v. Thornburgh*, 901 F.2d 1166, 1172 (2d

Cir. 1990) (holding that Correa never entered the United States, because she "remained in a

restricted area, known as the 'Customs Enclosure'" and was, therefore, never "free[] from official

restraint"); 8 U.S.C. § 1101(a)(13)(A); 8 C.F.R. § 1001.1(q); ECF No. 72 at ¶¶ 52-62; *see, e.g.,*

*Sidhu v. Ashcroft*, 368 F.3d 1160, 1161-62 (9th Cir. 2004) (noncitizen whose passport was stamped

"admitted" in the Los Angeles airport was not admitted under 8 U.S.C. § 1101(a)(13)(A) because

she was detained at secondary inspection).

Critically, Congress authorized the mandatory "detention of applicants for admission until [credible fear or removal] proceedings have concluded." *Jennings*, 583 U.S. at 297; 8 U.S.C. § 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV), (b)(2)(A). Specifically, "[f]or those placed in expedited removal proceedings who are referred to an Immigration Judge for consideration of their asylum application . . . 8 U.S.C. § 1225(b)(1)(B)(ii), requires detention until the final adjudication of the asylum application." *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025); *see Jennings*, 583 U.S. at 287; *Matter of M-S-*, 27 I. & N. Dec. 509, 515-16 (A.G. 2019). Likewise, if a noncitizen fails to establish that they are "clearly and beyond a doubt entitled to be admitted" while seeking entry, she "shall be detained for a [removal] proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A); *see Jennings*, 583 U.S. at 287 (explaining that § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)"); 8 C.F.R. § 235.3(b)(3).

The Supreme Court has confirmed that the authority to detain an arriving alien under 8 U.S.C. § 1225 does not lapse if she is placed into removal proceedings. *Jennings*, 583 U.S. at 302 ("If respondents' interpretation of § 1225(b) were correct, then the Government could detain an alien without a warrant at the border, but once removal proceedings began, the Attorney General would have to issue an arrest warrant in order to continue detaining the alien. To put it lightly, that makes little sense."). Restated, "[w]hether an applicant who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release." *DHS v. Thuraissigiam*, 591 U.S. 103, 111 (2020). Consequently, Petrova cannot prevail on her habeas petition and complaint because Congress unequivocally mandated her detention until her ongoing removal proceedings before an immigration judge under 8 U.S.C. § 1229a conclude. *See* 8 U.S.C. § 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV), (b)(2)(A); *Thuraissigiam*, 591 U.S. at 111; *Jennings*, 583 U.S. at 297-301; *Matter of Q. Li*, 29 I. & N. Dec. at 68.

**B.      Petrova's Detention is Constitutional.**

Petrova's habeas petition and complaint should also be denied because she cannot establish that her detention under 8 U.S.C. § 1225(b) runs afoul of the constitution because immigration detention is "a constitutionally valid aspect of the deportation process," *Demore v. Kim*, 538 U.S. 510, 523 (2003), and "the decision of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law[,]" for noncitizens seeking admission to the United States at the border. *Thuraissigiam*, 591 U.S. at 138. That is so because "[t]he power to admit or exclude aliens is a sovereign prerogative; the Constitution gives the political departments of government plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* at 139 (cleaned up).

Commensurate with that sovereign prerogative, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139; *see Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958) ("For over a half century this Court has held that the detention of an alien in custody pending determination of his inadmissibility does not legally constitute an entry even though the alien is physically within the United States."); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212-16 (1953) (holding that a noncitizen who previously resided in the United States for over two decades was lawfully detained on Ellis Island indefinitely pursuant to an exclusion order because "an alien on the threshold of initial entry stands on a different footing: Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (citations and quotations omitted).

The Second Circuit has similarly emphasized the "sovereign state has a right to exclude aliens" and upheld the "authority to indefinitely detain excludable aliens." *Guzman v. Tippy*, 130 F.3d 64, 65 (2d Cir. 1997) (discussing the Mariel boatlift from Cuba); *see also United States v. Guzman*, 998 F.3d 562, 569 (4th Cir. 2021) (explaining that a noncitizen "apprehended at the border . . . was merely an applicant for admission, for whom the INA's admission procedures was the due process."). Likewise, district courts in this circuit have ruled that noncitizens detained at the border are not entitled to release or additional due process protections to justify detention beyond that provided by Congress through the INA. *See, e.g.*, *Rodriguez Figueroa v. Garland*, 535 F. Supp. 3d 122, 126 (W.D.N.Y. 2021) ("Petitioner, who is detained pursuant to 8 U.S.C. § 1225(b) and who was apprehended shortly after unlawfully crossing the border, is not entitled to an individualized bond hearing"); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 331, 334-36 (W.D.N.Y. 2021) ("the Court concludes that binding Supreme Court precedent requires a 'legal fiction' to be imposed on Petitioner so that he is treated as at the threshold of entry—as opposed to within this country's borders—and as a result, he is entitled to only those protections as afforded by statute, and not the procedural protections of the Due Process Clause."). In short, Congress empowered immigration officers to detain noncitizens at ports of entry for proceedings to determine whether to admit or remove them and, therefore, Petrova is only entitled to the process afforded by Congress. *See Thuraissigiam*, 591 U.S. at 138-39; *Mezei*, 345 U.S. at 212-16.

