UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 SEP 26  PM 1:57

CLERK

BY_____ HBC
DEPUTY CLERK

KSENIIA PETROVA,                                    )
                                                    )
        Petitioner,                                 )
                                                    )
        v.                                          )        Case No. 2:25-cv-00240
                                                    )
U.S. DEPARTMENT OF HOMELAND                         )
SECURITY; KRISTI NOEM, Secretary of the             )
U.S. Department of Homeland Security, in her        )
official capacity; THERESA MESSIER,                 )
Superintendent, Chittenden Regional Correctional    )
Facility, in her official capacity; PETE R.         )
FLORES, Acting Commissioner, U.S. Customs           )
and Border Protection; JULIO CARAVIA,               )
Director, Boston Logan Airport Port of Entry,       )
U.S. Customs and Border Protection;                 )
PAMELA J. BONDI, U.S. Attorney General;             )
PAUL CAMPBELL, Warden, Ouachita                     )
Correctional Center, Monroe, LA; KEITH              )
DEVILLE, Warden, Richwood Correctional              )
Center, Monroe, LA,                                 )
                                                    )
        Respondents.                                )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
THE FEDERAL RESPONDENTS' MOTION TO DISMISS**
(Doc. 91)

On February 23, 2025, Kseniia Petrova filed a petition for writ of habeas corpus
and complaint (the "Original Petition") for declaratory and injunctive relief with respect
to her detention by U.S. Immigration and Customs Enforcement ("ICE"). Ms. Petrova
contended that upon her attempt to enter the United States on February 16, 2025, U.S.
Customs and Border Protection ("CBP") canceled her valid J-1 visa without legal
grounds to do so and illegally detained her. Named as respondents were the U.S.
Department of Homeland Security ("DHS"); DHS Secretary Kristi Noem, in her official
capacity; and Theresa Messier, superintendent of the Chittenden Regional Correctional

Facility, in her official capacity (the "Original Respondents").

On April 25, 2025, the government filed a motion to dismiss the petition and complaint for lack of jurisdiction and improper venue. (Doc. 37.) Ms. Petrova filed a response on May 9, 2025, (Doc. 41), and the court held a hearing on May 14, 2025. On May 30, 2025, with leave of the court, (Docs. 59, 70), Ms. Petrova filed the First Amended Petition (Doc. 72).

The First Amended Petition names as respondents DHS; DHS Secretary Kristi Noem; Pete R. Flores, Acting Commissioner of CBP; Julio Caravia, Director of the Boston Logan Airport Port of Entry; U.S. Attorney General Pamela J. Bondi (collectively, the "Federal Respondents"); Theresa Messier, superintendent of the Chittenden Regional Correctional Facility; Paul Campbell, warden of the Ouachita Correctional Center in Monroe, Louisiana; and Keith Deville, warden of the Richwood Correctional Center in Monroe, Louisiana.

The Federal Respondents filed an answer and motion to dismiss the First Amended Petition on June 27, 2025. (Doc. 91.) Ms. Petrova opposed the motion to dismiss on July 11, 2025. (Doc. 92.) The Federal Respondents filed a reply on July 23, 2025, at which point the court took the motion to dismiss under advisement. (Doc. 93.)

Ms. Petrova is represented by Gregory Romanovsky, Esq., and Brian S. Green, Esq. Respondent Messier is represented by Debbie H. Stevens, Esq. The Federal Respondents are represented by Jeffrey M. Hartman, Esq., and Assistant United States Attorney Matthew J. Greer.

## I.    Factual and Procedural Background.

### A.    Events of February 16, 2025.

Ms. Petrova is a research scientist who is a citizen of Russia and who resides in Boston, Massachusetts. (Doc. 72 at 5, ¶ 16.) At all times relevant to her First Amended Petition, she was employed by Harvard University where she was "conducting groundbreaking scientific research at Harvard University in the fields of embryology and the biology of aging[,]" which "is essential for understanding how cells and organisms develop, grow, and age, and how these processes go awry in diseases, including cancers."

*Id.* At 12, ¶ 45 (internal quotation marks omitted). According to Harvard University, she "brings important skills and talents to our country that enrich our labs, spark innovation, and advance research and development." *Id.* At 20, ¶ 92 (internal quotation marks omitted).

On May 11, 2023, Ms. Petrova entered the United States with a valid J-1 visa and has since traveled to and from the United States several times without violating the terms or conditions of her visa or nonimmigrant status. *Id.* at 12, ¶¶ 44, 46. A J-1 visa "is a non-immigrant visa that allows people to participate in exchange visitor programs in the United States" and is often held by noncitizen research scholars and professors. *Id.* at 12, ¶ 44.

On or about January 23, 2025, Ms. Petrova traveled to Europe for a vacation. *Id.* at ¶ 47. Before she returned from her trip, Dr. Leon Peshkin, her supervisor at Harvard University, "asked her to bring histological samples of frog embryos from his scientific collaborators at the *Institut Curie* in France back to Harvard, so that their lab could continue processing and analyzing data from [the samples]." (Doc. 72 at 12-13, ¶ 48.) "The samples were non-hazardous, noninfectious, and non-toxic, intended solely for fundamental research purposes." *Id.* at 13, ¶ 49. Ms. Petrova alleges that "[u]nder applicable customs laws and regulations, the embryos were not classified as prohibited items and did not require a permit for importation into the United States." *Id.* at 13, ¶ 50. Dr. Peshkin asked Ms. Petrova to bring them in person rather than have the samples shipped because of his previous experiences with sample shipments being delayed or lost in transit. *Id.* at ¶ 51. Ms. Petrova had no prior experience transporting research samples and "was unfamiliar with U.S. customs requirements regarding" them. *Id.* at ¶ 52.

When attempting to reenter the United States at Boston Logan International Airport ("Boston Logan Airport") on February 16, 2025, Ms. Petrova carried the samples in her luggage and did not declare them to U.S. customs. *Id.* at ¶ 52. At the airport, Ms. Petrova presented her valid J-1 visa to the inspecting CBP officer and received a J-1 admission stamp indicating that she was admitted to the United States as a J-1 visa holder. (Doc. 72 at ¶ 53.) At approximately the same time, the CBP officer generated an

I-94 Record of Admission. At the baggage carousel, another CBP officer approached her and escorted her to a room to question her and examine her luggage. *Id.* at ¶ 54. At some point, CBP searched Ms. Petrova's cellphone. Ms. Petrova alleges that:

> [u]pon discovery of the samples following a search of her luggage, the CBP officer failed to pursue the statutory and regulatory process for failure to declare an article in luggage. [She] was neither served with any customs-related documentation nor issued a penalty under 19 U.S.C. § 1497 for failure to declare an article in her possession.

*Id.* at 14, ¶ 55.

A secondary inspection was conducted, additional customs-related questions were posed, and a CBP officer declared Ms. Petrova "inadmissible pursuant to INA 212(a)(7)(A)(i)(I) as an immigrant without a valid and unexpired immigrant document[,]" and marked Ms. Petrova's J-1 visa in her passport "CANCELLED – BOS." *Id.* at ¶¶ 58-59 (internal quotation marks omitted).

According to the Record of Sworn Statement[1] created from Ms. Petrova's interview, the CBP officer questioned Ms. Petrova regarding her country of origin, citizenship, whether she had any claim to lawful permanent residency or citizenship in the United States, whether she had any pending petitions to live or work in the United States, her parents' citizenship and residence, and whether she has any relatives that are citizens or lawful permanent residents in the United States. (Doc. 24 at 11-12.) Ms. Petrova answered that she was from Russia, had no claim to permanent residency or citizenship and had no pending petitions to live or work in the United States. She advised that her parents were Russian citizens who resided in Russia and who had never resided in the United States and that she had no relatives who are citizens or lawful permanent residents of the United States. *Id.*

---

[1] "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024) (internal quotation marks omitted) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)). Although the Record of Sworn Statement is not attached to the First Amended Petition, the First Amended Petition quotes from the document. It is therefore incorporated by reference for the purpose of deciding this motion to dismiss. (Doc. 72 at 14, ¶ 58.)

When asked about the purpose of her travel, Ms. Petrova said she was returning to where she lives and works and advised that she was a biology research assistant at Harvard Medical School. *Id.* at 12-13. The CBP officer allegedly asked Ms. Petrova, "You were asked by the primary officer if you were traveling with any biological material. You stated ['no,'] do you understand?" and "You were asked by an agricultural specialist if you were traveling with any biological material. You stated ['no,'] do you understand?" *Id.* at 13. The Record of Sworn Statement indicates Ms. Petrova responded "[y]es" to both questions. *Id.* Ms. Petrova contests this version of the facts, asserting: "Through the recently obtained video of [Ms.] Petrova's primary inspection, we now know that she was not asked whether she was carrying 'biological materials' or had anything to declare." (Doc. 92 at 1.)

The CBP officer allegedly questioned Ms. Petrova about "a Styrofoam box with biologicals as well as loose biologicals in multiple Ziplock bags in [her] duffel bag[.]" (Doc. 24 at 13.) When asked if she had packed "the biological contents" into her duffel bag, Ms. Petrova answered "yes." *Id.* When asked to describe "what type of biological material" she had in the duffel bag, Ms. Petrova answered "[f]ixed and embedded frog embryos[.]" *Id.* She identified the laboratory the samples were obtained from and stated she was bringing them into the United States to finish an experiment in "[s]patial transcriptomics[.]" *Id.* When asked whether she knew she was "supposed to declare biological material when entering the United States[,]" Ms. Petrova said she "was not sure[.]" *Id.* at 14.

The CBP officer inquired about a text message on Ms. Petrova's phone in which a colleague wrote, "if you bring samples or antibody back, make sure you get the permissions etc. Like that link [I] sent . . . about frog embryos because TSA went through my bags at customs in Boston[.]" *Id.* (internal quotation marks omitted). The CBP officer asked Ms. Petrova if she had a permit "that would allow [her] to import this biological material[,]" and she answered "[n]o." (Doc. 24 at 14.) The officer then said, "I'll ask the question again; did you know that you are supposed to declare biological material when entering the United States?" *Id.* Ms. Petrova answered, "I was not sure about embryos

5

specifically[.]" *Id.* The CBP officer asked Ms. Petrova about a text message in which another colleague asked her, "what is your plan for getting through [U.S.] Customs with samples?" and Ms. Petrova responded, "No plan yet[];[] I won't be able to swallow them[.]" *Id.* (internal quotation marks omitted). Ms. Petrova affirmed that she sent and received the text messages.

