UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| **KSENIIA PETROVA**, | ) |
| | ) |
| Petitioner, | ) Case No. 2:25-cv-00240-CR |
| | ) |
| v. | ) |
| | ) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, | ) |
| | ) |
| Respondents. | ) |

**MEMORANDUM IN OPPOSITION TO FEDERAL RESPONDENTS' MOTION TO RECONSIDER DISCOVERY ORDER AND RELATED RELIEF**

**I.     INTRODUCTION**

After failing to file a timely motion to reconsider the Court's December 19, 2025 Order requiring the parties to complete discovery within 60 days, and after initially confirming, on January 13, 2026, CBP Officer Sarah Angulo's availability for a deposition on February 12, 2026 (*see* Exhibit A), the government now seeks this Court's reconsideration of the discovery order, or, in the alternative, a protective order to quash or delay Officer Angulo's deposition, which the government initially agreed to.

The government's motion rests on the incorrect premise that Petitioner seeks to expand the record. Rather, discovery is necessary to determine whether the certified record accurately reflects the agency action the Court must review in deciding whether Petitioner's due process rights were violated and whether the Administrative Procedure Act should be applied to set aside agency actions. In this case, there is a strong indication that the certified record does not

accurately reflect what happened at Logan Airport on February 16, 2025, and in the days that followed.

## II. THIS COURT'S DISCOVERY ORDER WAS CONSISTENT WITH EXISTING PRECEDENT

### A. LEGAL STANDARD

Both the Supreme Court and the Second Circuit have long recognized that a reviewing court in an APA case may look beyond the administrative record where necessary to ensure effective judicial review. First, discovery may be appropriate where the administrative record is incomplete. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (holding that in the absence of the "whole record compiled by the agency" post hoc rationalizations are an inadequate basis for APA review). Where "the bare record may not disclose the factors that were considered…, it may be necessary for the District Court to require some explanation in order to determine if the [agency] acted within the scope of its authority and if the [agency's] decision was justifiable." *Id.*

Second, discovery may be appropriate even when the administrative record is presumably complete but not prepared in good faith. In *Department of Commerce v. New York*, the Supreme Court held that an agency violated the APA by offering pretextual justifications for its decision. *See Dep't of Comm. v. New York*, 588 U.S. 752 (2019). Reviewing the record, the Court observed a clear gap between the agency's stated rationale and the actual context of its actions. The Court acknowledged that while "[i]t is hardly improper for an agency head to come into office with policy preferences and ideas . . . and work with staff attorneys to substantiate the legal basis for a preferred policy," the Court "cannot ignore the disconnect between the decision made and the explanation given." *Id.* at 785. The Court further cautioned that to limit itself to the

administrative record and ignore the Secretary's extra-record actions would be "to exhibit a naiveté from which ordinary citizens are free." *Id*.

Similarly, in *Nat'l Audubon Soc'y v. Hoffman*, the Second Circuit held that "despite the general 'record rule,' an extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d at 14 (internal citations omitted); *see also Portland Audubon Society v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir. 1993) ("When it appears the agency has relied on documents or materials not included in the record, supplementation is appropriate.").

The Second Circuit applies a "good cause" standard for permitting extra-record discovery in record-review cases, where the administrative record may be incomplete. A party seeking discovery beyond the record must demonstrate a reasonable chance that the requested discovery will satisfy the "good cause" requirement. *See, e.g., Halo v. Yale Health Plan*, 819 F.3d 42 (2d Cir. 2016). Good cause may exist when the inadequacy of the record stems from the agency's own failure to follow procedural requirements, thereby impairing the development of a fair record. In *Halo*, for example, the court held that the defendant's failure to comply with the relevant regulation "may… constitute good cause warranting the introduction of additional evidence outside the administrative record." *Id*. at 45.

The "good cause" standard is less stringent than the standard for admitting extra-record evidence at the court's final determination. The rationale is to avoid a "vicious circle" in which a party would have to make a full good-cause showing to obtain discovery – something that might

only be possible with the discovery itself. *Hamill v. Prudential Ins. Co. of Am.*, No. 11-CV-1464 (SLT) (CLP), 2013 WL 27548, at *5 (E.D.N.Y. Jan. 2, 2013) (quoting *Rubino v. Aetna Life Ins. Co.*, No. CV 07–377, 2009 WL 910747, at *4 (E.D.N.Y. Mar. 31, 2009)); *see also Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 229 (E.D.N.Y. 2008) ("The decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence."); *Pretty v. Prudential Insurance Company of America*, 696 F. Supp. 2d 170, 182 (D. Conn. 2010) ("The Court agrees with other district courts within this Circuit that a plaintiff seeking discovery outside the administrative record need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement") (quoting *Trussel v. Cigna Life Ins. Co. of New York*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008)).

