UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| **KSENIIA PETROVA**, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 2:25-cv-00240-CR |
| | ) | |
| v. | ) | |
| | ) | |
| **U.S. DEPARTMENT OF HOMELAND** | ) | |
| **SECURITY**, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**PETITIONER'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Because there is no longer any disputed fact bearing on the visa cancellation (*see* Dkt. 122-1), this motion presents a single, dispositive question: whether Ms. Petrova was granted permission to withdraw her application for admission. If she was, the visa cancellation was authorized under 22 C.F.R. § 41.122(e)(3). If she was not, the cancellation was unlawful.

1. MS. PETROVA WAS NEVER GRANTED PERMISSION TO WITHDRAW HER APPLICATION FOR ADMISSION.

The record contains no evidence that Ms. Petrova was *granted* permission to withdraw her application for admission. To the contrary, it establishes that no such grant occurred. Ms. Petrova remains in the United States. *See* Dkt. 122-1, ¶ 6. The government has conceded in another forum that Ms. Petrova did not withdraw her application for admission. *See* Dkt. 117-1 at 4. To this day, it continues to treat her as an *applicant for admission*; her removal proceedings are entirely predicated on the government's charge that she is an applicant for admission who is not in possession of a valid visa. *See* Dkt. 41-6.

If there were any doubt about whether a withdrawal of admission has been granted, the government's own Form I-275 – the document that would be used to record a granted

withdrawal – confirms that no such grant occurred: the "Application for Admission Withdrawn" box is unchecked, and the section "TO BE COMPLETED BY ALIEN WHEN APPLICATION FOR ADMISSION IS WITHDRAWN" is neither completed, signed, nor dated. *See* Dkt. 115 at 4-5. This is not a "ministerial oversight," or a "harmless error" as the government suggests. *See* Dkt. 122 at 18. The unchecked box and the absence of Ms. Petrova's consent do not reflect an imperfectly recorded grant of withdrawal of admission – they reflect the absence of any grant at all, and confirm that the I-275 was not used to record a granted withdrawal.[1]

Additionally, CBP's own description of the events of February 16, 2025, recorded on the same Form I-275, confirms there was no grant of withdrawal: "…Petrova was *afforded the opportunity to withdraw* her application for admission in lieu of expedited removal, [at which time she made a credible fear claim.][2] Petrova was then processed for an Expedited Removal-Credible Fear…" (emphasis added). It is clear from this description of events that the process never advanced beyond Ms. Petrova being offered the opportunity to withdraw; that the process of withdrawal was derailed by Ms. Petrova's credible fear claim, and that, in the end, no withdrawal was actually granted.

In short, the administrative record does not merely fail to establish that withdrawal was granted – it affirmatively demonstrates that it was not. Because the administrative record shows that Ms. Petrova was never granted permission to withdraw her application for admission, the

---

[1] Form I-275 is also used by CBP to notify consulates of the entry of a removal order. That is precisely what the I-275 in Ms. Petrova's record is – it is notification to the consulate that issued her visa that an order of removal has been issued against her (*see* the box checked at the top of the form). Apparently, this notification was prepared prior to the actual issuance of an order – this Court has already found that "no order of removal has been issued" against Ms. Petrova. *See* Dkt. 95 at 35.

[2] The bracketed language was redacted from the Form I-275 filed by the government at Dkt. 115, but appears in the Form I-213 included in the Administrative Record. *See* AR 14.

government cannot satisfy the sole regulatory basis it invokes for the visa cancellation. *See* AR 19. The cancellation must therefore be set aside as "arbitrary, capricious," and "otherwise not in accordance with law" (5 U.S.C. § 706(2)(A)), "in excess of CBP's statutory and regulatory authority" (5 U.S.C. § 706(2)(C)); and "without observance of procedure required by law" (5 U.S.C. § 706(2)(D)). *See* Dkt. 117 at 7-9.

