UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JUL 28 P 4:39

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KSENIIA PETROVA,                                )
                                                )
            Petitioner,                         )
                                                )
      v.                                        )    Case No. 2:25-cv-00240
                                                )
U.S. DEPARTMENT OF HOMELAND                     )
SECURITY; MARKWAYNE MULLIN,[1]                  )
Secretary of the U.S. Department of Homeland    )
Security, in his official capacity; THERESA     )
MESSIER, Superintendent, Chittenden             )
Regional Correctional Facility, in her official )
capacity; PETE R. FLORES, Acting                )
Commissioner, U.S. Customs and Border           )
Protection; JULIO CARAVIA, Director,            )
Boston Logan Airport Port of Entry, U.S.        )
Customs and Border Protection; PAMELA J.        )
BONDI, U.S. Attorney General; PAUL              )
CAMPBELL, Warden, Ouachita Correctional         )
Center, Monroe, LA; KEITH DEVILLE,              )
Warden, Richwood Correctional Center,           )
Monroe, LA,                                     )
                                                )
            Respondents.                        )

**ENTRY ORDER GRANTING IN PART FEDERAL RESPONDENTS'
RENEWED MOTION TO DISMISS**
(Doc. 123)

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Federal

Respondents move to dismiss Petitioner Kseniia Petrova's claim that her prosecution in

*United States v. Petrova*, 1:25-cr-10272 (D. Mass.) "was initiated for an improper

purpose" for lack of subject matter jurisdiction. (Doc. 123 at 21–22.) Petitioner opposes

---

[1] On March 24, 2026, Markwayne Mullin became the Secretary of Homeland Security. The Clerk's Office is respectfully directed to substitute him as the Respondent. *See* Fed. R. Civ. P. 25(d).

the motion, arguing that her "Due Process claims before this [c]ourt, which challenge the lawfulness of the *immigration* process Ms. Petrova was subjected to when she returned to the United States with a valid visa," are distinct from both her claim under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* (the "APA"), and her vindictive prosecution claim pending in her criminal case. (Doc. 128 at 4) (emphasis in original). Because the court has already granted Ms. Petrova all of the relief it is authorized to issue, the court agrees that dismissal of any remaining claims and a final judgment in Ms. Petrova's favor is appropriate.

## I.    Factual and Procedural Background.

Ms. Petrova, a citizen of Russia, was initially admitted to the United States with a J-1 status on May 11, 2023. On February 16, 2025, after a trip abroad, she departed from France and arrived at a port of entry in the United States at Boston Logan International Airport ("Boston Logan Airport"). Ms. Petrova presented her J-1 visa to a CBP officer. She brought with her certain inert frog embryo samples from the Curie Institute (the "frog embryo samples"). The primary inspection officer generated an I-94 Record of Admission. During primary inspection, Ms. Petrova was asked if she was traveling with biological materials and "gave a negative declaration." (Doc. 100 at 17.) A search of her checked bag during secondary inspection "resulted in the discovery of a Styrofoam container with petri dishes" and "loose vials . . . packed in Ziplock bags[]" containing the frog embryo samples. *Id.* The CBP seized the frog embryo samples from Ms. Petrova.

Following a secondary inspection, a CBP officer declared Ms. Petrova inadmissible pursuant to Immigration and Nationality Act ("INA") 212(a)(7)(A)(i)(I) "as an immigrant without a valid and unexpired immigrant document[,]" *id.* at 12, and stamped "CANCEL[]ED-BOS" and wrote "22 CFR 41.122(e)(3)" and "212(a)(7)(A)(i)(I)" on her visa. *Id.* at 23. Ms. Petrova was not permitted to leave the United States to return to France but was instead arrested, detained, and placed in removal hearings.

On February 23, 2025, Ms. Petrova filed a petition for writ of habeas corpus and complaint (the "Original Petition") for declaratory and injunctive relief with respect to

2

her detention by U.S. Immigration and Customs Enforcement ("ICE"). Ms. Petrova claimed that upon her attempt to enter the United States on February 16, 2025, U.S. Customs and Border Protection ("CBP") canceled her valid J-1 visa without legal grounds to do so and illegally detained her. Named as respondents were the U.S. Department of Homeland Security ("DHS"); then DHS Secretary Kristi Noem, in her official capacity; and Theresa Messier, superintendent of the Chittenden Regional Correctional Facility, in her official capacity (the "Original Respondents").

On May 12, 2025, the government filed a sealed criminal complaint in the District of Massachusetts charging Ms. Petrova with smuggling goods into the United States in violation of 18 U.S.C. § 545. Criminal Complaint, No. 1:25-mj-05150 (D. Mass. May 12, 2025).[2] The case was unsealed on May 14, 2025. (Doc. 72-7.)