Here, Petrova is receiving the maximum level of process that Congress provided for arriving aliens seeking to demonstrate that they are "clearly and beyond a doubt entitled to be admitted" to the United States, 8 U.S.C. §§ 1225(b)(2)(A), 1229a(c)(2)(A): removal proceedings before an immigration judge under 8 U.S.C. § 1229a (where Petrova is represented by counsel) and, if necessary, a petition for review in the appropriate Court of Appeals. 8 U.S.C. § 1252(a)(1),

(a)(5), (b)(9). Because the government's adherence to those procedures in Petrova's case is due process of law, *see Thuraissigiam*, 591 U.S. at 138; *Mezei*, 345 U.S. at 212-16; *Tippy*, 130 F.3d at 66, this Court must reject any due process challenge to her detention and deny her habeas petition. 28 U.S.C. § 2241(c)(3); *see Skaftouros*, 667 F.3d at 158.

## II.    THIS COURT SHOULD REJECT PETROVA'S APA AND DUE PROCESS CHALLENGES (COUNTS 1 AND 5).

### A.    This Court should dismiss Petrova's challenge to her visa revocation for lack of jurisdiction.

This Court should dismiss Petrova's challenge to her visa revocation. Fed. R. Civ. P. 12(b)(1); ECF No. 72 at ¶ 97-98, 116. The INA provides that "[a]fter the issuance of a visa or other documentation to the alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation." 8 U.S.C. § 1201(i). Congress authorized the Secretary of State to delegate that authority upon "any employee of the United States[.]" 8 U.S.C. § 1104(a). And the Secretary has done so with respect to CBP officers, empowering them to "revoke a valid visa" if, among other reasons, the noncitizen is ordered removed pursuant to an expedited removal order under 8 U.S.C. § 1225 or the noncitizen is permitted to withdraw their application for admission to the United States. 22 C.F.R. § 41.122(e)(2)-(3); *see* 8 C.F.R. § 287.5(b)(4), (c)(1)(v); 22 C.F.R. § 46.1(i) (defining "immigration officer" to include CBP officers). That determination cannot be reviewed under the APA for two independently dispositive reasons.

First, the INA expressly removes this Court's jurisdiction to review visa revocation determinations. 5 U.S.C. § 701(a)(1). In the tragic aftermath of the terrorist attacks on September 11, 2001, Congress amended the visa revocation statute by specifying "[t]here shall be no means of judicial review (including review pursuant to section 2241 of title 28 or any other

habeas corpus provision, and sections 1361 and 1651 of such title) of a revocation under this subsection, except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B)[.]"[1]   Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, § 5304, 118 Stat. 3638 (codified at 8 U.S.C. § 1201(i)). That law was designed to prevent noncitizens from forestalling any efforts to remove them by challenging their visa revocation in Article III courts.  150 Cong. Rec. S11,939-01 (daily ed. Dec. 8, 2024) (statement of Sen. Kyl) ("Currently all decisions regarding visa issuance by Consular Officers are final, they are not subject to judicial review.  The same should be true of visa revocation decisions.").  In effect, Congress "expanded the [consular] non-reviewability doctrine by enacting [8 U.S.C. § 1201(i)], which stripped district courts of the authority to review visa revocations[.]" *Bolante v. Achim*, 457 F. Supp. 2d 898, 900-01 (E.D. Wis. 2006).

In turn, Congress channeled all judicial review of removal proceedings—again, the only forum where a noncitizen can challenge their visa revocation, 8 U.S.C. § 1201(i)—to the "appropriate court of appeals" and specified that "a petition for review . . . shall be the sole and exclusive means for judicial review of an order of removal[.]"  8 U.S.C. § 1252(a)(5).  That prohibition on district court review is doubly clear because Congress further specified that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9).  In the same breath, Congress elaborated that:

> Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

---

[1]  Consistent with Congress's bar on judicial review, immigration officers may revoke a noncitizen's visa if she becomes subject to "[a] final order of deportation or removal[.]" 22 C.F.R. § 41.122(e)(4).