After this exchange, the CBP officer informed Ms. Petrova, "You are inadmissible pursuant to INA 212(a)(7)(A)(i)(I) as an immigrant without a valid and unexpired immigrant document. Your true intentions cannot be determined. Do you understand?" *Id.* Ms. Petrova answered "[y]es." The CBP officer advised, "You are being afforded the opportunity to willingly withdraw your application for admission to the United States in lieu of being expeditiously removed which carries a bar of five years." The CBP officer asked Ms. Petrova if she would like to withdraw her application for admission. *Id.* at 14-15. Ms. Petrova answered "[y]es[,]" and the CBP officer told her, "Your visa will be canceled. You must obtain a visa prior to future travel to the United States. Do you understand?" Ms. Petrova's response was not recorded. The CBP officer then asked Ms. Petrova if she would like the U.S. government to inform the Russian government that she was there. Ms. Petrova answered "[n]o[.]" Ms. Petrova "indicated that she had a fear of returning to Russia, stating 'I am afraid the Russian Federation will kill me for protesting against them.'" (Doc. 72 at 16, ¶ 68.)

Ms. Petrova had a valid Schengen visa, which allows her entry into twenty-nine countries in Europe, including France.[2] She asked to return to France, but she was not permitted to do so. *Id.* at 15, ¶¶ 65, 66. She was instead taken into custody.

The CBP issued a Form I-860 (Notice and Order of Expedited Removal) asserting Ms. Petrova was subject to expedited removal under 8 U.S.C. § 1225(b)(1) for being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because she was "an immigrant not in

---

[2] "A Schengen visa is an entry permit for non-EU nationals to make a short, temporary visit of up to 90 days in any 180-day period to a country in the Schengen area." Applying for a Schengen visa, European Commission, https://home-affairs.ec.europa.eu/policies/schengen/visa-policy/applying-schengen-visa_en (last updated September 26, 2025).

possession of a valid, unexpired immigrant visa." (Doc. 72 at 16, ¶ 70) (internal quotation marks omitted). Ms. Petrova alleges that she did not express a fear regarding a return to Russia until "*after* the CBP officer had made the inadmissibility finding." *Id.* (emphasis in original).

On February 17, 2024, Ms. Petrova was transferred to ICE custody and transported to the Chittenden Regional Correctional Facility in South Burlington, Vermont. *Id.* at 16, ¶ 72. While Ms. Petrova was detained in Vermont, her attorney submitted a request for parole under 8 U.S.C. § 212(d)(5), stating that Ms. Petrova was not a risk of flight or danger to the community. No response was received to this request. Ms. Petrova did not receive a credible fear interview under 8 U.S.C. § 1225(b)(1)(A)(ii).

### B.    History of Ms. Petrova's Removal Proceedings and the Pending Proceedings.

The Immigration and Nationality Act ("INA") is the primary law governing admission of immigrants and nonimmigrants into the United States. The law designates an individual who is not a U.S. citizen or national and attempts to enter the country at a port of entry as an "[a]rriving alien[.]" 8 C.F.R. § 1.2.

If an arriving alien is found by an immigration officer to be inadmissible on certain grounds, she may be removed from the country "without further hearing or review" in a process called expedited removal. 8 U.S.C. § 1225(b)(1)(A)(i). Expedited removal "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation[,]" as well as "to certain other aliens designated by the Attorney General in h[er] discretion." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citing 8 U.S.C. § 1225(b)(1)). If an alien who is otherwise subject to expedited removal "indicates either an intention to apply for asylum . . . or a fear of persecution," he or she will be referred to an asylum officer for an interview to determine if he or she has a credible fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(ii). An alien "shall be detained" pending a credible fear interview and, if found to have a credible fear of persecution, "shall be detained" for further consideration of his or her asylum application. *Id.* §§ 1225(b)(1)(B)(ii), (iii)(IV).

On February 16, 2025, a CBP officer issued a partially completed Notice and Order of Expedited Removal ("Form I-860")[3] for Ms. Petrova. In the top section of the document, titled "DETERMINATION OF INADMISSIBILITY[,]" the document stated that Ms. Petrova was inadmissible to the United States under 8 U.S.C. § 1182(a)(7)(A)(i) because she was "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document" and "an intending immigrant with[]out valid documents as [she] claimed credible fear to return to [her] home country of Russia[.]" (Doc. 1-4 at 1.) The bottom portion of the document, titled "ORDER OF REMOVAL[,]" is unsigned.

Ms. Petrova filed the Original Petition on February 23, 2025, when she was detained in Vermont. At the time, Ms. Petrova "sought the limited relief authorized by [8 U.S.C.] § 1252(e)(4)(B)" and requested the court to order the government to produce the completed Form I-860 as habeas relief "based on the government's assertion that Ms. Petrova had been ordered removed under the expedited removal statute, 8 U.S.C. § 1225(b)(1)(A)(i)." (Doc. 72 at 2, ¶ 2.) Because the Original Respondents had not produced a completed and signed Form I-860, this court issued an Order to Show Cause on March 3, 2025 (the "March 3, 2025 Order to Show Cause") asking "why a writ of habeas corpus should not be granted to determine whether Ms. [Petrova] 'was ordered removed under [8 U.S.C. § 1225(b)(1).]'" Doc. 17 at 2 (second alteration in original) (quoting 8 U.S.C. § 1252(e)(2)(B)). On February 24, 2025, Ms. Petrova was transferred to the Richwood Correctional Center in Monroe, Louisiana. (Doc. 72 at 17, ¶ 75.)

The Original Respondents filed a stipulated motion to extend the deadline for responding to the court's March 3, 2025 Order to Show Cause because "the parties have been actively negotiating a potential resolution in this case that may obviate the need for [the Original] Respondents to file a response to the [March 3, 2025] Order to Show Cause." (Doc. 21 at 2.) The court granted this motion on March 7, 2025, and the deadline for Original Respondents to respond was extended to March 17, 2025. (Doc. 22.) At

---

[3] Because the First Amended Petition quotes and relies on this document, it is incorporated by reference. (Doc. 72 at 16, ¶ 70.)

some point during the parties' negotiations, the government conceded that Ms. Petrova had not been ordered removed.

On March 7, 2025, ICE issued a Notice to Appear ("NTA") ordering Ms. Petrova to appear before an immigration judge in Louisiana on June 26, 2025. The NTA alleged that Ms. Petrova was subject to removal pursuant to:

> 212(a)(7)(A)(i)(I) of the [INA], as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA], and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the [INA].

(Doc. 24 at 21.)

On March 17, 2025, the Original Respondents responded to the March 3, 2025 Order to Show Cause (Doc. 24) and argued that, because the March 7, 2025 NTA "superseded Ms. [Petrova's] expedited removal order . . . and provided her with the only relief that she could have obtained through this habeas petition[,]" the court should deny her petition as moot. *Id.* at 2. In seeking this relief, they cited 8 U.S.C. § 1252(e)(4)(B), which provides that if the court determines a petitioner has demonstrated that she "was not ordered removed under section 1225(b)(1) . . . the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 1229a of this title."

Because the Original Respondents' response to the March 3, 2025 Order to Show Cause did not address whether a completed Form I-860 was issued for Ms. Petrova, the court set the matter for hearing on June 9, 2025. (Doc. 26.) When negotiations between the parties failed to produce a mutually acceptable outcome, Ms. Petrova moved to expedite the hearing date, (Doc. 32), and the court granted her motion on April 15, 2025. (Doc. 33.)

On April 25, 2025, the Original Respondents filed a motion to dismiss this case for lack of subject matter jurisdiction, failure to state a claim, and improper venue. (Doc. 37.) In their motions to dismiss, the Original Respondents argued that, because Ms. Petrova

expressed she was afraid to return to Russia and was "detained pending a credible fear interview before an asylum officer," the Form I-860 could not be completed unless Ms. Petrova was found not to have a credible fear. *Id.* at 5.

Ms. Petrova opposed the motion to dismiss on May 9, 2025. (Doc. 41.) In her opposition brief, Ms. Petrova noted that the immigration judge in her removal proceedings had "ordered ICE to file a Form I-261 after finding that the initial charging document was legally deficient." *Id.* at 9 n.7. The Form I-261 sets forth the following allegations "in lieu of[] those set forth in the original charging document":

> 1. You are not a citizen or national of the United States;
>
> 2. You are a native of Russia and a citizen of Russia;
>
> 3. On February 16, 2025, you arrived at Boston Logan International Airport seeking admission on a J-1 non-immigrant visa.
>
> 4. At the time of admission, an immigration officer found you to be inadmissible to the United States due to having undeclared biological material, to wit, frog embryos, in your possession without the proper permits and supporting materials for such material.
>
> 5. You withdrew your application for admission on February 16, 2025.
>
> 6. Your J-1 visa was cancelled on February 16, 2025, under 22 C.F.R. 41.122(e)(3).
>
> 7. You were not then admitted or paroled after inspection by an Immigration Officer.
>
> 8. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act: and/or you are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

(Doc. 41-6 at 1.)[4]

On May 14, 2025, the court held oral argument on the Original Respondents' motion to dismiss. Because Ms. Petrova had not requested a release from detention or other relief, she subsequently filed a motion for leave to file an amended petition, and on

---

[4] This document was attached to Ms. Petrova's response to the Original Respondents' motion to dismiss the Original Petition and is incorporated by reference in the First Amended Petition, as it provides the government's revised grounds for Ms. Petrova's detention.

May 28, 2025, the court granted that request and further granted the Original
Respondents an opportunity to supplement their motion to dismiss. (Doc. 70.)

On May 30, 2025, the First Amended Petition was filed and alleges that the CBP's
revocation of Ms. Petrova's J-1 visa, finding of inadmissibility, and cancellation of her
admission stamp on February 16, 2025, violated the Administrative Procedure Act
("APA"), 5 U.S.C. § 706 (Count I); that the CBP failed to search for, promptly produce,
and promptly disclose records related to her admission at the Boston Logan Airport in
violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a) (Counts II, III,
and IV); and that the "CBP's unlawful actions" on February 16, 2025, and Ms. Petrova's
subsequent detention violated her right to Due Process (Count V). (Doc. 72 at 23, ¶ 116.)

## C.    Ms. Petrova's Detention and Criminal Charges.

As of February 16, 2025, Ms. Petrova remained in immigration detention and had
requested parole. Her parole request was denied on March 14, 2025, based on concerns
that she posed a flight risk. (Doc. 72 at 17, ¶ 78.) Ms. Petrova requested reconsideration
of this decision, and on March 30, 2025, her request was denied based on concerns that
she posed a flight risk and a danger to the community. *Id.* at 18, ¶ 79.