Good cause exists in this case because the administrative record is patently incomplete, and because Petitioner has made a strong showing of bad faith or improper behavior on the part of the government.

B. <u>THE ADMINISTRATIVE RECORD PRODUCED BY THE GOVERNMENT IS DEMONSTRABLY INCOMPLETE AND UNRELIABLE.</u>

The administrative record produced by the government and certified by CBP as "a copy of the official agency records" (*see* Dkt. 100) does not permit the Court to determine what agency decision was actually made on February 16, 2025. The record consists of the following:

- Form I-860, Notice and Order of Expedited Removal
- Form I-867A/B, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act
- Form I-213, Record of Deportable/Inadmissible Alien
- Copies of Petrova's passport
- Entirely redacted agency memo dated December 6, 2013
- NIV Applicant Detail
- CEAC DS-160 Report

Petrova has made continuous efforts to obtain additional evidence related to her claims. Unfortunately for Petrova, CBP has denied her FOIA requests, and the immigration judge in her removal proceedings has denied her request to subpoena Officer Angulo to testify at Petrova's removability hearing. *See* Exhibit B.

Yet, from the initial discovery process in Petrova's criminal proceedings, it is now clear that at least the following documents related to Petrova's admission process on February 16, 2025 are missing from the administrative record:

- Form I-275, Withdrawal of Application for Admission / Consular Notification – clearly indicating that Petrova's application for admission was never actually withdrawn

- Form I-264 (cont'd on I-831), Notice to Consular Officer Concerning Detention – showing that Petrova was admitted by CBP's "primary inspection" officer

- Detainee Assessment Form

- Form 842, Discretionary Authority Checklist for Alien Applicants – showing that Officer Angulo indicated the nature of Petrova's inadmissibility as "minor / technical"

- Form I-296, Notice to Alien Ordered Removed (signed by Officer Angulo)

- Form M-444, Information About Credible Fear Interview (signed by Officer Angulo)

- Form 6051A, Custody Receipt for Seized Property and Evidence

- Form 6051D, Detention Notice and Custody Receipt for Detained Property

- Form 6051S – Custody Receipt for Seized Property

- Incident Report – Long Form (Seizure Only)

- Form G-589, Property Receipt

- Agriculture Inspection Remark dated February 17, 2025.

Each of these missing documents reflects contemporaneous inspection activity and decision-making. Their absence is not merely evidentiary; it shields the Court from key aspects of the operative agency action subject to review.

We also know that one of the main documents the government relied upon for Petrova's inadmissibility finding and visa cancellation, Form I-867, Record of Sworn Statement, is inaccurate and inconsistent with the video evidence documenting the same encounter between Officer Angulo and Ms. Petrova. *See* Exhibit C for a redline comparison between the video recording of the sworn statement and Form I-867 prepared by Officer Angulo. When the written sworn statement conflicts with the taped recording of the same sworn statement, a court reviewing only the written record is not reviewing the agency's action but a flawed reconstruction of it.

In addition, we know that the criminal investigation was prompted not by a CBP referral at Logan Airport on February 16, 2025, but by review of Petrova's immigration file by HSI Headquarters – approximately one week after this Court scheduled the first hearing in Petrova's habeas case (*see* Dkt. 92 at 2) and almost eleven weeks after Petrova's entry at Logan Airport.

Finally, the government still has not been able to provide a coherent explanation why Petrova's visa was canceled. Having advanced several conflicting theories behind the visa cancellation, the government now unequivocally claims that: "the existing administrative record already reveals the undisputed basis of the revocation of Plaintiff's visa, which is plainly written on her visa: '22 CFR 41.122(e)(3)'." Dkt. 105 at 7.[1] As unequivocal as it is, this explanation is

---

[1] The government's characterization that CBP canceled Petrova's visa "in exchange for the opportunity to withdraw her application for admission" suggests that the visa cancellation was somehow a negotiated benefit and ignores the simple fact that there was no lawful reason to find Petrova inadmissible, cancel her visa, or try to force her to withdraw her application for admission to begin with.

inconsistent with the regulation itself, as 22 C.F.R. § 41.122(e)(3) allows immigration officers to cancel a visa only for someone "who requests and *is granted* permission to withdraw the application for admission" (emphasis added). As this Court stated during the May 14, 2025 hearing, "I'm confident the government does not claim that she was granted permission to withdraw her application because she wouldn't be here... She'd be in France." Dkt. 64 at 37:8-14. Thus, the government's stated legal basis for the visa cancellation contradicts the agency's official records, making testimony from the officer who invoked the regulation indispensable to meaningful judicial review.