2.  THE GOVERNMENT CONFLATES AN OFFER TO WITHDRAW WITH A GRANT OF WITHDRAWAL.

Faced with the difficult task of arguing that Ms. Petrova's application for admission was withdrawn – even though she remains in the United States and continues to be treated as an applicant for admission in her removal proceedings – the government attempts to conflate an actual grant of withdrawal with merely affording her an opportunity to request it. It asserts that "CBP… granted Petrova permission to withdraw her application for admission…, and Petrova accepted that offer." Dkt. 122 at 16. Note the tortured language used here; she was 'granted' permission to withdraw, and accepted that 'offer' – even though a 'grant' and an 'offer' are two very different things.

More importantly, the mere acceptance of an offer to withdraw is not what the regulation requires. 22 C.F.R. § 41.122(e)(3) authorizes visa cancellation only where the noncitizen "requests and *is granted* permission to withdraw" the application for admission (emphasis added). An offer by a CBP officer – and even the individual's acceptance of that offer – does not satisfy this requirement. A noncitizen's response to a question is not the same as an agency decision. The regulation requires an affirmative grant of permission by the agency – not merely an expression of willingness by the applicant. If an officer's question and an

applicant's response were sufficient, the regulatory requirement that permission be 'granted' would be meaningless.

The government's attempt to shift responsibility to Ms. Petrova for allegedly interrupting the withdrawal-of-admission process by making an "unanticipated" credible fear claim misstates both the facts and the law. *See* Dkt. 122 at 20 ("Petrova's articulation of fear adversely affected her ability to withdraw her application for admission.").

As an initial matter, Ms. Petrova's credible fear claim should not have interrupted the withdrawal process. Ms. Petrova expressly requested to return to France – the very place from which she had traveled, where she was supposed to be returned, where she had no fear of returning, and where she was authorized to enter. *See* AR 20. When, before placing her on a return flight, the CBP officer asked whether she wanted "the U.S. government to contact the Russian government to let them know [of her whereabouts]" (AR 9), Ms. Petrova's response – "no" – had nothing to do with her ability or willingness to return to France. *Id*.

Recognizing the weakness of its position, the government now attempts to recast CBP's actions as motivated by concern for Ms. Petrova's safety, suggesting that CBP could not ensure France would admit her, and that she might ultimately be returned to Russia. *See* Dkt. 122 at 20. Nothing in the record supports that claim. There is absolutely no indication that CBP declined to send Ms. Petrova to France out of any concern for her safety. To the contrary, DHS continues to seek her removal to Russia. *See* Dkt. 64 at 19:5–7 ("THE COURT: But in the immigration hearing, you are asking for her removal to Russia, correct? MR. HARTMAN: Yes, Your Honor."). The government's newfound concern for Ms. Petrova's safety is thus not only unsupported by the record, but also inconsistent with the government's litigation position. And in any event, the premise fails: France is bound by the same non-refoulement obligations as the

United States, including Article 3 of the Convention Against Torture, and could not lawfully return Ms. Petrova to Russia where she may be tortured for speaking out against the invasion of Ukraine. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment art. 3, Dec. 10, 1984, 1465 U.N.T.S. 85.

3.  CBP FAILED TO FOLLOW ITS OWN PROCEDURES AND HAS SINCE ADVANCED VARIOUS CONFLICTING THEORIES TO JUSTIFY ITS ACTIONS.

The government's latest theory behind the visa cancellation is also inconsistent with CBP's own established procedures for effectuating a withdrawal of an application for admission. The withdrawal procedures were outlined in Section 17.2(c) of the CBP's Inspector's Field Manual[3]:

> ...The alien must sign the Form I-275, acknowledging that the action is entirely voluntary. The alien should be given a copy of the I-275 and any sworn statements taken, unless the Form I-275 contains classified or sensitive information. Prepare and serve an I-259 on the appropriate carrier to effect removal. Complete the I-94, endorsing both sections with "WD - Application for Admission Withdrawn. (Stamp number), (Port), and (Date)." On the reverse of the I-94, indicate the file number, if appropriate, in Block 20. In Block 26, under Itinerary/Comments, write the grounds of inadmissibility, and "I-275 served. To be removed via (flight number) on (date)". Also include removal flight information on the front of the departure portion of the I-94. Cancel the nonimmigrant visa, and note the visa page "22 CFR 41.122(h)(3).[4]"