On May 30, 2025, with leave of the court, (Docs. 59, 70), Ms. Petrova filed the First Amended Petition, (Doc. 72), which names as respondents DHS; then DHS Secretary Kristi Noem; Pete R. Flores, Acting Commissioner of CBP; Julio Caravia, Director of the Boston Logan Airport Port of Entry; then U.S. Attorney General Pamela J. Bondi (collectively, the "Federal Respondents"); Theresa Messier, superintendent of the Chittenden Regional Correctional Facility; Paul Campbell, warden of the Ouachita Correctional Center in Monroe, Louisiana; and Keith Deville, warden of the Richwood Correctional Center in Monroe, Louisiana. In her First Amended Petition, Ms. Petrova amended her claims and added a Fifth Amendment Due Process claim alleging that:

> 115. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).
>
> 116. CBP's unlawful actions in revoking Ms. Petrova's valid nonimmigrant visa and canceling her admission stamp and Form I-94 Record of

---

[2] The "prosecution of [an individual] is a matter of public record, of which [a court] take[s] judicial notice." *Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005); *see also* Fed. R. Evid. 201.

Admission without any basis in law or fact violate Ms. Petrova's right to Fifth Amendment due process.

117. In light of CBP's clearly erroneous actions at [Boston] Logan Airport on February 16, 2025, the government's decision to continue detaining Ms. Petrova for over three months—despite overwhelming evidence that she poses no danger to the community or risk of flight—violates her right to Fifth Amendment due process.

118. The government's decision to initiate criminal prosecution against Ms. Petrova to obtain leverage in her immigration case is appalling, unbecoming of the U.S. government, and violates Ms. Petrova's right to Fifth Amendment due process.

*Id.* at 23, ¶¶ 115-18.

On June 25, 2025, a grand jury in the District of Massachusetts indicted Ms. Petrova on one count of concealment of a material fact, one count of false statement, and one count of smuggling goods into the United States. Indictment, No. 1:25-cr-10272 (D. Mass. June 25, 2025). Ms. Petrova contends the "criminal charges were brought solely to gain leverage in her immigration proceedings, [as evidenced by the fact that] upon bringing the charges, the government quickly offered her a deferral of prosecution—on the condition that she abandon her immigration claims and self-deport." (Doc. 92 at 2.)

The Federal Respondents moved to dismiss the First Amended Petition on June 27, 2025. (Doc. 91.) The court granted in part and denied in part their motion, ruling, among other things, that Ms. Petrova's FOIA claims must be dismissed for lack of subject matter jurisdiction and that the court also lacked subject matter jurisdiction to declare Ms. Petrova admissible. (Doc. 95.) Ms. Petrova's surviving claims consisted of her APA and Due Process claims challenging the lawfulness of the CBP officer's revocation of her visa and the cancellation of her admission stamp. Ms. Petrova does not seek a declaration that she is admissible. The court has previously observed that Ms. Petrova has not asked the court to intervene in any criminal proceedings against her or declare that prosecution retaliatory in nature. *See* Doc. 95 at 43.

Ms. Petrova is currently subject to immigration removal proceedings. On February 20, 2026, the Boston Immigration Court denied Ms. Petrova's request to be admitted on

J-1 status, finding Ms. Petrova was not admissible because her visa had been canceled by the CBP officer.

On March 6, 2026, Ms. Petrova moved for partial summary judgment in this court "on a narrow, purely legal issue [of] whether CBP had lawful authority to cancel [her] visa under 22 C.F.R. § 41.122(e)(3)." (Doc. 117 at 1.) On April 7, 2026, finding that the "undisputed facts reveal that Ms. Petrova's visa was impermissibly canceled because of [an alleged customs violation] and for no other reason[]" and that she "was not granted permission to" withdraw her application for admission, this court granted Ms. Petrova's motion for partial summary judgment. (Doc. 125 at 20.)

The court issued a declaratory judgment, declaring that the cancellation of Ms. Petrova's J-1 visa was arbitrary and capricious; was not in accordance with law; was in excess of CBP's statutory jurisdiction, authority, or limitations; and was without observance of procedure required by law. It further declared that Ms. Petrova's J-1 visa was not lawfully canceled or revoked as of February 16, 2025, and set aside its improper revocation.

Ms. Petrova filed a renewed motion for admission on April 8, 2026, asking the immigration judge ("IJ") to issue a new decision before the expiration of her J-1 visa on April 26, 2026. DHS opposed the renewed motion for admission, arguing that:

> The [Vermont] District Court order is not a final decision. The order is dated April 7, 2026 and notice of appeal is due within 60 days after entry of the judgement or order. Fed. R. Civ. P. 4(a)(1)(B). Further, [CBP] has not admitted [Ms. Petrova] and the Immigration Judge previously sustained removability.