8 U.S.C. § 1252(b)(9). In conjunction, those provisions "force[] a [noncitizen] in removal proceedings to save all of his or her challenges to an unlawful government decision or action until after a final removal order is issued." *Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000); *see Castellanos v. Pfizer, Inc.*, 555 F. Supp. 3d 1343, 1349 (S.D. Fla. 2008) ("The only exception to § 1201(i) applies in the context of a removal proceeding if the 'revocation provides the sole ground for removal.'") (quoting 8 U.S.C. § 1201(i)).

That limited review in the court of appeals does not provide this Court with jurisdiction over Petrova's APA claim. On the contrary, the Second Circuit has squarely held that § 1252(a)(5) bars direct and indirect challenges to proceedings to remove a noncitizen, including claims brought under the APA. *Delgado*, 643 F.3d at 55 ("we reject Delgado's arguments that federal question jurisdiction exists here because her claim arises under the APA or because she is bringing a mandamus action."); *see, e.g., Taal v. Trump*, No. 3:25-cv-335, 2025 WL 926207, *2 (N.D.N.Y. Mar. 27, 2025) ("The law in the Second Circuit is clear that all such questions should be channeled into a single petition after the review of a final order of removal; until such an order is issued, the federal courts have no jurisdiction over the claims.") (cleaned up).

Petrova's contention, ECF No. 72 at 116, that the cancellation of her visa violates her due process rights fails to state a claim because, as an arriving alien, she is only entitled to the process that Congress provided. *Thuraissigiam*, 591 U.S. at 139-40 (explaining that the admission of aliens is a sovereign prerogative).

As demonstrated, because Congress unequivocally barred judicial review of visa revocations in district court, this Court lacks jurisdiction to review the factual or legal correctness of CBP's visa revocation. 5 U.S.C. § 701(a) (providing that the APA does not apply "to the extent that . . . statutes preclude judicial review"); 8 U.S.C. §§ 1201(i), 1252(a)(5), (b)(9); *see Delgado*,

643 F.3d at 55-56. Thus, this Court should dismiss Petrova's visa revocation complaint for want of subject-matter jurisdiction (Counts 1 and 5) and need not proceed further. Fed. R. Civ. P. 12(b)(1); ECF No. 72 at ¶ 97-98, 116.

The decisions in *Atanacovkic v. Duke*, 399 F. Supp. 3d 79, 92 (W.D.N.Y. 2019), and *Gill v. Mayorkas*, 20-cv-939-MJP, 2021 WL 3367246 (W.D. Wash. Aug. 3, 2021), do not establish that this Court has jurisdiction to review Petrova's visa revocation. ECF No. 69 at 59-60 (bail hearing transcript). *Atanacovkic* never addressed § 1201(i). 399 F. Supp. 3d at 84-94. And although *Gill* mentioned § 1201(i) in passing, it erroneously reasoned that § 1201(i)'s prohibition on judicial review did not apply because CBP officers had limited discretion to revoke visas and were, therefore, not covered by the doctrine of consular non-reviewability. *Gill*, 2021 WL 3367246 at *7-8. That rationale is erroneous because the plain text of 8 U.S.C. § 1201(i) establishes that it applies to any visa revocation "under this subsection," encompassing the decision of any immigration officer with delegated authority to revoke visas under 22 C.F.R. § 41.122(e). Moreover, because—in stark contrast to Petrova's case—neither *Gill* nor *Atanacovkic* involved an APA challenge brought parallel to ongoing removal proceedings, neither case addressed 8 U.S.C. § 1252(a)(5) and (b)(9) or the Second Circuit's binding holding in *Delgado*, 643 F.3d at 55, that district court's lack jurisdiction to review direct or indirect challenges to removal proceedings through an APA action. *See Antanacovkic*, 399 F. Supp. 3d at 84-94; *Gill*, 2021 WL 3367246 at *7-8. In short, factually distinguishable, non-binding cases that fail to meaningfully address all of the jurisdictional bars implicated here do not establish that this Court has jurisdiction to review CBP's revocation of Petrova's J-1 visa.

Second, if the Court reaches the issue, it should also dismiss Petrova's visa revocation challenge because she has not exhausted it before an immigration judge ("IJ") or the Board of

Immigration Appeals.  5 U.S.C. § 704; 8 U.S.C. § 1252(d)(1) (requiring administrative exhaustion); *see Makarova*, 201 F.3d at 113 (explaining that dismissal is proper where a district court lacks statutory authority over a claim).  The APA bars judicial review unless a litigant complies with any applicable administrative exhaustion requirements.  5 U.S.C. § 704; *see Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998) ("If a party fails to exhaust administrative remedies, then the court may dismiss the action because subject matter jurisdiction does not exist.").  The purpose of exhaustion is "protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.) (citation omitted).