On May 12, 2025, the government filed a sealed criminal complaint in the District
of Massachusetts charging Ms. Petrova with smuggling goods into the United States in
violation of 18 U.S.C. § 545 based on her actions at Boston Logan Airport on February
16, 2025. Criminal Complaint, No. 1:25-mj-05150 (D. Mass. May 12, 2025).[5]

---

[5] Section 545 provides:

> Whoever knowingly and willfully, with intent to defraud the United States,
> smuggles, or clandestinely introduces or attempts to smuggle or clandestinely
> introduce into the United States any merchandise which should have been
> invoiced, or makes out or passes, or attempts to pass, through the customhouse
> any false, forged, or fraudulent invoice, or other document or paper; or
>
> Whoever fraudulently or knowingly imports or brings into the United States, any
> merchandise contrary to law, or receives, conceals, buys, sells, or in any manner
> facilitates the transportation, concealment, or sale of such merchandise after
> importation, knowing the same to have been imported or brought into the United
> States contrary to law--

Ms. Petrova's criminal case was unsealed on May 14, 2025. (Doc. 72-7.) Ms. Petrova, who was detained by ICE in Louisiana, was arrested based on the criminal complaint and made an initial appearance the next day before a magistrate judge in the Western District of Louisiana. The government represented that it was moving to detain Ms. Petrova, and Ms. Petrova requested that any preliminary or detention hearing be held in the District of Massachusetts. Minutes of Court, 3:25-mj-00092 (W.D. La. May 15, 2025). Ms. Petrova was subsequently remanded to the custody of the U.S. Marshals Service ("USMS") for transport to the District of Massachusetts. *Id.* The government lodged an immigration detainer asking that Ms. Petrova be transferred to ICE's custody in the event she was released from the USMS's custody.

On the date of Ms. Petrova's May 28, 2025 bail hearing before this court, she was no longer in ICE's custody. She was, instead, held by the USMS pending her criminal proceeding in the District of Massachusetts. In light of the ICE detainer and the likelihood that Ms. Petrova would be returned to ICE detention if released on bail in her criminal case, for the purposes of her habeas petition and pursuant to the federal court's "inherent authority to admit habeas petitioners to bail[,]" the court granted bail to Ms. Petrova in this case in a ruling on the record. *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001).

Ms. Petrova remained in custody in her criminal case until June 12, 2025, on which date, at a detention hearing in the District of Massachusetts, she was released on conditions. Electronic Clerk's Notes, No. 1:25-mj-05150 (D. Mass. June 12, 2025). On June 16, this court issued an order setting conditions for Ms. Petrova's release in her habeas case, including a condition that the government notify the court if it seeks to re-detain Ms. Petrova in connection with her immigration proceedings. (Doc. 89.) The court has since received no communication from Ms. Petrova or the government regarding any effort to re-detain her.

On June 25, 2025, a grand jury in the District of Massachusetts indicted Ms.

---

Shall be fined under this title or imprisoned not more than 20 years, or both.

Petrova on charges of Concealment of Material Fact, 18 U.S.C. § 1001(a)(1); False Statement, 18 U.S.C. § 1001(a)(2); and Smuggling Goods into the United States, 18 U.S.C. § 545. Indictment, No. 1:25-cr-10272 (D. Mass. June 25, 2025). Ms. Petrova contends the "criminal charges were brought solely to gain leverage in her immigration proceedings, [as evidenced by the fact that] upon bringing the charges, the government quickly offered her a deferral of prosecution—on the condition that she abandon her immigration claims and self-deport." (Doc. 92 at 2.)

### D.    Ms. Petrova's FOIA Requests.

On April 10, 2025, Ms. Petrova's counsel submitted a FOIA request to CBP "seeking 'any and all records regarding [Ms. Petrova's] entry/admission at Boston Logan Airport . . . on February 16, 2025' and 'any and all records related to an alleged customs violation on or around February 16, 2025.'" (Doc. 72 at 18, ¶ 80) (quoting Doc. 72-6) (alterations in original). CBP did not respond to this request and, as of May 30, 2025, had not searched its records. *Id.* at 22, ¶ 103.

## II.    Conclusions of Law and Analysis.

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention[.]" *Kapoor v. DeMarco*, 132 F.4th 595, 610 (2d Cir. 2025) (quoting *INS v. St. Cyr*, 533 U.S. 289, 301 (2001)) (internal quotation marks omitted).

At issue in this case are a number of statutes that must be harmonized to determine what, if any, remaining relief Ms. Petrova is entitled to now that she has been released.

### A.    The Tariff Act Governs Customs Violations.

The Tariff Act of 1930, known as the Smoot-Hawley Tariff Act, governs the penalties that may be imposed if a person fails to declare an article on a customs form or upon questioning at the time of the person's entry into the United States. In relevant part,

it provides:

> (1) Any article which--
>
>> (A) is not included in the declaration and entry as made or transmitted; and
>>
>> (B) is not mentioned before examination of the baggage begins--
>>
>>> (i) in writing by such person, if written declaration and entry was required, or
>>>
>>> (ii) orally, if written declaration and entry was not required;
>>>
>>> shall be subject to forfeiture and such person shall be liable for a penalty determined under paragraph (2) with respect to such article.
>
> (2) The amount of the penalty imposed under paragraph (1) with respect to any article is equal to--
>
>> (A) if the article is a controlled substance, either $500 or an amount equal to 1,000 percent of the value of the article, whichever amount is greater; and
>>
>> (B) if the article is not a controlled substance, the value of the article.

19 U.S.C. § 1497.

Federal regulations authorize a CBP officer to seize "[a]ny article in the baggage of a passenger arriving from a foreign country which is not declared . . . [and] the personal penalty prescribed by [§ 1497] shall be demanded from the passenger." 19 C.F.R. § 148.18(a). If the article is not seized, "a claim for the personal penalty shall be made against the person who imported the article without declaration." *Id.* Nowhere in the Tariff Act is there authorization to revoke a person's visa or other travel document for a customs violation.

### B.    The Authority to Revoke a Visa.

Pursuant to 8 U.S.C. § 1201(i), the authority to revoke or cancel a properly issued visa is generally the exclusive prerogative of the consular officer or the Secretary of State. The statute provides: "After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation." *Id.* A CBP officer has limited authority to "revoke a valid visa by physically canceling it[,]" 22 C.F.R. § 41.122(e), but the nine grounds for doing so do not include a customs violation or even suspected smuggling of

14

merchandise.[6] The government has not argued otherwise.

### C.    The APA.

Under the APA, the reviewing court may "hold unlawful and set aside agency action" if it is:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of

---

[6] An immigration officer is authorized to revoke a valid visa by physically canceling it in accordance with the procedure described in paragraph (d) of this section if:

> (1) The alien obtains an immigrant visa or an adjustment of status to that of permanent resident;
>
> (2) The alien is ordered excluded from the United States under INA 236, as in effect prior to April 1, 1997, or removed from the United States pursuant to INA 235;
>
> (3) The alien is notified pursuant to INA 235 by an immigration officer at a port of entry that the alien appears to be inadmissible to the United States, and the alien requests and is granted permission to withdraw the application for admission;
>
> (4) A final order of deportation or removal or a final order granting voluntary departure with an alternate order of deportation or removal is entered against the alien;
>
> (5) The alien has been permitted by DHS to depart voluntarily from the United States;
>
> (6) DHS has revoked a waiver of inadmissibility granted pursuant to INA 212(d)(3)(A) in relation to the visa that was issued to the alien;
>
> (7) The visa is presented in connection with an application for admission to the United States by a person other than the alien to whom the visa was issued;
>
> (8) The visa has been physically removed from the passport in which it was issued; or
>
> (9) The visa has been issued in a combined Mexican or Canadian B–1/B–2 visa and border crossing identification card, and the immigration officer makes the determination specified in § 41.32(c) with respect to the alien's Mexican citizenship and/or residence or the determination specified in § 41.33(b) with respect to the alien's status as a permanent resident of Canada.

22 C.F.R. § 41.122(e).

statutory right; [or]

(D) without observance of procedure required by law[.]

5 U.S.C. § 706(2)(A)-(D). If it finds a violation of the APA, a court may order declaratory or injunctive relief. 5 U.S.C. §§ 702, 706; 28 U.S.C. §§ 2201-02; 28 U.S.C. § 1651.

### D.    Ms. Petrova's Claims and the Federal Respondents' Motion to Dismiss.

Ms. Petrova contends that her detention was unlawful because it arose from a CBP officer's unauthorized and arbitrary and capricious revocation of her valid visa and determination of her inadmissibility based on a customs violation. She argues that all proceedings flowing from those illegal acts are invalid and seeks declaratory and injunctive relief.

The Federal Respondents seek dismissal of the First Amended Petition, arguing that Ms. Petrova has been released and there is no further relief this court is authorized to grant her. They assert the issues she raises are barred by the INA's jurisdiction stripping provisions and may only be considered by a Court of Appeals deciding a final challenge to an order of removal. They further argue that, as the operative facts took place in the District of Massachusetts, venue lies in that district for Ms. Petrova's APA claims. They contend that Ms. Petrova's FOIA claims must be dismissed for improper venue and are not properly part of a habeas petition.

### E.    Standard of Review.

A "district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The plaintiff bears the burden of establishing subject matter jurisdiction. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006); *see also Makarova*, 201 F.3d at 113 (stating the "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists").

On a Rule 12(b)(1) motion, the court accepts as true "'all material allegations of

the complaint[] and . . . construe[s] the complaint in favor of the complaining party.'" *Cortlandt St. Recovery Corp.*, 790 F.3d at 417 (first brackets in original) (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

"Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.'" *Blackwelder v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) (*citing Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). A case becomes moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *Id.* at 551 (*quoting Murphy v. Hunt*, 455 U.S. 478, 481 (1982)); *see also Jefferson v. Abrams*, 747 F.2d 94, 96 (2d Cir. 1984). When this occurs, the case or controversy requirement is not satisfied, and a federal court lacks subject matter jurisdiction over the action. *Blackwelder*, 866 F.2d at 550; *Jefferson*, 747 F.2d at 96; *see also Martin–Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

"A motion to dismiss a habeas petition is reviewed under the same standard as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6)." *Pittman v. Cook*, 2020 WL 2840256, at *3 (D. Conn. June 1, 2020) (citing *Purdy v. Bennett*, 214 F. Supp. 2d 348, 353 (S.D.N.Y. 2002)). To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a

"two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

"A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of personal jurisdiction." *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014). The court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *E.P.A. ex rel. McKeown v. Port Auth.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)). "[I]n deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper.'" *Id.* (quoting *McKeown*, 162 F. Supp. 2d at 183).

### F.    Whether Ms. Petrova's Release Renders Her Habeas Petition Moot.

"[T]he Supreme Court has recognized that '[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed,' and that 'if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.'" *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 100 (2d Cir. 1999) (second alteration in original) (citations omitted). For this reason, the court need not "require dismissal of a habeas petition that *does* seek simple release if the petition happens to couple that request with requests for additional, broader relief." *Agarwal v. Lynch*, 610 F. Supp. 3d 990, 1007 (E.D. Mich. 2022) (emphasis in original).