As in *Dep't of Comm. v. New York*, there is a clear gap between the agency's stated rationale and the actual context of its actions, and this Court "cannot ignore the disconnect between the decision made and the explanation given." *Dep't of Comm. v. New York*, 588 U.S. 752, 785 (2019). To limit review to the administrative record and ignore the agency's extra-record actions in this case would be "to exhibit a naiveté from which ordinary citizens are free." *Id*.

C. PETROVA HAS MADE A STRONG SHOWING OF BAD FAITH OR IMPROPER BEHAVIOR.

Even if the Court were to treat the requested testimony as extra-record discovery, Petitioner has made the strong showing of bad faith that warrants discovery. The Supreme Court has recognized an exception to the general rule against inquiring into the mental processes of administrative decisionmakers when there is "a strong showing of bad faith or improper behavior." *Dep't of Comm.*, 588 U.S. at 781 (quoting *Overton Park*, 401 U.S. at 420).

Here, given the demonstrably incomplete administrative record filed by the government, the significant inaccuracies in the Record of Sworn Statement prepared by Officer Angulo, this

administration's "policy and practice of targeting international students and academics in Massachusetts for visa revocation and detention for nonexistent or minor offenses that are not grounds for inadmissibility" (*see* Dkt. 43-1 at 3), and the increasingly clear connection between Petrova's criminal proceedings and her attempts to hold CBP accountable for the unlawful cancellation of her visa and her subsequent detention, there is a strong showing of bad faith or improper behavior in this case.

Another federal court has recently concluded that there is a clear connection between this proceeding and Petrova's criminal prosecution. A federal court reviewing the related criminal matter has independently identified evidence suggesting retaliatory motivation. During a motion hearing in *United States v. Kseniia Petrova*, 1:25-cv-10272-LTS (D. Mass.) on February 10, 2026, Magistrate Judge Judith Dein observed:

> May 14th is when the habeas hearing took place, and then shortly thereafter on May 25th, the government argues to the habeas Court that the institution of criminal charges mooted the habeas petition, so there's clearly a connection between the proceedings in the habeas court and the proceedings in this court.

*See* Exhibit D at 27:17-22

> I think there's been a strong enough showing that the government brought criminal charges to thwart or retaliate against Ms. Petrova's exercise of her rights to challenge her immigration -- her treatment as it -- as someone in the United States with a visa.

*Id*. at 43:11-15

> While these proceedings are going on, the defendant is, again, offered the opportunity to self-deport. It's hard to ignore the fact that there's a connection between the criminal proceedings and her status in the United States. I think I've already mentioned the May 12th date to me just is a red flag that it is connected to the May 14th hearing.

*Id*. at 45:3-9

The judicial assessment in Petrova's criminal proceedings reinforces the need to examine the agency's decision-making process and the true motives behind the visa cancellation and the initiation of Petrova's criminal proceedings, especially as this Court is to decide whether the agency's actions were arbitrary or capricious under the APA.

### III.   ANGULO'S DEPOSITION IS BOTH RELEVANT AND PROPORTIONAL TO PETROVA'S APA / DUE PROCESS CLAIMS

The government moves to quash Angulo's deposition "because it would not yield information relevant or proportional to the needs or claims raised in this APA case." Dkt. 105 at 8. The government's arguments miss the mark.

#### A.   RELEVANCE

To prevail on her APA claims, Petrova needs to demonstrate that CBP's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). At this juncture, it is quite evident that CBP's actions were not in accordance with law, as the government has once again confirmed the lack of lawful basis for the cancellation of Petrova's visa. *See* Part II.B., *supra*. Deposing Officer Angulo regarding what actually happened at Logan International Airport on February 16, 2025 is expected to demonstrate the arbitrary and capricious nature of CBP's actions. Without this testimony, the Court would be required to accept the agency's characterization of its own action without the ability to verify it, which is incompatible with meaningful APA review.