---

[3] As explained in Dkt. 41 at 12-13, CBP previously relied on the Inspector's Field Manual (IFM) as comprehensive guidance governing inspection and admission procedures, including withdrawal of admission. Although the IFM has since been phased out, courts continue to rely on it in the absence of any publicly available replacement guidance. *See, e.g., United States v. Flores*, 901 F.3d 1150 (9th Cir. 2018). The 2006 edition of the IFM is available at: https://www.governmentattic.org/5docs/CPB-IFM_2006.pdf (last accessed March 25, 2026).
[4] Prior to 2011, the relevant regulatory provision appeared at 22 C.F.R. § 41.122(h)(3), not (e)(3). *See* 52 Fed. Reg. 42597 (Nov. 5, 1987).

It should be noted that, although canceling the visa stamp is a step in this process, it is the eighth and last step, and there is no evidence in the record that steps 1 through 7 were ever completed. These procedures also make clear that withdrawal is not a single verbal exchange, but a structured, multi-step process *culminating* in the cancellation of the noncitizen's visa. The government asks this Court to treat a single "yes" during questioning as the legal equivalent of a multi-step withdrawal of admission process that was never even undertaken in this case.

Under the *Accardi* doctrine, Respondents are required to follow their own rules and procedures. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). By canceling Ms. Petrova's visa based on 22 C.F.R. § 41.122(e)(3) without following the required withdrawal-of-admission procedures and without even granting her request to withdraw, the CBP officer acted arbitrarily, capriciously, and otherwise not in accordance with law (5 U.S.C. § 706(2)(A)), in excess of CBP's statutory and regulatory authority (5 U.S.C. § 706(2)(C)); and without observance of procedure required by law (5 U.S.C. § 706(2)(D)).

While the government now asserts that the visa was canceled based on a purported grant of withdrawal of admission, it continues to rely on the visa cancellation itself as part of the basis for CBP's inadmissibility determination. *See* Dkt. 122 at 16 ("The CBP officer additionally advised Petrova 'Your visa will be cancelled'... Consistent with that advisal, the CBP officer identified the basis of Petrova's inadmissibility on her visa as '212(a)(7)(A)(i)(I)'"). In other words, the government's position reduces to this: the visa was canceled because Ms. Petrova was inadmissible, and she was inadmissible because she did not have a valid visa. That circular reasoning underscores the absence of any legitimate basis for CBP's actions on February 16,

2025. The record instead reflects a predetermined outcome – CBP decided to refuse Ms. Petrova's entry following her alleged failure to declare the frog embryos (*see* Dkt. 111-3 at 9: "The decision has been made. Regardless, you're not coming into the United States.") CBP then worked backward to justify that decision by invoking whatever statutory or regulatory grounds could be made to fit. But none of those *post hoc* justifications withstand scrutiny.

For the foregoing reasons, Petitioner respectfully requests that the Court declare unlawful and set aside the cancellation of her J-1 visa.

Dated: March 25, 2026                     Respectfully submitted,

/s/ *Brian Scott Green*                   /s/ *Gregory Romanovsky*\*
Brian Scott Green                          Gregory Romanovsky
Law Office of Brian Green                  Romanovsky Law Offices
9609 S University Boulevard #630084        12 Marshall Street
Highlands Ranch, CO 80130                  Boston, MA 02108
(443) 799-4225                             (617) 787-0000
                                           gr@romanovskylaw.com

                                           *\*Admitted pro hac vice*

*Attorneys for Petitioner*


### CERTIFICATE OF SERVICE

I hereby certify that the foregoing Reply in Support of Motion for Partial Summary Judgment filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated:  March 25, 2026                By:    /s/ Gregory Romanovsky
                                             Gregory Romanovsky