(Doc. 128-2 at 2.) The IJ scheduled a hearing for May 7, 2026. On April 20, 2026, Ms. Petrova filed a petition with the district court for the District of Massachusetts seeking a Writ of Mandamus to compel the IJ to rule on her admissibility, which the District of Massachusetts granted on April 24, 2026. That same day, the IJ denied Ms. Petrova's motion for admission, explaining that:

> The [c]ourt finds that it does not have the authority to admit [Ms. Petrova] to the United States as a non-immigrant. During these removal proceedings,

neither party nor the [c]ourt has identified any legal authority that permits an [IJ] to take such action.

As noted in the [c]ourt's written decision of February 20, 2026, the [c]ourt does have the authority to grant a waiver pursuant to INA § 212(d)(4) but only after that waiver application has first been denied by the District Director. However, [Ms. Petrova's] motion does not allege that the District Director has denied such a waiver. Accordingly, the [c]ourt does not have the authority to review that denial.

(Doc. 128-4 at 1.) Ms. Petrova subsequently filed an emergency motion for reconsideration, which the IJ denied. The IJ denied the motion to reconsider for the following reasons:

The Court denies the Motion to Reconsider on two grounds. 1) The motion is numerically barred and 2) While [Ms. Petrova] has provided the District Court's declaration that the improper revocation of [her] J-1 visa was set aside, [she] has not provided sufficient evidence to this Court of a valid visa that has been reinstated by either the Department of State or U.S. Customs and Border Protection (CBP). Thus, the Court finds that [Ms. Petrova] remains removable pursuant to 212(a)(7)(A)(i)(I) of the Act.

(Doc. 130-1 at 1.) Ms. Petrova has remained within the United States since February 16, 2025, and is subject to conditions of release issued by the District of Massachusetts.

Petitioner is represented by Gregory Romanovsky, Esq. Respondent Messier is represented by Debbie H. Stevens, Esq. The Federal Respondents are represented by Jeffrey M. Hartman, Esq., and Assistant United States Attorney Matthew J. Greer.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

A "district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "'The party invoking federal jurisdiction bears the burden of establishing' that jurisdiction exists." *Sharkey v. Quarantillo*, 541 F.3d 75, 82-83 (2d Cir. 2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the district court must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal quotation marks and citation omitted). When considering a Rule 12(b)(1) motion, "a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

### B.    Whether Ms. Petrova's Due Process Claim is Fully Subsumed by Her APA Claim.

The court has adjudicated Ms. Petrova's APA claim in her favor.[3] She has been released so habeas corpus relief is no longer available.[4] She concedes that the court has no authority to review the criminal proceedings against her,[5] no authority to declare her admissible,[6] and no authority under the Due Process Clause to grant her immigration protections not authorized by Congress.[7]

---

[3] *See* Doc. 125 at 20 (holding that the cancellation of Ms. Petrova's J-1 visa violated the APA).

[4] *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107, 118 (2020) (observing that "[h]abeas has traditionally been a means to secure *release* from unlawful detention[]" and denying the request to vacate a removal order and grant a new opportunity to seek asylum as "relief [that] falls outside the scope of the common-law habeas writ[]") (emphasis in original); *see also Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973) (explaining that "the traditional purpose of habeas corpus" is to seek "immediate or more speedy release" from custody and that "habeas corpus is not an appropriate or available federal remedy" for damages claims).

[5] *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

[6] "The power to admit or exclude aliens is a sovereign prerogative," and "the Constitution gives the political department of the government plenary authority to decide which aliens to admit[.]" *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks and citations omitted); *see also Trump v. Hawaii*, 585 U.S. 667, 695 (2018) ("As every visa application explains, a visa does not entitle an alien to enter the United States 'if, upon arrival,' an immigration officer determines that the applicant is 'inadmissible under this chapter, or any other provision of law[.]'").

[7] "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *see also Guzman v. Tippy*, 130 F.3d 64, 65 (2d Cir. 1997) ("An excluded alien's rights are determined by the procedures established by Congress and not by the due process protections of the Fifth Amendment."); *Correa v. Thornburgh*, 901 F.2d 1166, 1171 n.5 (2d Cir. 1990) ("Other than