Here, the INA provides that judicial review—available exclusively in a Court of Appeals, *see* 8 U.S.C. §§ 1252(a)(5), 1252(b)(9)—is only available if "the alien has exhausted all administrative remedies available to the alien as of right[.]"  8 U.S.C. § 1252(d)(1); *see Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023) (holding that § 1252(d)(1) is a non-jurisdictional but mandatory claims processing rule); *Howell v. INS*, 72 F.3d 288, 293 (2d Cir. 1995) ("Howell was required to exhaust her administrative remedies once deportation proceedings commenced, instead of directly seeking review in the district court").  But Petrova's complaint does not allege (and contains no evidence) that she exhausted her claim that CBP lacked authority to revoke her J-1 visa—which would be presented as an argument that she is not removable under 8 U.S.C. § 1227(a)(1)(B)—as part of her ongoing removal proceedings under 8 U.S.C. § 1229a.  *See* ECF No. 72.  Thus, this Court cannot reach her unexhausted (and jurisdictionally barred, *supra* Argument § I.A) challenge.  5 U.S.C. § 704; 8 U.S.C. § 1252(d)(1); *see Bastek*, 145 F.3d at 94.

**B.      This Court lacks jurisdiction to determine whether Petrova is inadmissible.**

For multiple reasons, this Court should dismiss Petrova's challenge to CBP's inadmissibility determination for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1). First, Petrova's challenge to that aspect of her expedited removal proceedings under 8 U.S.C. § 1225 is moot because DHS issued an NTA placing her in removal proceedings under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1252(e)(4)(B); *Church of Scientology of Cal.*, 506 U.S. at 12; ECF No. 24 Ex. B. That NTA superseded Petrova's Form I-860 and provided her with the only relief within this Court's jurisdiction to provide: "a hearing in accordance with section 1229a[.]" 8 U.S.C. § 1252(e)(4)(B); *see* 8 U.S.C. § 1252(e)(1)(A) (barring declaratory, injunctive, and equitable relief related to expedited removal proceedings); *Thuraissigiam*, 591 U.S. at 111-12 (observing that the only relief provided by § 1252(e) is a removal hearing). The moot nature of Petrova's claim is manifest because, now that she is in ongoing removal proceeding before an immigration judge, she may only be removed from the United States pursuant to a final removal order issued by an immigration judge or the Board of Immigration Appeals. 8 U.S.C. § 1101(a)(47)(A), 1229a(c)(1)(A); *Church of Scientology of Cal.*, 506 U.S. at 12. Thus, because Petrova seeks an advisory opinion about the legality of a moot determination with no bearing on her ultimate removability or susceptibility to immigration detention, her claim must be dismissed. *See Jennings*, 583 U.S. at 297-301; *Church of Scientology of Cal.*, 506 U.S. at 12; Fed. R. Civ. P. 12(b)(1).

Second, this Court lacks jurisdiction to determine whether Petrova is actually inadmissible to the United States. Fed. R. Civ. P. 12(b)(1); 5 U.S.C. § 701(a)(1). Congress expressly barred judicial review of CBP's inadmissibility determinations in expedited removal proceedings, providing that "[t]here shall be no review of whether the alien is *actually inadmissible* or entitled to any relief from removal." 8 U.S.C. § 1252(e)(5) (emphasis added); *see Thuraissigiam*, 591 U.S.

14

at 111.  Congress also barred this Court from entering declaratory, injunctive, or equitable relief besides an order transferring an arriving alien to removal proceedings.  8 U.S.C. § 1252(e)(1)(A), (e)(4)(B).  And, as already established, Congress channeled all judicial review of removal orders issued in removal proceedings under 8 U.S.C. § 1229a to the appropriate court of appeals.  8 U.S.C. § 1252(a)(5), (b)(9); *see Delgado*, 643 F.3d at 55 ("we reject Delgado's arguments that federal question jurisdiction exists here because her claim arises under the APA or because she is bringing a mandamus action."); *Taal*, No. 3:25-cv-335, 2025 WL 926207, at *2 ("until such [a removal] order is issued, the federal courts have no jurisdiction over the claims.") (cleaned up).  Consequently, because Congress unequivocally barred this Court from reviewing whether Petrova is inadmissible to the United States, her claim must be dismissed for lack of jurisdiction.  Fed. R. Civ. P. 12(b)(1).

Third, Petrova has not presented evidence that she exhausted her challenge to any inadmissibility finding before an immigration judge and the Board of Immigration Appeals as required by 8 U.S.C. § 1252(d)(1), precluding the Court from reaching it here.  *See* 5 U.S.C. § 704; *Bastek*, 145 F.3d at 94 ("If a party fails to exhaust administrative remedies, then the court may dismiss the action because subject matter jurisdiction does not exist."); *Scott v. Napolitano*, 618 F. Supp. 2d 186, 192-93 (E.D.N.Y. 2009) (collecting cases and explaining that failure to exhaust under § 1252(d)(1) barred an APA claim); *see, e.g.*, *Ibragimov v. Gonzales*, 476 F.3d 125, 131-38 (2d Cir. 2007) (reviewing a motion to terminate that disputed Ibragimov's removability).