Ms. Petrova argues that she was detained pursuant to 8 U.S.C. § 1225(b)(1) and

because her detention "[r]ests on" the CBP officer's February 16, 2025 finding that she was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant without the required documentation, (Doc. 92 at 5), she may challenge that determination even after she has been released. According to Ms. Petrova, the CBP officer's revocation of her visa and subsequent finding of inadmissibility were unlawful and must be set aside, in which case there would be no legal basis for both her past detention and any future detention based on the same facts because "[d]etention under § 1225(b)(1) is permissible only when a noncitizen is found inadmissible under 8 U.S.C. § 1182(a)(6) or § 1182(a)(7)." *Id.* Ms. Petrova does not dispute the Federal Respondents' contention that she should be treated as an "arriving alien" for purposes of immigration enforcement. *See Ramos Funes v. Searls*, 2020 WL 1956346, at *11 (W.D.N.Y. Apr. 23, 2020) (noting that "[a]rriving aliens remain legally outside the United States until inspected and admitted" even if they are physically detained within U.S. borders) (internal quotation marks and citation omitted) (alteration in original).

The Federal Respondents counter Ms. Petrova can no longer challenge her detention as unlawful because she has been released. They argue that even if this court sets aside the CBP officer's visa revocation and inadmissibility determination and finds the government had no basis for detaining Ms. Petrova under § 1225(b)(1), her detention would remain lawful under § 1225(b)(2)(A),[7] which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."

The Supreme Court has interpreted both § 1225(b)(1) and (b)(2) as "mandat[ing] detention of applicants for admission until certain proceedings have concluded."

---

[7] Ms. Petrova argues that § 1225(b)(2) only applies to those "*not covered by § 1225(b)(1)*" and Ms. Petrova "was clearly processed under § 1225(b)(1)[.]" (Doc. 92 at 4) (emphasis in original) (internal quotation marks and citation omitted). It thus remains an open question as to whether Ms. Petrova is subject to the "catchall provision" of § 1225(b)(2), which "applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

*Jennings*, 583 U.S. at 297.

> Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Id.* (alterations in original). The "only exception" to this mandatory detention scheme is that "applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit." *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796, at *5 (W.D.N.Y. July 16, 2025) (internal quotation marks omitted) (quoting *Jennings*, 583 U.S. at 288). The court agrees that Ms. Petrova's release renders her unlawful detention claims moot. It therefore GRANTS the Federal Respondents' motion to dismiss insofar as it pertains to Ms. Petrova's request for release from detention.

## G.    Whether the Court Retains Jurisdiction After Ms. Petrova's Release.

Because Ms. Petrova has been released, this court cannot grant her prospective relief with regard to a future detention even if an ICE detainer has been lodged.[8] "[T]he Supreme Court has never 'recognized habeas as the sole remedy, *or even an available one*, where the relief sought would neither terminate custody, accelerate the future date of release from custody, nor reduce the level of custody[.]'" *J.G.G. v. Trump*, 772 F. Supp. 3d 18, 32 (D.D.C. 2025) (quoting *Skinner v. Switzer*, 562 U.S. 521, 534, (2011) (emphasis supplied)). "Habeas is at its core a remedy for unlawful executive detention[,]"

---

[8] "The majority of circuits has held that the filing of a detainer, alone, does not create custody in the INS." *Simmonds v. I.N.S.*, 326 F.3d 351, 354 (2d Cir. 2003); *see Zolicoffer v. U.S. Dep't of Just.*, 315 F.3d 538, 540-41 (5th Cir. 2003) (collecting cases and holding that petitioner was not in custody for purposes of habeas jurisdiction where INS had lodged detainer but the petitioner "d[id] not contend that the INS actually has ordered his deportation or that there is some other reason that he should be considered to be in the custody of the INS"). The Second Circuit has not resolved this issue, although it has held that a "final order of removal is sufficient, by itself," to establish custody for habeas purposes when "there is a reasonable basis to conclude that the INS will take custody of the prisoner upon his or her release from . . . prison." *Simmonds*, 326 F.3d at 354, 356.

and a petitioner's requested relief falls "outside the scope of the writ as it was understood when the Constitution was adopted" if it does "not want simple release but, ultimately, the opportunity to remain lawfully in the United States[.]" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (internal quotation marks and citations omitted).

Here, Ms. Petrova was in ICE custody and sought release from detention at the time of filing her habeas petition. The court issued an oral ruling granting her release on bail in her habeas proceeding while acknowledging she was held in the USMS's custody pending her criminal proceeding. Although the court may no longer grant her release from detention as a form of relief, it may still exercise jurisdiction over Ms. Petrova's APA and Due Process claims if it has subject matter jurisdiction. *See Agarwal*, 610 F. Supp. 3d at 1007-08 (holding that court had subject matter jurisdiction over claim "seeking habeas relief based upon [r]espondents' alleged violation of the Appointments Clause" even though the petitioner was released from custody after filing his petition).

To the extent the Federal Respondents claim Ms. Petrova's remaining claims are moot, the court disagrees. "[A]n otherwise moot case may still be justiciable if the underlying dispute is capable of repetition, yet evading review." *We The Patriots, USA, Inc. v. Hochul*, 2023 WL 12043608, at *4 (E.D.N.Y. Nov. 13, 2023) (internal quotation marks omitted) (quoting *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001)). This exception to the mootness doctrine applies in "exceptional situations" "where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Ramos v. New York City Dep't of Educ.*, 447 F. Supp. 3d 153, 158 (S.D.N.Y. 2020) (quoting *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 119 (2d Cir. 2001)) (internal quotation marks omitted). The plaintiff must "make a reasonable showing that he [or she] will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

The challenged actions of canceling a noncitizen's nonimmigrant visa and finding

her inadmissible under § 1182(a)(7) for a customs violation leading to removal under § 1225(b)(1) is an issue that may not be decided if the person is quickly removed. There is thus no forum for challenging the legality of the CBP officer's actions. *See* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review").

At the time of filing her habeas petition, Ms. Petrova had lived and worked in Boston for two years, during which she left and returned to the United States several times. There is and was a reasonable expectation that she may in the future leave the United States and attempt to return, in which case a CBP officer may again allegedly unlawfully cancel her visa for a customs violation even if the CBP officer lacks the authority to do so. Ms. Petrova's claims are therefore "capable of repetition, yet evading review[,]" and fall within an exception to the mootness doctrine. As one court has noted:

> [i]n the immigration context, courts have consistently recognized the compelling concern that an agency whose removal practices are challenged in court can effectively insulate itself from judicial review by acting quickly to issue Notices to Appear or to expedite removal, and then arguing that the court thereby lacks jurisdiction over those plaintiffs' legal claims[,]

which is "precisely what the 'capable of repetition yet evading review' exception seeks to avoid." *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 29-30 (D.D.C. 2020). The court thus concludes that Ms. Petrova's release from custody does not automatically render her remaining claims moot.

### H.    Whether the Court May Declare Ms. Petrova Lawfully Admitted.

The INA defines the terms "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(13)(A) (internal quotation marks omitted). Ms. Petrova asserts that the reinstatement of her admission stamp would require finding that she was lawfully admitted to the United States, but courts have found that a physical admission stamp does not render an entry lawful within the meaning of the INA. *See Lotero-Diaz v. U.S. Att'y Gen.*, 2023 WL 3644967, at *2, *5 (11th Cir. May 25, 2023) (finding that petitioner was

"never admitted into the United States" where the petitioner's passport was stamped "ADMITTED" but where she was subsequently detained in secondary inspection and determined to have overstayed her visa) (internal quotation marks omitted); *Mantripragada v. Flores*, 2022 WL 17252590, at *1, *7 (N.D. Cal. Nov. 28, 2022) (finding that petitioner had not demonstrated he "was 'admitted' to the United States[] within the meaning of the INA" even though a CBP officer "stamped his passport reflecting his admission to the United States in H-1B status" before referring him to secondary inspection at the airport).

Even were this court to declare unlawful the visa revocation and the CBP officer's inadmissibility determination, the court has no authority to determine whether Ms. Petrova was admissible. "The power to admit or exclude aliens is a sovereign prerogative," and "the Constitution gives the political department of the government plenary authority to decide which aliens to admit[.]" *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks and citations omitted); *Trump v. Hawaii*, 585 U.S. 667, 695 (2018) ("As every visa application explains, a visa does not entitle an alien to enter the United States 'if, upon arrival,' an immigration officer determines that the applicant is 'inadmissible under this chapter, or any other provision of law[.]'"). Accordingly, although the First Amended Petition asks the court to issue a declaration that Ms. Petrova is "lawfully admitted to the United States in J-1 visa status[,]" (Doc. 72 at 24), the court lacks jurisdiction to provide this relief. The court therefore GRANTS the Federal Respondents' motion to dismiss insofar as it pertains to Ms. Petrova's request for a declaratory judgment that on February 16, 2025, she was admissible as an arriving alien to the United States. *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (ruling that an APA complaint or any determination of admissibility must be dismissed if it presents a challenge to a denial of permission to enter the United States pursuant to 8 U.S.C. § 1252(a)(5)'s jurisdictional bar).

## I.      Whether Ms. Petrova's APA and Due Process Claims Seek an Advisory Opinion.

The Federal Respondents argue that because Ms. Petrova is in removal

proceedings and the legality of the CBP officer's actions has "no bearing on her ultimate removability or susceptibility to immigration detention," (Doc. 91 at 14), her claims essentially seek an advisory opinion from this court. Ms. Petrova counters that the judgment she seeks "will have a concrete legal effect on both her removability and her vulnerability to renewed immigration detention." (Doc. 92 at 14.)

The Federal Respondents are correct that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted). Because the court cannot find Ms. Petrova admissible or afford her relief with regard to her immigration proceedings, granting some of Ms. Petrova's requests for relief would indeed constitute an advisory opinion. However, Ms. Petrova's prayers for relief include a request that the court "[d]eclare CBP's revocation of Ms. Petrova's valid nonimmigrant visa unlawful," "[d]eclare CBP's cancellation of Ms. Petrova's valid admission stamp unlawful," and "[d]eclare CBP's cancellation of Ms. Petrova's Form I-94 Record of Admission unlawful[.]" (Doc. 72 at 24.) These are concrete questions that have not been determined by any court, will not be decided in an immigration proceeding, and do not seek an opinion that "cannot affect the matter in issue in the case before [this court]." *Church of Scientology of Cal.*, 506 U.S. at 12 (internal quotation marks omitted). Rather, a decision on these questions may affect both Ms. Petrova's current and future status in the United States. The court therefore DENIES the Federal Respondents' motion insofar as it seeks dismissal on the ground that any decision by the court will be an advisory opinion. The court turns to the Federal Respondents' motion to dismiss on jurisdictional and statutory grounds.