Petrova also has pending due process claims that have also survived the government's motion to dismiss. *See* Dkt. 95. Now, the Court "awaits the development of a factual record to adjudicate [Petrova's] claim… that the CBP officer acted contrary to applicable law…, that her

criminal proceedings were initiated for an improper purpose, and that she was thereby deprived of the limited due process afforded by Congress to arriving aliens to the United States." *Id*. at 43.

Petrova's due process claims are separate and apart from the vindictive / selective prosecution defense she is pursuing in her criminal case, *United States v. Kseniia Petrova*, 1:25-cv-10272-LTS (D. Mass.). Before this Court, "she seeks a declaration that the CBP Officer acted unlawfully and that her rights were violated under the APA and the Due Process Clause." Dkt. 95 at 28. A due process claim necessarily turns on what occurred during the encounter itself. The administrative record alone cannot resolve that question, especially, as here, where the record's completeness and accuracy are seriously in doubt and robustly challenged. As "these issues may be decided without affecting her removal proceedings" (*id*.), they likewise may be decided without affecting her criminal proceedings.

### B. PROPORTIONALITY

A single deposition of the officer who made the decision is the narrowest discovery available to clarify the agency action at issue. Petitioner has already demonstrated that the information she is seeking will not duplicate the evidence already in the record and that the information it will reveal helps demonstrate the arbitrary and capricious nature of CBP's actions on February 16, 2025. Federal Respondents had initially agreed to Officer Angulo's deposition, which was scheduled for February 12, 2026. *See* Exhibit A. The burden on the government is minimal compared to the consequence of precluding judicial review of a potentially unlawful decision.

### IV. THERE IS NO BASIS FOR POSTPONEMENT OF ANGULO'S DEPOSITION.

In the alternative, the government asks this Court to postpone Angulo's deposition "until after Plaintiff's criminal proceedings conclude in *United States v. Kseniia Petrova*, 1:25-cv-

10272-LTS (D. Mass.)." Dkt. 105 at 8. The only basis for the postponement that the government advances is that "the government is entitled to reciprocal discovery from Plaintiff, including Plaintiff's deposition" and that "Federal Respondents would be prejudiced at this juncture if they were hamstrung from taking reciprocal discovery." Dkt. 105 at 8-9. This argument misunderstands the nature of APA review.

When reviewing an APA claim, the court determines whether *an agency action* "was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Contrary to what the government suggests, extra-record discovery is not "a two-way street" in APA cases, as there are no possible relevant facts that the aggrieved party can provide that are otherwise unavailable, and that would help the court evaluate decisions made by the agency. This case challenges agency action; the relevant inquiry concerns what the agency did, what it considered, and whether its decision was lawful and non-arbitrary. Federal Respondents do not – and cannot – identify any additional evidence uniquely within Ms. Petrova's possession that would bear on whether CBP properly invoked 22 C.F.R. § 41.122(e)(3), exercised discretion, or maintained a complete record. By contrast, Officer Angulo is the decision-maker whose testimony is directly relevant to the basis for cancellation and the underlying inadmissibility finding, as well as the integrity of the administrative record. There is no "reciprocal discovery" basis here. Moreover, given the ongoing criminal proceedings, any attempt to depose Ms. Petrova would raise serious Fifth Amendment concerns.

For the foregoing reason, Petitioner respectfully requests that the Court deny Federal Respondents' motion to reconsider the discovery order and quash or postpone the deposition of Officer Angulo.

| | |
|---|---|
| Dated: February 17, 2026 | Respectfully submitted, |
| /s/ *Brian Scott Green*<br>Brian Scott Green<br>Law Office of Brian Green<br>9609 S University Boulevard #630084<br>Highlands Ranch, CO 80130<br>(443) 799-4225<br>briangreen@greenusimmigration.com | /s/ *Gregory Romanovsky**<br>Gregory Romanovsky<br>Romanovsky Law Offices<br>12 Marshall Street<br>Boston, MA 02108<br>(617) 787-0000<br>gr@romanovskylaw.com<br><br>**Admitted pro hac vice* |

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Opposition to Motion filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated:  February 17, 2026                                By:     /s/ Gregory Romanovsky
                                                                                Gregory Romanovsky