The Federal Respondents assert, "[c]onsequently, the only remaining issue is whether [Ms.] Petrova raises an independent due process claim within this [c]ourt's jurisdiction to address." (Doc. 129 at 7.) They argue that Ms. Petrova's Due Process claim is "fully subsumed[,]" (Doc. 123 at 17), by her APA claim because she does not seek any relief "through the due process clause that the [c]ourt's [April 7, 2026] APA decision does not already provide." (Doc. 129 at 10.) Ms. Petrova counters that the Federal Respondents mischaracterize her Due Process claim which is "concrete, grounded in the record,"[8] and concerns her *"immigration* Due Process rights[.]" (Doc. 128 at 5) (emphasis in original).[9] She argues that her Due Process claim seeks "different remedies" than her APA claim, although she does not describe those "different remedies," nor does she address why proceedings in this case would not be wholly duplicative of those in the District of Massachusetts in light of that court's Writ of Mandamus directing the immigration court to act on her claim that she is admissible. *Id.*

The Federal Respondents rely on *Califano v. Yamasaki*, in which the Supreme Court opined that "[a] court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering

---

protection against gross physical abuse, the alien seeking initial entry appears to have little or no constitutional due process protection.") (compiling cases). Ms. Petrova's prior entries into the United States do not alter this conclusion. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 213 (1953) ("For purposes of the immigration laws, moreover, the legal incidents of an alien's entry remain unaltered whether he [or she] has been here once before or not. He [or she] is an entering alien just the same, and may be excluded if unqualified for admission under existing immigration laws.").

[8] Ms. Petrova describes her immigration proceedings as "distorted by retaliatory and coercive government conduct in violation of Due Process." (Doc. 128 at 7.) She does not, however, cite authority for a claim before a habeas court on this basis when the petitioner has been released.

[9] As characterized by Ms. Petrova, "[a] vindictive prosecution claim challenges the motives and actions of the prosecutor, whereas an immigration Due Process claim challenges the fairness of the immigration process afforded to the noncitizen, and an APA claim seeks to set aside unlawful acts of immigration officials." *Id.* at 6. Any challenge to the fairness of removal proceedings must be brought in a federal court of appeals. *See Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) (noting that jurisdiction to hear constitutional challenges to removal proceedings "is vested exclusively in the courts of appeals").

the constitutional question." 442 U.S. 682, 692 (1979). The principle that a court should resolve a case on statutory rather than constitutional grounds when possible is not the same concept as one claim being subsumed by another. Courts retain discretion to consider multiple theories for relief[10] and to dismiss a claim as duplicative.[11] However, in light of Ms. Petrova's failure to articulate the relief she seeks under the Fifth Amendment that has not already been provided, Ms. Petrova's Due Process claim is fully subsumed by her APA claim. She cites no authority to the contrary, nor does she explain how this court has the authority to oversee her immigration proceedings. *See Mahdawi v. Trump*, 2026 WL 2090981, at *13 (2d Cir. July 21, 2026) (ruling that constitutional issues intertwined in the removability determination must be heard by an immigration judge and appealed to a Circuit Court of Appeals). The recent Writ of Mandamus issued by the District of Massachusetts and its oversight of Ms. Petrova's vindictive prosecution claim and challenge to her removal proceedings renders further action by this court duplicative and unnecessary.

In summary, because Ms. Petrova is actively litigating her vindictive prosecution claim in the District of Massachusetts where her criminal case is pending, the court lacks subject matter jurisdiction over that claim. Challenges to the fairness of her immigration proceedings must proceed in a federal Court of Appeal. *See Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008). The Federal Respondents' renewed motion to dismiss, to the

---

[10] *See, e.g., Caceres v. Joyce*, 813 F. Supp. 3d 407, 419 (S.D.N.Y. 2025) (denying government's motion to dismiss plaintiff's Fifth Amendment and APA claims, finding the Fifth Amendment claim had been adequately pleaded based on allegations of prolonged detention and the APA claim based on allegations that ICE did not "follow its policy favoring release of noncitizens following a grant of fear-based relief[]").

[11] *See, e.g., Janfeshan v. U.S. Customs and Border Prot.*, 2017 WL 3972461, at *12 (E.D.N.Y. Aug. 21, 2017) (dismissing APA claims as duplicative of adequately pleaded Fifth Amendment claim and observing that "the *only* effect of bringing a claim under the APA's generic cause of action would be to substantially narrow the scope of this court's review to only those actions properly deemed 'final' under § 704.") (emphasis in original) (alterations adopted) (internal quotation marks and citation omitted).

extent it seeks the dismissal of the final outstanding claim in this action,[12] is therefore GRANTED.

## CONCLUSION

For the foregoing reasons, the Federal Respondents' renewed motion to dismiss is GRANTED IN PART. (Doc. 123.) The court directs the Clerk of Court to enter a final judgment in Ms. Petrova's favor on her APA claim.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 28th day of July, 2026.

Christina Reiss, Chief Judge
United States District Court

---

[12] Because the renewed motion to dismiss contains arguments seeking dismissal of claims that have been adjudicated, including claims adjudicated in Ms. Petrova's favor, the court does not grant the motion to dismiss in full.

10