Finally, this Court lacks jurisdiction to review Petrova's implicit claim that CBP erroneously commenced expedited removal proceedings because that determination is committed to agency discretion by law.  5 U.S.C. § 701(a)(1); Fed. R. Civ. P. 12(b)(1); ECF No. 72 at ¶ 99.  Congress stripped courts of "jurisdiction to hear any cause or claim by or on behalf of any alien

arising from the decision or action by the [Secretary] to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" 8 U.S.C. § 1252(g). That prohibition was designed to bar "attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). And Courts have uniformly held that § 1252(g) thus bars judicial review of DHS's determination to commence (or abandon) efforts to remove a noncitizen. *Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008); *see, e.g., Tazu v. Att'y Gen.*, 975 F.3d 292, 296, 298 (3d Cir. 2020) (holding that § 1252(g) bars statutory and constitutional challenges to the commencement, adjudication, and execution of removal proceedings in district court); *Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007) (holding that § 1252(g) bars a false arrest claim, challenging a half-completed expedited removal order). Notably, Congress expressly extended that prohibition on judicial review to DHS's choice to pursue expedited removal. 8 U.S.C. § 1252(a)(2)(A)(ii). Thus, Petrova's "challenge to DHS's decision to commence removal proceedings against [her] falls within the scope of the judicial review provisions of the INA," and this Court lacks jurisdiction to entertain her claim. *Ali*, 524 F.3d at 150; *see* 8 U.S.C. §§ 1252(a)(2)(A), 1252(g); *Reno*, 525 U.S. at 485 n.9.

In short, this Court should dismiss Petrova's challenge to CBP's inadmissibility determination because it is moot and falls clearly outside of this Court's jurisdiction to review. Fed. R. Civ. P. 12(b)(1); 5 U.S.C. § 701(a)(1)-(2).

### C.    Petrova's challenge to the cancellation of her admission records fails to state a claim and falls outside the Court's jurisdiction.

Petrova's challenge to the cancellation of her admission stamp and Form I-94 must be dismissed because it is entirely contingent on this Court's jurisdiction to review her actual admissibility or inadmissibility to the United States. Fed. R. Civ. P. 12(b)(1); *see* 8 C.F.R. § 1.4 (explaining that a Form I-94 documents "arrival/departure and admission or parole information by

DHS").  Because this Court lacks jurisdiction to admit Petrova to the United States or determine whether she is actually inadmissible for the reasons discussed above, *see supra* Argument § I.B, it follows that the Court also lacks jurisdiction to order CBP to produce a document memorializing her non-existent admission to the United States.  8 U.S.C. § 1252(a)(5), (b)(9); *see Delgado*, 643 F.3d at 55-56.

Petrova's challenge to the cancellation of her admission stamp and Form I-94 also fails to state a claim.  Fed. R. Civ. P. 12(b)(6).  Congress defined "admission" to include "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  As the Second Circuit explained in *Correa v. Thornburgh*, to establish that a noncitizen effectuated an "entry," she must prove that: (1) she crossed into the territorial limits of the United States; (2)(a) was inspected and admitted by an immigration officer, or (b) actually and intentionally evaded of inspection at the nearest inspection point; and (3) was free from official restraint.  901 F.2d at 1169-72 (2d Cir. 1990) (rejecting a claim that a noncitizen who cleared primary inspection at an airport made an entry because she was never free of official restraint and was arrested near the baggage area); *see Lopez v. Sessions*, 851 F.3d 626, 630 (6th Cir. 2017) (applying the same entry standard); *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1321 (11th Cir. 2001) (same).  The Tenth Circuit observed that those requirements were created to "align the rights of [noncitizens] who had technically crossed the border but were not free to move within the general population with the rights of [noncitizens] turned away at the border[.]" *United States v. Gaspar-Miguel*, 947 F.3d 632, 633 (10th Cir. 2020).  Thus, a noncitizen cannot establish that she was free from official restraint simply because she was inspected and her passport was stamped "admitted" by an immigration officer.  *See Matter of Pierre*, 14 I. & N. Dec. 467, 469 (BIA 1973) ("the Courts have held no entry is made when the [noncitizen] is taken into custody

upon his arrival at an American port (even though he may possess a valid immigrant visa).")
(citation omitted); *see, e.g.*, *Sidhu*, 368 F.3d at 1161-62 (noncitizen whose passport was stamped
"admitted" in the Los Angeles airport was not admitted under 8 U.S.C. § 1101(a)(13)(A) because
she was detained at secondary inspection).