### J.    Whether the Court Has Subject Matter Jurisdiction Over Ms. Petrova's APA and Due Process Claims Under the INA.

The Federal Respondents contend that statutory jurisdiction stripping provisions deprive this court of jurisdiction even if there is a live case or controversy. Ms. Petrova argues that none of the cited grounds bar this court's jurisdiction.

Under the INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Congress enacted certain "jurisdiction stripping" provisions to limit federal courts' jurisdiction to review the removal of noncitizens. The Federal Respondents argue that the CBP's actions including the revocation of Ms. Petrova's J-1 visa, the cancellation of her admission stamp, and the CBP officer's finding of inadmissibility are all unreviewable under the INA.

      **1.**    **8 U.S.C. § 1252(e) and 8 U.S.C. § 1252(a)(2)(A).**

8 U.S.C. § 1252(e)(2) permits judicial review of "any determination made under section 1225(b)(1) of this title" in habeas corpus proceedings but limits such review to a determination of whether the petitioner is an alien, whether the petitioner was ordered removed, and whether the petitioner can prove by a preponderance of the evidence that she is lawfully admitted for permanent residence, has been admitted as a refugee, or has been granted asylum. 8 U.S.C. § 1252(e)(2). If the court finds in favor of the petitioner on any of these grounds (other than whether the petitioner is an alien), the court may then "order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with [8 U.S.C. §] 1229a[.]" *Id.* § 1252(e)(4)(B).

In Ms. Petrova's Original Petition, she noted that she had not been provided with a completed Form I-860 but asserted "on information and belief" that an expedited removal order was issued against her on February 16, 2025. (Doc. 1 at 12, ¶ 48.) Based on this representation, the court issued the March 3, 2025 Order to Show Cause acknowledging that its judicial review in habeas corpus proceedings of determinations made under section 1225(b)(1) is limited but holding that it had jurisdiction to review whether Ms. Petrova was in fact ordered removed.

The Federal Respondents have now confirmed that a Form I-860 was not completed pending Ms. Petrova's credible fear interview. Instead of proceeding with the credible fear interview and an expedited removal process pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), the government voluntarily placed Ms. Petrova in regular removal proceedings under 8 U.S.C. § 1229a, in which an immigration judge "conduct[s] proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C.

§ 1229a(a)(1). For this reason, the government argues the only relief the court is permitted to order under § 1252(e)(4)(B) — that is, the provisions of a hearing in accordance with § 1229a — has already been provided to Ms. Petrova.

Section 1225(b)(1)(A)(i) states that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." In this case, a CBP officer found Ms. Petrova inadmissible under § 1182(a)(7) as an "immigrant [who] at the time of application for admission . . . is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter[.]" § 1182(a)(7)(A)(i)(I). According to Ms. Petrova, the CBP officer who found her inadmissible under § 1182(a)(7) lacked the authority to do so because the CBP officer's only basis for denying her admission was her alleged failure to report the samples in her luggage to customs. She cites the statutes governing a CBP officer's authority and notes they do not permit cancellation of a visa for a customs violation. *See* 22 C.F.R. § 41.122(e), *supra* note 6; *see also* 8 U.S.C. § 1201(h) (limiting CBP officer's authority to deny entry to a person at the border to enumerated circumstances including when the person is "found to be inadmissible under this chapter[] or any other provision of law"); 8 C.F.R. § 235.1(f)(1) (requiring for admission that "the alien is not subject to removal under the immigration laws, Executive Orders, or Presidential Proclamations").

Section 1252(e)(2) constrains "[j]udicial review of any determination made under section 1225(b)(1) of this title[,]" but the Supreme Court has not answered the question of whether the CBP officer's finding that Ms. Petrova was inadmissible constitutes a "determination made under section 1225(b)(1)" within the meaning of that statute. The Second Circuit has held that unless the governing statute expressly provides otherwise, administrative action is reviewable:

Given the "strong presumption in favor of judicial review of administrative

26

action," we hold that, when a statute authorizes the Attorney General to
make a determination, but lacks additional language specifically rendering
that determination to be within his discretion (*e.g.*, "in the discretion of the
Attorney General," "to the satisfaction of the Attorney General," etc.), the
decision is not one that is "specified . . . to be in the discretion of the
Attorney General" for purposes of § 1252(a)(2)(B)(ii).

*Nethagani v. Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008) (citation omitted) (omission
in original).

In *Atanackovic v. Duke*, the Western District of New York adopted a similar
approach in determining whether it had jurisdiction to review a CBP officer's finding of
inadmissibility. 399 F. Supp. 3d 79 (W.D.N.Y. 2019). In that case, the plaintiff, a
Canadian doctor, presented an approved H-1B petition at a port of entry and was denied
admission. The Federal Respondents cited 8 U.S.C. § 1182(a)(7)(A)(i)(I) as the ground
for inadmissibility, even though the doctor had previously entered the United States on
multiple occasions with the same documentation. The doctor was allowed to withdraw
his application for admission and return to Canada. He subsequently filed a lawsuit
arguing, among other things, that the refusal to admit him was an abuse of discretion and
violated the APA. As the *Atanackovic* court explained:

> Looking at the language of the statute, there seems to be a difference
> between the discretion wielded by consular officers and the authority
> belonging to CBP officers at ports of entry. In 8 U.S.C. § 1201, which
> regulates the "Issuance of visas," the statute states that "[u]nder the
> conditions hereinafter prescribed and subject to the limitations prescribed in
> this chapter or regulations issues thereunder, a consular officer *may* issue []
> to an immigrant who has made proper application therefor, an immigrant
> visa . . . [and] to a nonimmigrant who has made proper application therefor,
> a nonimmigrant visa." 8 U.S.C. § 1201(a)(1) (emphasis added). . . .
> However, for a CBP officer to deny entry to a person seeking admission at
> the border, they need a valid legal basis. *See* 8 U.S.C. § 1201(h) (" . . .
> found to be inadmissible *under this chapter or any other provision of law*")
> (emphasis added); 8 C.F.R. § 235.1(f)(1) (". . . that the alien is not subject
> to removal *under the immigration laws, Executive Orders, or Presidential
> Proclamations*. . . .") (emphasis added). The statute distinguishes between
> the absolute discretion of consular officers and the legal authority of CBP
> officers.

399 F. Supp. 3d at 87-88 (alterations and emphases in original). In *Atanackovic*, the CBP

officer found the plaintiff inadmissible based on the same statutory provision at issue in this case. The district court concluded it had subject matter jurisdiction to review the CBP officer's inadmissibility determination notwithstanding the limitations placed by § 1252(a) on judicial review. The court finds that approach persuasive and adopts it here.

As this court acknowledged in its March 3, 2025 Order to Show Cause, § 1252(e)(5) prohibits habeas review "whether the alien is actually inadmissible or entitled to any relief from removal." (Doc. 17 at 2) (internal quotation marks omitted) (quoting 8 U.S.C. § 1252(e)(5)). Ms. Petrova's APA and Due Process claims, however, do not require the court to determine whether she is admissible. Rather, she seeks a declaration that the CBP officer acted unlawfully and that her rights were violated under the APA and the Due Process Clause. These issues may be decided without affecting her pending removal proceedings. *Cf. Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025) (noting that petitioner's "unlawful detention claims may be resolved without affecting pending removal proceedings").

For similar reasons, § 1252(a)(2)(A) does not bar judicial review of this case. The subsection is titled "Review relating to section 1225(B)(1)" and states that "no court shall have jurisdiction to review —"

> (i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,
>
> (ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,
>
> (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or
>
> (iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A)(i)-(iv).

The Federal Respondents note that under 8 U.S.C. § 1252(a)(2)(A)(ii), "Congress expressly extended [its] prohibition on judicial review to DHS's choice to pursue

expedited removal." (Doc. 91 at 16.) Because the CBP officer's finding of inadmissibility under § 1182(a)(7)(A)(i)(I) and the corresponding revocation of Ms. Petrova's visa are separate decisions from the decision to order her removed under 1225(b)(1), the IIRIRA's jurisdictional limitation does not apply.[9]

At the pleading stage, Ms. Petrova has plausibly alleged that:

> Congress did not authorize immigration officers to invent inadmissibility grounds in order to revoke a properly issued visa and deny admission to the United States. Nor did it authorize CBP officers to use immigration penalties for a non-immigration violation where no immigration violation exists. By revoking [Ms.] Petrova's valid J-1 visa, canceling her admission stamp and I-94 Record of Admission, and finding her inadmissible based on an alleged customs infraction, CBP violated governing statutes, regulations, and procedures. And because CBP was not "acting within powers expressly conferred by Congress" (*Thuraissigiam* at 138), the agency also violated [Ms.] Petrova's due process rights—as limited as they were.

(Doc. 92 at 6.) At the pleading stage, Ms. Petrova has stated a plausible claim for relief.

For the foregoing reasons, the court DENIES the Federal Respondents' motion to dismiss Ms. Petrova's APA and Due Process claims on the grounds that those claims are unreviewable under §§ 1252(e) and 1252(a)(2)(A).

### 2.    8 U.S.C. § 1201(i).

The Federal Respondents argue that the INA precludes judicial review of visa revocations:

> After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation. . . . There shall be no means of judicial review (including review pursuant to section 2241 of

---

[9] *See Velasquez v. Kurzdorfer*, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025) (holding that § 1252(a)(2)(A) did not prevent court from reviewing whether government had lawful authority to initiate removal process against petitioner because petitioner did not "challenge the wisdom of the discretionary decision to place him in expedited proceedings"); *see also Batioja Cuero v. Warden, FCI Berlin*, 748 F. Supp. 3d 58, 61, 66 (D.N.H. 2024) (finding that the INA's jurisdiction stripping provisions did not apply to petitioner's claims regarding the validity of a "Notice and Order of Expedited Removal: Determination of Inadmissibility" that was served to him or to his "claims relating to how the immigration officer examined him or served the [notice and order]").

title 28 or any other habeas corpus provision, and sections 1361 and 1651 of such title) of a revocation under this subsection, except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title.