Here, Petrova concedes that CBP detained her during secondary screening within the
customs enclosure at Boston Logan Airport and fails to allege that she ever became free from
official restraint.  ECF No. 72 at ¶¶ 53-69; *see* 8 U.S.C. § 1201(h) (a valid visa does not entitle a
noncitizen to admission); *Correa*, 901 F.2d at 1169-72 (rejecting a claim that a noncitizen who
cleared primary inspection at an airport made an entry because she was never free of official
restraint and was arrested near the baggage area).  Thus, Petrova fails to plausibly allege that she
was admitted to the United States after authorization by an immigration office as contemplated by
8 U.S.C. § 1101(a)(13).  Accordingly, her claim must be dismissed.  Fed. R. Civ. P. 12(b)(6);
*Twombly*, 550 U.S. at 555.

Finally, Petrova's contention that the cancellation of her Form I-94 violates her due process
rights fails to state a claim because, as an arriving alien, she is only entitled to the process that
Congress provided.  *Thuraissigiam*, 591 U.S. at 139-40 (explaining that the admission of aliens is
a sovereign prerogative); Fed. R. Civ. P. 12(b)(1); ECF No. 93 at ¶ 116.  Congress provided that
Petrova should be detained pending the outcome of removal proceedings to determine whether she
should be admitted to the United States, *see Thuraissigiam*, 591 U.S. at 139-40, and she fails to
identify any authority entitling her to a Form I-94 before her admissibility is determined.  Fed. R.
Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 555.  Accordingly, this Court should dismiss Petrova's
challenge to CBP's alleged cancellation of her Form I-94.

**D.    Petrova's Customs Claim Should Be Dismissed for Failure to State a Claim and Want of Jurisdiction.**

The Court should also dismiss Petrova's customs act claim for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *see Achtman*, 464 F.3d at 337; ECF No. 93 at ¶¶ 94-95.  Neither the commencement nor conclusion of customs proceedings under 19 U.S.C. § 1497 is a prerequisite to the commencement of expedited removal proceedings under 8 U.S.C. § 1225 or removal proceedings under 8 U.S.C. § 1229a.  *See* 8 U.S.C. §§ 1182, 1227 (listing grounds of inadmissibility and deportability); *see generally Argaw v. Ashcroft*, 395 F.3d 521, 526 n.1 (4th Cir. 2005) (rejecting the government's argument that the criminal-alien bar, 8 U.S.C. § 1252(a)(2)(C), applied because "a § 1497 violation was not the basis of the removal order against Argaw.").  On the contrary, expedited removal proceedings may be commenced when a noncitizen is seeking admission and the inspecting officer "determines that" she "is inadmissible under section 1182(a)(6)(C) or 1182(a)(7)[.]"    8 U.S.C.  § 1225(b)(1)(A)(i).    And, in removal proceedings, a noncitizen "may be charged with *any* applicable ground of inadmissibility under section 1182(a) of this title or *any* applicable ground of deportability under section 1227a of this title." 8 U.S.C. § 1229a(a)(2) (emphasis added; discussing "charges" in removal proceedings).

None of those removability grounds require DHS to impose a monetary fine on a noncitizen for customs violations under 19 U.S.C. § 1497.  *Id*.  And a customs violation is not a prerequisite for DHS to exercise its detention authority.  8 U.S.C. § 1225(b)(1)(B)(ii), (b)(2)(A); 8 C.F.R. § 1003.19(h)(2)(i)(B); *see Jennings*, 583 U.S. at 285-89, 297-302 (discussing the authority under 8 U.S.C. § 1225 to detain noncitizens seeking admission at a port of entry).  Because there is no requirement that DHS *refuse* to exercise its prosecutorial discretion and fine a noncitizen for a customs violation before commencing proceedings to remove a noncitizen, even accepting as true Petrova's factual assertion that she violated 19 U.S.C. § 1497, ECF No. 72 at ¶ 52, she does not

19

state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *see Iqbal*, 556 U.S. at 678

("the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions . . . Pleadings that are no more than conclusions are not entitled

to the assumption of truth."); *Achtman*, 464 F.3d at 337.

This Court should also dismiss Petrova's customs act claim for want of jurisdiction.  Fed.

R. Civ. P. 12(b)(1).  The Supreme Court has squarely held that "an agency's decision not to

prosecute or enforce, whether through civil or criminal process, is a decision generally committed

to an agency's absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Texas*, 599

U.S. at 679.  The forfeiture provision at 19 U.S.C. § 1497 fits squarely within that regime because

it is:

> intended to aid in the enforcement of tariff regulations.  It prevents forbidden
> merchandise from circulating in the United States, and, by its monetary penalty, it
> provides a reasonable form of liquidated damages for violation of the inspection
> provisions and serves to reimburse the Government for investigation and
> enforcement expenses.  In other contexts we have recognized that such purposes
> characterize remedial rather than punitive sanctions.