8 U.S.C. § 1201(i).

According to the Federal Respondents, this limitation on judicial review "applies to any visa revocation 'under this subsection,' [and] encompass[es] the decision of any immigration officer with delegated authority to revoke visas[.]" (Doc. 91 at 12) (quoting *id.*). By its plain language, however, § 1201 refers only to the revocation of visas by a "consular officer or the Secretary of State[.]" § 1201(i).[10] As the court observed in *Atanackovic*, the "statute distinguishes between the absolute discretion of consular officers and the legal authority of CBP officers." 399 F. Supp. 3d at 88. Whereas "a consular officer 'may' or may not issue a visa to an applicant who has made a proper application[,] . . . for a CBP officer to deny entry to a person seeking admission at the border, they need a valid legal basis." *Id.* (quoting 8 U.S.C. § 1201(a)(1)). For this reason, the Western District of Washington, like the *Atanackovic* court, found that it had jurisdiction to review a Canadian citizen's APA challenge to the CBP's decision to cancel his nonimmigrant visa because "[t]he Secretary of State delegated full authority to a consular officer to revoke a nonimmigrant visa 'at any time, in his or her discretion[,]'" whereas "the Secretary delegated limited authority to immigration officers to revoke visas only for specific reasons, and in an administrative way." *Gill v. Mayorkas*, 2021 WL 3367246, at *7 (W.D. Wash. Aug. 3, 2021).

The court agrees that *Atanackovic* and *Gill* correctly distinguish between visa revocations undertaken by CBP officers and visa revocations made under the broad statutory discretion afforded a consular officer or the Secretary of State. Unlike a consular officer or the Secretary of State, who have authority to revoke a visa "at *any* time, in his [or her] discretion," 8 U.S.C. § 1201(i) (emphasis supplied), a CBP officer or

---

[10] Even in the case of the Secretary of State or a consular officer, if the revocation of a visa is the sole ground for removal, as it appears to be in this case, the detention is reviewable. Moreover, 8 U.S.C. § 1201(1) does not confine that review to an immigration court or to a Court of Appeals.

other immigration officer[11] may revoke a valid visa only in a limited set of circumstances. *See* 22 C.F.R. § 41.122(e). Although the Federal Respondents argue the Secretary of State delegated visa revocation authority to the CBP officer, they proffer no evidence of that delegation.

Because 8 U.S.C. § 1201(i) does not apply to visa revocations by CBP officers, the court DENIES the Federal Respondents' motion to dismiss for lack of subject matter jurisdiction on the grounds that 8 U.S.C. § 1201(a) bars judicial review of the CBP officer's alleged unauthorized revocation of Ms. Petrova's visa and unlawful inadmissibility determination.

### 3.    8 U.S.C. § 1252(g).

According to the Federal Respondents, judicial review is barred by 8 U.S.C. § 1252(g), which prohibits courts from "hear[ing] any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Ms. Petrova asserts that she does not challenge any discretionary decision to commence proceedings, adjudicate cases, or execute removal orders. The court agrees.

The Supreme Court has held that § 1252(g) is "much narrower" than a restriction on judicial review in all deportation cases and "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 485 n.9 (1999). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (emphasis in original) (quoting § 1252(g)). The Supreme Court has "not interpret[ed] this language to sweep in any claim that can technically be said to "arise from" the three listed actions of the Attorney General. Instead, [it] read[s] the language to refer to just

---

[11] The INA defines "immigration officers" to include CBP officers. *See* 8 C.F.R. § 1.2 ("Immigration officer means the following employees of the Department of Homeland Security, including . . . Border Patrol agent[.]").

those three specific actions themselves." *Jennings*, 583 U.S. at 294 (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J.).

The Second Circuit has found that claims of unlawful detention brought by a petitioner with pending removal proceedings did "not arise from the government's commencement of proceedings" because filing an NTA "in an immigration court is the action that commences removal proceedings[,]" and ICE detained the petitioner "***before*** an NTA was filed with the immigration court." *Ozturk v. Hyde*, 136 F.4th 382, 398 (2d Cir. 2025) (alteration adopted) (emphasis in original) (internal quotation marks and citation omitted). Similarly, the challenged actions of the CBP on February 16, 2025, in Ms. Petrova's case ***preceded*** the issuance of Ms. Petrova's NTA on March 7, 2025.

The question remains as to whether the CBP officer's partial completion of the Form I-860 on February 16, 2025, constituted the commencement of proceedings against Ms. Petrova. The Federal Respondents cite a Ninth Circuit case in which the court deemed a half-completed expedited removal form as indicating that the petitioner's claim arose from a decision or action by the Attorney General to commence proceedings and was thus unreviewable under § 1252(g). *See Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007). In *Sissoko*, the plaintiff brought a constitutional claim for false arrest after an immigration officer detained him on his arrival to the United States. As in this case, the immigration officer had partially filled out an order of expedited removal, which was not completed because the plaintiff expressed a fear of persecution. The plaintiff was then subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) while awaiting his credible fear determination, although he ultimately did not have a credible fear interview and was placed in regular removal proceedings. "Considering these circumstances, particularly the existence in the record of a half-completed Form I-860," the court concluded that the plaintiff's "detention arose from [the] decision to commence expedited removal proceedings" and thus could not be reviewed under 8 U.S.C. § 1252(g). *Id.*; *see also Guo Xing Song v. U.S. Att'y Gen.*, 516 F. App'x 894, 897 (11th Cir. 2013) ("To the extent that Song challenges DHS's decision to commence expedited removal proceedings against him, we lack jurisdiction to review this claim.").

Sissoko and Guo Xing Song are distinguishable because, in those cases, the courts
found that the plaintiff's claim "directly challenge[d] [the] decision to commence
expedited removal proceedings[.]" Sissoko, 509 F.3d at 950. In contrast, Ms. Petrova's
APA and Due Process claims allege that a CBP officer improperly and unlawfully
revoked her visa for a customs violation and then found her inadmissible based on that
unauthorized act. She does not allege that the Attorney General wrongly exercised her
prosecutorial discretion in deciding to commence removal proceedings against her. See
Ozturk, 136 F.4th at 397 (noting that "[e]ven though, '[i]n a but-for sense,' a claim of
unlawful detention might arise from the government's decision to commence
proceedings, adjudicate a case, or execute a removal, challenges to unlawful detention
'do not "arise from" the government's decision to "execute removal orders" within the
meaning of § 1252(g) simply because the claims relate to that discretionary, prosecutorial
decision'") (alterations in original) (quoting Kong v. United States, 62 F.4th 608, 613 (1st
Cir. 2023)); see also Khalil v. Joyce, 780 F. Supp. 3d 476, 545 (D.N.J. 2025) ("Per the
Supreme Court, Section 1252(g)'s aim was to give the Secretary of Homeland Security
the space she needs to make the choices she must — about enforcement priorities, for
example, or allocation of finite resources.").

The revocation of Ms. Petrova's visa did not arise from the decision to commence
removal proceedings, which took place well after the fact. Ms. Petrova's visa would have
been revoked even if she were permitted to voluntarily depart from the United States. See
22 C.F.R. § 41.122(e)(5). Accordingly, the revocation of her visa "was its own step . . .
taken separate from" the decision to commence removal proceedings against her. Khalil,
780 F. Supp. 3d at 546 (holding that § 1252(g) did not bar review of a decision made by
the Secretary of State that the petitioner was deportable, which the court considered
distinct from the DHS's exercise of prosecutorial discretion in deciding to initiate
removal proceedings).

Ms. Petrova's claim did not "arise from the decision to adjudicate her removal
case, since her challenge to her [visa revocation] has nothing to do with whether a
'removal action should be abandoned . . . or whether the formal adjudicatory process

should proceed[,]'" *Ozturk*, 136 F.4th at 398 (second alteration in original) (quoting *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120 (9th Cir. 2001)). Judicial review of Ms. Petrova's remaining claims is therefore not barred by 8 U.S.C. § 1252(g) and the court DENIES the Federal Respondents' request to dismiss on this basis.

### 4.    8 U.S.C. § 1252(a)(5).

The Federal Respondents argue that "the Second Circuit has squarely held that § 1252(a)(5) bars direct and indirect challenges to proceedings to remove a noncitizen, including claims brought under the APA." (Doc. 91 at 11.) Ms. Petrova responds that this provision "only applies when there is an order of removal" and only restricts "judicial review of an order of removal[,]" and no order of removal has been issued in this case. (Doc. 41 at 15) (italics omitted).

Under 8 U.S.C. § 1252(a)(5), "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e)." The Second Circuit has held that "a district court lacks jurisdiction over an indirect challenge to an order of removal[,]" *Delgado*, 643 F.3d at 53; however, "a suit brought against immigration authorities is not *per se* a challenge to a removal order[,]" and "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Id.* at 55. An action may be construed as an indirect challenge to a removal order only where the relief sought is inextricably linked to that order. *See, e.g., Singh v. USCIS*, 878 F.3d 441, 446 (2d Cir. 2017) (holding that § 1252(a)(5) precluded judicial review of APA claim where the relief sought could make the plaintiff's pending removal order "a nullity").

In the instant case, the Federal Respondents acknowledge that Ms. Petrova "is not subject to a final removal order." (Doc. 91 at 3.) That alone undercuts their § 1252(a)(5) jurisdictional challenge. Their reliance on *Taal v. Trump*, 2025 WL 926207, at *2 (N.D.N.Y. Mar. 27, 2025) is inapposite. In that case, the Northern District of New York applied § 1252(a)(5)'s jurisdictional bar even though the plaintiff had not been ordered removed. The facts, however, made it clear the challenge was to removal proceedings

34

because one of the plaintiffs requested a temporary restraining order enjoining his removal proceedings after the government revoked his student visa and attempted to locate and process him for removal proceedings. The plaintiff alleged that portions of two executive orders violated his First and Fifth Amendment rights. Ruling that it lacked jurisdiction, the court observed that this plaintiff's "challenge to the basis for commencing his removal proceedings" was "part of the process by which removability [would] be determined[.]" *Id.* at *2 (internal quotation marks omitted) (alteration adopted) (quoting *P.L. v. U.S. Immigr. & Customs Enf't*, 2019 WL 2568648, at *3 (S.D.N.Y. June 21, 2019)).

Here, Ms. Petrova does not ask the court to enjoin her removal proceedings. Nor is there any likelihood that an immigration court will review her APA[12] and Due Process claims.[13] Insofar as she challenges the revocation of her J-1 visa, this action is not "inextricably linked" to a removal order because it preceded her removal proceedings, no order of removal has been issued, and any removability/admissibility challenge has been dismissed. *Delgado*, 643 F.3d at 55 (quoting *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082 (9th Cir. 2010)). As in *Ozturk*, Ms. Petrova's claim "may be

---

[12] *See In re Ponce De Leon-Ruiz*, 21 I. & N. Dec. 154, 165 (1996) ("[The Board of Immigration Appeals does not] assess[] regulatory compliance with the APA . . . [and should not enact] a practice of making observations in this area where we lack expertise. We ourselves are exclusively a creature of the Attorney General's regulations, and we have properly left it to the courts to resolve questions of APA compliance.").