*One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 237 (1972).  Indeed, as

the Supreme Court has held, the government has "discretion" to enforce 19 U.S.C. § 1497.  *United*

*States v. Von Neumann*, 474 U.S. 242, 250 (1986) (explaining that customs officials could decline

to "pursue a complete forfeiture" of undeclared items "despite the Government's entitlement" to

do so).  Because CBP officers have discretion to enforce the customs laws, Petrova's claim should

also be dismissed for want of jurisdiction.  5 U.S.C. § 701(a)(2); Fed. R. Civ. P. 12(b)(1).

In short, this Court should dismiss Petrova's customs act claim because this Court lacks

jurisdiction to order CBP to fine (or prosecute) Petrova, and she fails to state a claim upon which

relief can be granted.  Fed. R. Civ. P. 12(b)(1); 5 U.S.C. § 701(a)(1)-(2).

**E.     This Court cannot review Petrova's criminal prosecution.**

Petrova also asserts that her criminal prosecution in *United States v. Kseniia Petrova*, 1:25-mj-05150-JGD (D. Mass.), is "appalling" and "violates [her] right to . . . due process," ECF No. 72 at ¶ 118, but her immigration proceedings commenced on the day she sought admission to the United States, and the Second Circuit has held that there is "no statutory conflict between the detention-and-release provisions of the [Bail Reform Act] and the INA" and "the BRA does not preclude the government from exercising its independent detention authority under the INA." *United States v. Litt*, 944 F.3d 467, 470 (2d Cir. 2019); *cf. Lanferman v. Board of Imm. App.*, 576 F.3d 84, 88 (2d Cir. 2009) (criminal proceedings cannot be collaterally attacked in immigration proceedings). Thus, Petrova fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 555.

**F.     Summary**

Petrova's attempt to challenge CBP's revocation of her J-1 visa, Form I-94, and (moot) inadmissibility determination is an understandable, but transparent, attempt to circumvent the jurisdictional bars Congress established, which unambiguously prohibit any such challenges in district court, and channel all review of visa revocation determinations to IJs, the Board of Immigration Appeals, and the Courts of Appeals. 8 U.S.C. §§ 1201(i), 1252(a)(5), 1252(b)(9). Accordingly, because this Court lacks jurisdiction over Petrova's claims, it should dismiss Counts 1 and 5. Fed. R. Civ. P. 12(b)(1); *see* 8 U.S.C. §§ 1201(i), 1252(a)(2)(A), 1252(a)(5), 1252(b)(9), 1252(d)(1), 1252(e); *Delgado*, 643 F.3d at 55-56.

**III.    THIS COURT SHOULD ALSO DISMISS PETROVA'S APA CLAIMS (COUNT 1) FOR IMPROPER VENUE.**

If the Court declines to dismiss Petrova's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), then the Court should dismiss it for improper venue. Fed. R. Civ. P.

12(b)(3); 28 U.S.C. § 1406(a). "On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue is proper in that forum falls on the plaintiff." *Country Home Products, Inc. v. Schiller-Pfeiffer, Inc.*, 350 F. Supp. 2d 561, 568 (D. Vt. 2002). "In a lawsuit brought under the APA, venue is governed by 28 U.S.C. § 1391(e)." *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 253 (E.D.N.Y. 2021). In turn, 28 U.S.C. § 1391(e) provides that a suit against the federal government or a federal official acting in his or her official capacity can be brought in any judicial district where (1) "a defendant in the action resides"; (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "the plaintiff resides if no real property is involved in the action." Petrova has not met her burden to establish that this Court is the proper venue for her APA claims because: (1) Federal Defendants are not domiciled in this district, 28 U.S.C. § 1391(e)(1)(A), *see Adams, Nash & Haskell, Inc. v. United States*, 2020 WL 1305620, at *2 (D.N.J. Mar. 19, 2020) ("For purposes of § 1391(e)(1)(A), the United States and its agencies reside in Washington, D.C."); (2) all of the events giving rise to her APA claims occurred in Massachusetts, ECF No. 72 at ¶¶ 5, 52, 28 U.S.C. § 1391(e)(1)(B); and (3) Petrova is not domiciled in this district, 28 U.S.C. § 1391(e)(1)(C), ECF No. 72 at ¶ 5. Accordingly, if the Court reaches the issue, it should also dismiss Petrova's complaint under Fed. R. Civ. P. 12(b)(3). *Country Home Products, Inc.*, 350 F. Supp. 2d at 568.

## IV.    FINALLY, THE COURT SHOULD DISMISS COUNTS 2-4 FOR LACK OF VENUE AND BECAUSE THE RELIEF REQUESTED IS OUTSIDE THE SCOPE OF HABEAS.