[13] The Second Circuit has long since recognized that "the [Board of Immigration Appeals] does not have authority to adjudicate constitutional issues[.]" *Arango-Aradondo v. I.N.S.*, 13 F.3d 610, 614 (2d Cir. 1994); *see also Khalil v. Joyce*, 780 F. Supp. 3d 476, 516, 518-19 (D.N.J. 2025) (observing "immigration courts cannot be expected to undertake the fact-finding that may potentially be required to evaluate the Petitioner's claim that the Secretary's determination is unconstitutional" and noting that "the immigration courts, per the Supreme Court in *Lopez-Mendoza*, were built to quickly determine whether someone is removable --- not to ask and answer broader questions, such as whether someone else violated the Constitution"); *see also Immigr. & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1048-49 (1984) (quoting the observation of the Board of Immigration Appeals that immigration courts are ill-equipped to decide constitutional issues and determining that the "diversion of attention" needed to address constitutional challenges weighed against finding constitutional issues judiciable by an immigration court).

resolved without affecting pending removal proceedings." 136 F.4th at 399. For this reason, the court DENIES the Federal Respondents' motion to dismiss on § 1252(a)(5) grounds.

### 5.    8 U.S.C. § 1252(b)(9).

The Federal Respondents contend that the district court lacks jurisdiction because 8 U.S.C. § 1252(b)(9) prohibits habeas or other judicial review "of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter" except "in judicial review of a final order under this section." They assert that Ms. Petrova must await a final order of removal and then channel all of her claims into a single appeal before a federal Court of Appeals.

"As a threshold matter, the very text of § 1252(b) sets out requirements only '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Ozturk*, 136 F.4th at 399. Accordingly, § 1252(b)(9) does not, by its plain text, bar Ms. Petrova's claim because she has not been ordered removed. *See Mahdawi*, 136 F.4th at 451-52 (noting that "the language of § 1252(b) contradicts" the government's argument that habeas petitioners' claims must be funneled through § 1252(b)(9) when "[n]o order of removal is at issue"); *Khalil*, 780 F. Supp. 3d at 490 ("Section 1252(b)(9) applies only after a final order of removal has been entered by the immigration courts. The words of the statute say so.").

Section 1252(b)(9) also "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020) (internal quotation marks and citations omitted) (alterations adopted). The Second Circuit has rejected the proposition that "substantive overlap between a challenge to detention and a challenge to removal is reason enough to conclude that the . . . challenge arises from removal." *Ozturk*, 136 F.4th at 400; *Mahdawi*, 136 F.4th at 452.

As in *Ozturk* and *Mahdawi*, Ms. Petrova's APA and Due Process claims "may be

36

resolved without affecting pending removal proceedings." *Mahdawi*, 136 F.4th at 452. Although there may be substantial overlap between the facts underlying those challenges and her removal proceedings, the question of whether a CBP officer acted without statutory authority by revoking Ms. Petrova's J-1 visa and finding her inadmissible is distinct from the issue of whether she is admissible to the United States and whether she should be removed. The former issues are within this court's jurisdiction; the latter issues are not. *See id.* (finding that petitioner's claim that he was arrested as punishment for his speech was "quite separate from the removal procedures followed by the immigration courts[,]" and therefore did not challenge or arise from removal proceedings even if they "have a substantive overlap with challenges he may bring in his removal proceedings"); *see also Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1253, 1257 (11th Cir. 2020) (holding that § 1252(b)(9) did not bar district court's review of USCIS's denial of a company's Form I-129 petition for a nonimmigrant worker even though the worker on whose behalf it was filed was subsequently placed in removal proceedings for overstaying his B-2 visa).

The Supreme Court has held that "[w]hether a statute is intended to preclude initial judicial review is determined from . . . whether the claims can be afforded meaningful review." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). This court may be the only court to review Ms. Petrova's claim that a CBP officer unlawfully revoked her valid J-1 visa, canceled her admission stamp, and determined her inadmissible based on the officer's own allegedly unauthorized acts. An immigration court cannot and will not afford meaningful review of these claims. *See Khalil*, 780 F. Supp. 3d at 525 ("The focus to this point has been on what the immigration courts could accomplish in this case. Could they grant the Petitioner the legal relief he seeks? Could they substantially develop the factual record? The Court's answer has been no to each question."). The court thus concludes § 1252(b)(9) does not bar judicial review.

### K.    Whether the Court Lacks Jurisdiction Under the APA.

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Regents of Univ. of Cal.*, 591

37

U.S. at 16 (internal quotation marks and citation omitted). The Federal Respondents contend that the court cannot review Ms. Petrova's APA claim because she has failed to exhaust her administrative remedies and because the actions she challenges are committed to agency discretion by law, making them unreviewable under the APA.

### 1.    Whether Ms. Petrova Has Failed to Exhaust Administrative Remedies.

Under the APA, only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The Supreme Court has interpreted this provision as "limit[ing] the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates[,]" *Darby v. Cisneros*, 509 U.S. 137, 146 (1993), and that "where neither the statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review[,]" *id.* at 138, a court may not dismiss for failure to exhaust.

The Federal Respondents assert that Ms. Petrova has failed to show she exhausted her administrative remedies under 8 U.S.C. § 1252(d), which provides that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right[.]" 8 U.S.C. § 1252(d)(1). However, "[s]ection 1252(d)(1)'s exhaustion requirement is not jurisdictional and does not oblige a noncitizen to seek discretionary review, like reconsideration before the Board of Immigration Appeals[.]" *Santos-Zacaria v. Garland*, 598 U.S. 411, 431 (2023).

Moreover, 8 U.S.C. § 1252(d) applies only to review of final orders of removal, and no final order of removal has been issued in Ms. Petrova's case. "Although exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress, courts have more latitude in dealing with exhaustion questions when Congress has remained silent," and a court may hear unexhausted claims in "circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citations and internal quotation marks omitted) (quoting *McCarthy v. Madigan*, 503 U.S.

140, 144 (1992)). One such circumstance occurs when "substantial doubt exists about whether the agency is empowered to grant meaningful redress." *Id.* Exhaustion must therefore be "excused by the [Board of Immigration Appeals'] lack of authority to adjudicate constitutional questions[.]" *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (collecting cases excusing exhaustion on the grounds that immigration courts lack jurisdiction to decide constitutional issues). Another circumstance is where an APA claim is beyond the agency's expertise. *See In re Ponce De Leon-Ruiz*, 21 I. & N. Dec. 154, 165 (1996). Because Ms. Petrova's remaining claims will not be considered by an agency or an immigration court, exhaustion is not required.

The Federal Respondents have not established their entitlement to dismissal on the grounds that Ms. Petrova has failed to exhaust her administrative remedies. The court therefore DENIES the Federal Respondents' motion to dismiss for lack of subject matter jurisdiction over Ms. Petrova's APA claim on this basis.

### 2.    Whether Challenged Actions Were Committed to Agency Discretion.

"[U]nder § 701(a)(2) agency action is not subject to judicial review 'to the extent that' such action 'is committed to agency discretion by law.'" *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993) (footnote omitted). "An administrative action is 'committed to agency discretion' where the governing law is 'drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Vela-Estrada v. Lynch*, 817 F.3d 69, 71 (2d Cir. 2016) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

The Secretary of State has "delegated limited authority to immigration officers to revoke visas only for specific reasons, and in an administrative way." *Gill*, 2021 WL 3367246, at *7 (explaining procedure set out by 22 C.F.R. § 41.122(e) for an immigration officer to revoke a valid visa). Although the Federal Respondents point out that the Secretary of State has the authority to delegate her authority to "any employee of the United States," 8 U.S.C. § 1104(a), thus far there is no evidence that the authority to "revoke a valid visa" was delegated to the CBP officer in Ms. Petrova's case. Instead, it

39

appears the CBP officer's actions were unprecedented.[14] 22 C.F.R. § 41.122 provides a
"meaningful standard" cabining a CBP officer's discretion and authority, and 5 U.S.C.
§ 701(a)(2) does not bar review. The Federal Respondents have thus failed to
demonstrate that Ms. Petrova's remaining claims are committed to agency discretion, and
the court DENIES their motion to dismiss on that basis.

  **L. The Federal Respondents' Motion to Dismiss for Failure to State a
   Claim Under Fed. R. Civ. P. 12(b)(6).**

   **1. Whether Ms. Petrova Has Failed to State a Claim Under the
    APA.**

  "[A]gency action is arbitrary and capricious 'if the agency has relied on factors
which Congress has not intended it to consider, entirely failed to consider an important
aspect of the problem, offered an explanation for its decision that runs counter to the
evidence before the agency, or is so implausible that it could not be ascribed to a
difference in view or the product of agency expertise.'" *Nat. Res. Def. Council v. U.S.
E.P.A.*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.
v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). In her First Amended
Petition, Ms. Petrova asserts that CBP officer canceled her valid nonimmigrant visa based
on her failure to declare an item in her luggage and that an alleged customs violation did
not give the CBP officer authority to take the actions at issue in this case. The Federal
Respondents are correct that under *Delgado*, federal jurisdiction is not created merely
"because her claim arises under the APA or because she is bringing a mandamus action."
643 F.3d at 55. At the pleading stage, Ms. Petrova has nonetheless plausibly alleged that
the CBP officer's actions were in excess of its authority, were contrary to applicable laws
and regulations, were arbitrary and capricious, and are subject to review under the APA.
*Cf. Coniglio v. Garland*, 556 F. Supp. 3d 187, 191-92, 207 (E.D.N.Y. 2021) (finding
USCIS action revoking its approval of a petition to qualify a U.S. citizen's stepson as an
"immediate relative" was contrary to law pursuant to 5 U.S.C. § 706(2)(A) because its

---

[14] The Federal Respondents do not cite a single case in which a CBP officer revoked a visa and
made an inadmissibility determination based on a customs violation.

construction of statute was inconsistent with Second Circuit precedent).

For the reasons stated above, the court DENIES the Federal Respondents' motion to dismiss Ms. Petrova's APA claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6) insofar as it pertains to the alleged unlawful cancellation of her visa and the inadmissibility determination based thereon.