In her amended habeas petition and complaint, Petrova added three counts related to her April 10, 2025-FOIA request. ECF No. 72 ¶¶ 80-81, 100-113. That FOIA request—allegedly made nearly two months after her initial detention—seeks "Any and all records regarding to the

entry/admission at Boston Logan Airport that took place on or around February 16, 2025.  Also, any and all records related to an alleged customs violation on or around February 16, 2025." ECF No. 72-6.  Counts 2-4 of the Amended Petition claim that CBP failed to conduct an adequate search for records, disclose responsive records, and timely respond.  ECF No. 72 ¶¶ 100-113.  The Court should dismiss those Counts because the District of Vermont is not the proper venue under 5 U.S.C. § 552(a)(4)(B) and because the relief request falls far outside the scope of habeas.

### A.    The District of Vermont is not a proper venue for the FOIA claims.

Unlike habeas jurisdiction, venue for FOIA claims is governed by 5 U.S.C. § 552(a)(4)(B).  Under 5 U.S.C. § 552(a)(4)(B), only three judicial districts have jurisdiction over FOIA claims: the district (1) "in which the complainant resides, or has [her] principal place of business," (2) the district "in which the agency records are situated," or (3) "the District of Columbia."  This District is none of those.

First, Petrova does not reside in this district. Rather, Petrova is a Russian national and "a resident of Boston, Massachusetts."  ECF No. 72 ¶ 16. She does not—and has never—resided in the District of Vermont, and cannot establish venue in this District on that basis.

Second, the amended petition "is entirely devoid of allegations as to where the relevant records are located." *See Abissi v. United States Citizenship and Imm. Servs.*, 729 F. Supp. 3d 505, 509 (D. Md. 2024).  Petrova's unspecific FOIA request seeks documents related to her initial detention at Boston Logan Airport, ECF No. 72-6, and the Amended Petition provides no reason to think those documents are "situated" in Vermont.  Indeed, Petrova cannot establish venue here even if she asserted that there was a "possibility that requested documents may be located in [this] district." *See Friends of the River v. U.S. Army Corps of Eng'rs*, 2016 WL 6873467, at *2 (N.D. Cal. Nov. 22, 2016) (collecting cases).  Petrova therefore cannot meet her burden to make a prima

facie showing that the District of Vermont is the proper venue under this prong of section 552(a)(4)(B). Fed. R. Civ. P. 12(b)(3); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).

Third, the United States District Court for the District of Columbia may well be a proper venue for Petrova's FOIA claims because it is "an all-purpose forum in FOIA cases" with "substantial expertise in working with FOIA." *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983). But this District is not a proper venue.

This Court should accordingly dismiss Counts 2-4 of the Amended Petition for lack of venue. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). In the alternative, the Court should transfer those claims to the District of Massachusetts, where events giving rise to any requested documents occurred, where Petrova resides, and where she has a pending criminal case, or the District of Columbia.

### B. Petrova's requested relief is beyond the scope of habeas.

Even if this Court were the appropriate venue for Petrova's FOIA claims, this case is not the proper vehicle. This Court is adjudicating a habeas petition, which is a challenge to Petrova's detention. In her Amended Petition, Petrova now requests that this Court order CBP to search for and produce records responsive to her FOIA request. That relief does not sound in habeas, and the Court should dismiss Counts 2-4 as outside the scope of habeas relief.

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The writ of habeas corpus and its protections are "strongest" when reviewing "the legality of Executive detention." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001).

Therefore, the traditional function of the writ is to seek one's release from unlawful detention. *Thuraissigiam*, 591 U.S. at 117 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). Petrova originally sought "simple release," which is a viable habeas remedy, but she now impermissibly seeks more. *See Thuraissigiam*, 591 U.S. at 119 ("Claims so far outside the 'core' of habeas may not be pursued through habeas.").

Ordering CBP to act on Petrova's FOIA claims has nothing to do with her detention or release. The Court's order releasing Petrova (albeit on bail) comports with traditional habeas relief. The FOIA-related relief she now seeks goes well beyond that. The Court should therefore decline to extend the writ and not entertain relief other than release from custody.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Petrova's petition and complaint.

Respectfully submitted,

BRETT A. SHUMATE                                MICHAEL P. DRESCHER
Assistant Attorney General                      Acting United States Attorney
Civil Division

LINDSAY M. VICK                                 MATTHEW J. GREER
Senior Litigation Counsel                       Assistant United States Attorney
Office of Immigration Litigation                P.O. Box 570
                                                Burlington, VT 05402-0570
                                                (802) 951-6725
/s/ *Jeffrey M. Hartman*                        Matthew.Greer@usdoj.gov
JEFFREY M. HARTMAN
Trial Attorney (WSBA No. 49810)
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4404
Jeffrey.M.Hartman@usdoj.gov                     *Attorneys for Federal Respondent*

Dated: June 27, 2025