### 2.    Whether Ms. Petrova Has Failed to State a Due Process Claim.

The Federal Respondents argue that Ms. Petrova has failed to state a Due Process claim because the due process rights of arriving aliens extend only to what process is afforded to her by Congress and courts have interpreted the INA as allowing arriving aliens to be detained without a bond hearing. Ms. Petrova does not contest that she had "limited, congressionally-prescribed due process protections" when attempting to reenter the United States but argues that the CBP officer's actions nonetheless violated her due process rights because they were not authorized by Congress. (Doc. 92 at 6.) More specifically, she alleges:

> 115. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).
>
> 116. CBP's unlawful actions in revoking Ms. Petrova's valid nonimmigrant visa and canceling her admission stamp and Form I-94 Record of Admission without any basis in law or fact violate Ms. Petrova's right to Fifth Amendment due process.
>
> 117. In light of CBP's clearly erroneous actions at [Boston] Logan Airport on February 16, 2025, the government's decision to continue detaining Ms. Petrova for over three months—despite overwhelming evidence that she poses no danger to the community or risk of flight—violates her right to Fifth Amendment due process.
>
> 118. The government's decision to initiate criminal prosecution against Ms. Petrova to obtain leverage in her immigration case is appalling, unbecoming of the U.S. government, and violates Ms. Petrova's right to Fifth Amendment due process.

(Doc. 72 at 23, ¶¶ 115-18) (alteration in original).

"[A]n alien [seeking admission] has only those rights regarding admission that

Congress has provided by statute" and "the Due Process Clause provides nothing more[.]" *Thuraissigiam*, 591 U.S. at 140. The Second Circuit has observed that, "[t]he Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)). The Supreme Court has likewise cautioned that "[t]he Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979). For this reason, "an arriving alien who ha[s] not effected a legal entry into the United States" is "entitled only to those procedures enacted by Congress, and not to any broader procedural protections based on the constitutional right to due process." *Abitih v. Wilkinson*, 2021 WL 733806, at *2 (W.D.N.Y. Feb. 25, 2021).

Some courts have interpreted *Thuraissigiam* as limited to its facts, which involved an arriving alien who claimed he was entitled to additional administrative review of his asylum claim under the Fifth Amendment's Due Process Clause.[15] The court agrees with this narrow approach.

In her First Amended Petition, Ms. Petrova contends her due process rights were violated because her visa was revoked "based on an alleged customs infraction" rather than one of the statutorily enumerated grounds for inadmissibility, leading to her

---

[15] *See, e.g.*, *Mata Velasquez*, 2025 WL 1953796, at *15 (interpreting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), as "foreclos[ing] the argument that [an arriving alien] has due process rights beyond those provided by statute concerning the process for deciding whether or not he [or she] will be *admitted* to this country") (emphasis in original); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) (rejecting argument that "*Thuraissigiam* [stands for] a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek" because "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States"); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) . . . have no due process rights whatsoever.").

allegedly unlawful detention and the deprivation of her liberty for a substantial period of time. (Doc. 92 at 6.) She further claims she has been subjected to retaliatory criminal proceedings to gain leverage in her immigration proceedings. Although raising close and novel questions, she plausibly alleges that the CBP officer acted contrary to applicable law and the statutory mandate of the INA as well as the statutory and regulatory framework of the Tariff Act, that her criminal proceedings were initiated for an improper purpose, and that she was thereby deprived of the limited due process afforded by Congress to arriving aliens to the United States.

At this nascent phase of the proceedings, the court awaits the development of a factual record to adjudicate this novel claim. *See Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979) ("Tenuous theories of liability are better assayed in the light of actual facts than in pleader's supposition."). The court therefore DENIES the Federal Respondents' motion to dismiss Ms. Petrova's Due Process claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### M.  Whether the Court Should Dismiss Ms. Petrova's Alleged Customs Claim and Criminal Prosecution for Lack of Jurisdiction and Failure to State a Claim.

Arguing that it was not required to pursue a customs violation, the Federal Respondents seek dismissal of any claim made on this basis. Because a reasonable reading of the First Amended Petition reveals Ms. Petrova does not assert a separate customs violation claim independent of her APA and Due Process claims, the Federal Respondents' motion to dismiss is DENIED AS MOOT. Likewise, Ms. Petrova does not ask this court to review her criminal prosecution. As a result, the motion to dismiss that alleged claim is also DENIED AS MOOT.

### N,  The Federal Respondents' Motion to Dismiss for Improper Venue.

### 1.  Whether to Dismiss APA Claims for Improper Venue.

The Federal Respondents argue that Ms. Petrova's APA claim should be dismissed for improper venue under 28 U.S.C. § 1391(e). "Section 1391 provides that a suit against the federal government or a federal official acting in his or her official capacity can be brought[:]

> in any judicial district where (1) a defendant in the action resides; (2) a
> substantial part of the events or omissions giving rise to the claim occurred,
> or a substantial part of property that is the subject of the action is situated;
> or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1) (internal quotation marks omitted); *N-N v. Mayorkas*, 540 F.

Supp. 3d 240, 253 (E.D.N.Y. 2021). According to the Federal Respondents, venue is

improper under this standard because neither they nor Ms. Petrova are domiciled in the

District of Vermont[16] and all the events giving rise to her APA claims occurred in

Massachusetts.

    Ms. Petrova initially brought her APA claim as part of a habeas petition while

confined in the District of Vermont and "with respect to habeas petitions 'designed to

relieve an individual from oppressive confinement,' the traditional rule has always been

that the Great Writ is 'issuable only in the district of confinement.'" *Rumsfeld v. Padilla*,

542 U.S. 426, 442 (2004) (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)).

Notwithstanding Ms. Petrova's transfer thereafter, this court retained jurisdiction. *See Ex*

*parte Endo*, 323 U.S. 283, 306 (1944) ("*Endo*"); *see also Rumsfeld*, 542 U.S. at 441

("*Endo* stands for the important but limited proposition that when the Government moves

a habeas petitioner after she properly files a petition naming her immediate custodian, the

District Court retains jurisdiction[.]").

    Because venue was proper at the time this action was filed, venue remains proper.

*See N-N*, 540 F. Supp. 3d at 253 (noting that "venue is determined on the facts at the time

a complaint is filed") (collecting cases)). The court therefore DENIES the Federal

Respondents' motion to dismiss Ms. Petrova's APA claim for improper venue.

## 2.    Whether to Dismiss FOIA Claims for Improper Venue.

    The Federal Respondents ask the court to dismiss Ms. Petrova's FOIA claims for

improper venue. It further argues that FOIA relief is outside the scope of a habeas

petition. Because the court agrees that venue for Ms. Petrova's FOIA claims is improper,

it addresses only that issue.

---

[16] The State Respondents are domiciled in Vermont and Louisiana.

"Subject to certain statutory exemptions, FOIA requires federal agencies to make agency records available to the public upon request." *Doyle v. U.S. Dep't of Homeland Sec.*, 959 F.3d 72, 76 (2d Cir. 2020); *see* 5 U.S.C. § 552(a)(3)(A), (b)(1)-(9). FOIA allows federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). The statute provides that venue is proper "in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia[.]" *Id.*

Ms. Petrova does not reside or have her principal place of business in Vermont, nor does she contend that the agency records she seeks are situated in Vermont. She nonetheless argues that the court should exercise pendent venue over her FOIA claims because they arise out of the same events as her APA and Due Process claims.

> In a case involving multiple claims, the plaintiff must show that venue is proper for each claim asserted. If venue is not proper for one of the claims, courts have sometimes applied the doctrine of pendent venue, derived from the concept of pendent jurisdiction to alleviate the potential problems of inefficiency and piecemeal litigation that the venue rules could otherwise generate. Under this doctrine, a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative facts as a properly venued federal claim, even if venue of the pendent claim otherwise would not lie. To exercise pendent venue, the court must consider factors such as judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants.

*Edward Roberts, LLC v. Indiana Econ. Dev. Corp.*, 2022 WL 17492467, at *3 (E.D.N.Y. Nov. 21, 2022) (internal quotation marks and citations omitted).

"In determining whether two disputes arise from a 'common nucleus of operative fact,'" courts "have traditionally asked whether the facts underlying the . . . claims substantially overlapped" or whether one claim "necessarily brought the facts underlying the [other] claim before the court.'" *Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, 134 F.4th 73, 80 (2d Cir. 2025) (internal quotation marks omitted).

45

In this case, Ms. Petrova's APA and Due Process claims arise from CBP's actions on February 16, 2025, at Boston Logan Airport, whereas her FOIA claims arise from the government's alleged failure to timely respond to the records request she submitted on April 10, 2025. Although the April 10, 2025 request is for records related to what occurred at Boston Logan Airport, this is not sufficient for the court to conclude that the facts underlying each claim substantially overlap or the two claims are "factually related," especially as there is little to no likelihood that the relevant agency records will be located in Vermont. *See Jeanty v. Utica Police Dep't*, 2021 WL 1055153, at *4 (N.D.N.Y. Mar. 19, 2021) (finding that plaintiff's claims under New York's Freedom of Information Law "involve[d] different interests and underlying facts" and did not arise out of same nucleus of operative facts as plaintiff's federal claims where the subject of the requested records overlapped with the subject of plaintiff's federal claims). Because Ms. Petrova's FOIA claims do not arise from the same nucleus of operative fact as her APA and Due Process claims, the court declines to exercise pendent jurisdiction over them. Ms. Petrova concedes that the District of Vermont is otherwise the improper venue for her FOIA claims.

Because venue is not proper in this district, the court considers whether the matter should be transferred to an appropriate district or dismissed.

> The court may consider a transfer *sua sponte*. Where the defenses of lack of personal jurisdiction and improper venue are "obvious from the face of the complaint and no further factual record is required to be developed," the court may transfer a case to another appropriate district court, in the interest of justice. *Trujillo v. Williams*, 465 F.3d 1210, 1217, 1222 (10th Cir. 2006) (internal quotation marks omitted) ("A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice."). Under 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

*Rowe v. FBI Headquarters*, 2019 WL 11626176, at *2 (D. Vt. Feb. 15, 2019) (emphasis and alterations in original).

The statute of limitations for a FOIA suit is six years. 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"); *Spannaus v. U.S. Dep't of Just.*, 824 F.2d 52, 55-56 (D.C. Cir. 1987) (holding 28 U.S.C. § 2401(a) applies to FOIA actions). Where the case might have been brought in more than one district, and the statute of limitations is not implicated, the court need not transfer the claims but may dismiss them without prejudice. Ms. Petrova is free to refile her FOIA claims in the district or districts where venue is proper.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART the Federal Respondents' motion to dismiss Ms. Petrova's APA and Due Process claims (Counts I and V). The court GRANTS dismissal of Ms. Petrova's claims to the extent they seek release from detention or a determination of Ms. Petrova's admissibility or removability and DENIES dismissal of Ms. Petrova's APA and Due Process claims to the extent they challenge the lawfulness of the CBP officer's revocation of her visa, cancellation of her admission stamp, and the inadmissibility determination based thereon. The court GRANTS the Federal Respondents' motion to dismiss Ms. Petrova's FOIA claims (Counts II and IV) for improper venue. The dismissal of Ms. Petrova's FOIA claims is without prejudice to refile in an appropriate forum.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of September, 2025.

Christina Reiss, Chief Judge
United States District Court