**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| **KSENIIA PETROVA,** | ) |
| Petitioner, | ) |
| v. | ) Case No. 2:25-cv-00240-CR |
| **U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,** | ) |
| Respondents. | ) |

**<u>PETITIONER'S MOTION FOR ATTORNEY'S FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT</u>**

## TABLE OF CONTENTS

I. INTRODUCTION 3

II. STATEMENT OF RELEVANT FACTS AND CASE 4

III. ARGUMENT 6

1. PETITIONER IS A PREVAILING PARTY 6

2. THE GOVERNMENT'S POSITION WAS NOT SUBSTANTIALLY JUSTIFIED 7

**A. The inquiry includes the agency action and its defense in court.** 7

**B. The government's pre-litigation position was not substantially justified.** 7

**C. The government's litigation position was not substantially justified.** 8

3. CALCULATION OF FEES AND EXPENSES 11

**A. Adjusted statutory rate** 11

**B. Enhanced rate** 12

IV. CONCLUSION 13

CERTIFICATE OF SERVICE 14

## I. INTRODUCTION

Petitioner, through counsel, seeks attorney's fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), for time reasonably spent challenging the government's unlawful cancellation of her J-1 visa and the detention that followed. All EAJA requirements have been satisfied:

(1) Having obtained an order releasing her on immigration bail (Dkt. 70) and a final judgment in her favor on her Administrative Procedure Act ("APA") claim (Dkts. 125, 132), Ms. Petrova clearly prevailed in this litigation.

(2) Neither the government's pre-litigation position nor its litigation position was substantially justified.

(3) Petitioner's contemporaneously filed net-worth declaration (**Exhibit A**) establishes eligibility under the $2 million ceiling as of February 23, 2025, the date this litigation was commenced. 28 U.S.C. § 2412(d)(2)(B).

(4) No special circumstances make an award unjust.

This application is timely. Judgment entered on July 30, 2026. Dkt. 132. The sixty-day appeal period expired on September 28, 2026. Fed. R. App. P. 4(a)(1)(B). EAJA permits an application within thirty days after the judgment becomes final and unappealable. 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G); *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991). This motion is therefore timely.

Petitioner requests an award of attorney's fees and expenses in the amount of $244,575.00, together with reasonable additional fees incurred litigating this application. *Commissioner, INS v. Jean*, 496 U.S. 154, 158-63 (1990).

## II. STATEMENT OF RELEVANT FACTS AND CASE

Had CBP at Logan International Airport followed its own procedures and not improperly invoked immigration penalties for an alleged customs infraction, this case would never have existed. Had CBP not unlawfully canceled Ms. Petrova's visa, she would not have spent nearly three months in immigration detention. And, as the developing criminal record now strongly suggests, she would not have faced criminal charges either. The criminal complaint was filed under seal as this habeas case approached a bail hearing and unsealed within hours of this Court's May 14 hearing. The subsequent rulings authorizing discovery into selective and vindictive prosecution further support the conclusion that the criminal case was part of the government's response to Ms. Petrova's successful challenge to CBP's unlawful conduct. *See United States v. Petrova*, No. 1:25-cr-10272-LTS, Dkts. 55, 86 (D. Mass.)

Ms. Petrova, a research scientist affiliated with Harvard University, returned to Boston from France on February 16, 2025, presenting a valid J-1 visa. Following secondary inspection, a Customs and Border Protection ("CBP") officer discovered inert frog embryo samples in Ms. Petrova's luggage, which the officer believed to be undeclared biological material. Instead of following the applicable customs procedures, the CBP officer chose to impose an immigration penalty by canceling Ms. Petrova's visa. As this Court has stated: "[t]he undisputed facts reveal that Ms. Petrova's visa was impermissibly canceled because of the frog embryo samples and for no other reason." Dkt. 125 at 20.

An alleged failure to declare an item is not among the permissible grounds for canceling a visa at the time of arrival. *See* 22 C.F.R. § 41.122(e). Although the officer cited § 41.122(e)(3), that provision was plainly inapplicable. It permits cancellation only where the noncitizen "requests and is granted permission to withdraw the application for admission." As the record

reflects, however, "Ms. Petrova was not permitted to leave the United States to return to France but was instead arrested, detained, and placed in removal hearings before being criminally prosecuted by the federal government in the District of Massachusetts…" Dkt. 125 at 8.

When the Immigration Judge ("IJ") presiding over Ms. Petrova's removal proceedings denied her request for admission on February 20, 2026, he did so solely because CBP had canceled her J-1 visa and because he lacked "the authority to make a finding on the legality of CBP Officer's actions." *See* Dkt. 117-1.

This Court resolved that very issue on April 7, 2026. It declared that CBP's cancellation of Ms. Petrova's visa was unlawful and set it aside. Within a day, Ms. Petrova filed a renewed motion for admission, asking the IJ to issue a decision consistent with this Court's ruling before the visa's April 26 expiration. DHS opposed the renewed motion in five lines, asserting – without authority – that this Court's April 7 Order was not final. DHS identified no alternative ground of inadmissibility and offered no reason why this Court's order setting aside the cancellation did not resolve the only admissibility issue DHS or the immigration court had ever identified. Dkt. 128-2.

It took a mandamus action in the District of Massachusetts (*Petrova v. Blanche*, No. 1:26-cv-11825-WGY (D. Mass. Apr. 24, 2026)) to compel the IJ to rule on Ms. Petrova's renewed motion for admission. When the IJ finally ruled on the motion, he did not recognize this Court's order as restoring the validity of Ms. Petrova's visa: "While the R[espondent] has provided the District Court's declaration that the improper revocation of the R's J-1 visa was set aside, the R has not provided sufficient evidence to this Court of a valid visa that has been reinstated by either the Department of State or U.S. Customs and Border Protection (CBP). Thus, the Court finds that the R remains removable pursuant to 212(a)(7)(A)(i)(I) of the Act."

Dkt. 130-1. The IJ clearly erred in this ruling; since this Court set aside the visa cancellation, the visa was never revoked, and need not be "reinstated."

## III. ARGUMENT

1. PETITIONER IS A PREVAILING PARTY

A prevailing party obtains a judicially sanctioned material alteration of the parties' legal relationship. *See Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 604-05 (2001). Ms. Petrova obtained a merits judgment invalidating the agency act that purported to cancel her visa. Dkt. 132 ("JUDGMENT is entered for petitioner Kseniia Petrova on her APA claim, against respondents…"). The Court declared the cancellation arbitrary and capricious, contrary to law, beyond CBP's authority, and procedurally unlawful. Dkt. 125 at 20. Ms. Petrova's APA claim was therefore conclusively resolved through enduring merits relief.

Petitioner also obtained separately enforceable habeas relief. On May 29, 2025, the Court ordered Ms. Petrova released on immigration bail pursuant to its inherent authority under *Mapp v. Reno*, 241 F.3d 221, 231 (2d Cir. 2001). Under *Mapp*, immigration bail is available only where the petitioner raises substantial claims, and extraordinary circumstances make release necessary to render habeas relief effective. *Id*. The Court granted that relief here.

The Court also entered binding conditions of Ms. Petrova's release and required the government to provide twenty-four hours' notice before any immigration re-detention. Dkt. 89 at 1-2. These court orders and the subsequent APA judgment materially altered the parties' legal relationship; there was no voluntary change in government conduct.

Petitioner thus prevailed on both the APA claim and her request for release from immigration detention.

2. THE GOVERNMENT'S POSITION WAS NOT SUBSTANTIALLY JUSTIFIED

**A. The inquiry includes the agency action and its defense in court.**

The government bears the burden of substantial justification: "a reasonable basis both in law and in fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007). "When assessing the 'position of the United States,' [the court] reviews both 'the position taken by the United States in the civil action, [and] the action or failure to act by the agency upon which the civil action is based.'" *Ericksson v. Commr. of Soc. Sec.*, 557 F.3d 79, 82 (2d Cir. 2009) (quoting 28 U.S.C. § 2412(d)(2)(D)). "[I]t is well-established that the Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not substantially justified." *Healey*, 485 F.3d at 67 (citation and internal quotation marks omitted).

**B. The government's pre-litigation position was not substantially justified.**

The government cannot meet its burden to show that its pre-litigation conduct was substantially justified.

The record demonstrates that CBP did not follow its own procedures in addressing Ms. Petrova's alleged failure to declare the research samples. Instead, it decided to punish Ms. Petrova by canceling her visa: "The undisputed facts reveal that Ms. Petrova's visa was impermissibly canceled because of the frog embryo samples and for no other reason." Dkt. 125 at 20. To justify the visa cancellation, the officer cited § 41.122(e)(3), a provision that allows a CBP officer to cancel a valid visa only when the noncitizen "requests and is granted permission to withdraw the application for admission." As the record reflects, however, Ms. Petrova was not permitted to withdraw her application for admission, "but was instead arrested, detained, and placed in removal hearings…" Dkt. 125 at 8.

As the record now demonstrates, the Form I-867A, Record of Sworn Statement, prepared by the CBP officer during Ms. Petrova's encounter, omits critical information**.** As this Court observed:

> Absent from the Form I-867A, but acknowledged by the Federal Respondents in their opposition, is Ms. Petrova's request that she "return to Paris, France, from whence her journey originated."… Also absent from the Form I-867A, but reflected in a transcript of the recording of Ms. Petrova's encounter with CBP, is the CBP officer, after asking Ms. Petrova if she would like to withdraw her application, advising her: "The decision has been made. Regardless, you're not coming into the United States." (Doc. 111-3 at 9.)

Dkt. 125 at 8.

The form also omits the exchange in which the CBP officer accused Ms. Petrova of lying. In the Form I-867A the officer asserts that she had already seen the video recording of the primary inspection officer allegedly asking Ms. Petrova about biological material; in fact, the primary-inspection video confirms that no such question was ever asked of Ms. Petrova. *See* Dkt. 111-3 at 5.

Against that record, the government cannot show that its pre-litigation conduct was substantially justified; it lacked any reasonable basis in law or fact.

**C. The government's litigation position was not substantially justified.**

While an unjustified pre-litigation stance alone can be the basis for an award under the EAJA (*Healey*, 485 F.3d at 67) the government's litigation conduct only compounded its unjustified behavior. Although Ms. Petrova's detention was premised on CBP conduct that was plainly unlawful, the government continued to insist that her detention was lawful – or, alternatively, that this Court lacked jurisdiction to review it, no matter how unlawful the underlying conduct.

The case began with the government's assertion that Ms. Petrova was subject to expedited removal. *See* Dkt. 24 at 1. When undersigned counsel requested a copy of the purported expedited-removal paperwork, CBP refused to provide it. *See* Dkt. 1-6. The government later conceded that no expedited-removal order had ever issued. *See* Dkt. 95 at 25. Rather than acknowledge that the premise for Ms. Petrova's immigration detention did not exist, the government placed her in regular removal proceedings and argued that those proceedings insulated the underlying CBP conduct from review. Dkt. 24 at 2.

As Ms. Petrova's habeas challenge proceeded toward a bail hearing, the government filed a sealed criminal complaint against her on May 12, 2025. It unsealed the complaint on May 14, within hours of this Court's hearing concerning Ms. Petrova's detention. The government then removed Ms. Petrova from immigration custody, and transferred her to criminal custody. Dkts. 64, 72-7, 72-9. Later rulings in the criminal court proceedings authorizing selective- and vindictive-prosecution discovery in the District of Massachusetts confirm that this chronology warranted inquiry into whether the criminal case was part of the government's response to Ms. Petrova's challenge to CBP's conduct. *See United States v. Petrova*, No. 1:25-cr-10272-LTS, Dkt. 86 at 5-8 (D. Mass.). And, as if to confirm Petrova's claim that criminal charges were brought solely to gain leverage in her immigration proceedings, upon bringing the charges, the government quickly offered her a deferral of prosecution – on the condition that she abandon her immigration claims and self-deport. *See* Dkt. 92-2, ¶5.

The government then defended Ms. Petrova's detention and visa cancellation on a different theory: that she had withdrawn her application for admission. At the same time, it filed an administrative record that omitted Form I-275 – the document supposedly establishing that

she had withdrawn her request to be admitted. Only after the parties litigated the record's completeness and this Court ordered the government to produce identified missing documents or state that they did not exist, did the government produce the form. Dkt. 112; Dkt. 115 at 4-7. That document contradicted the government's defense. It marked Ms. Petrova's visa as canceled, but left unchecked the box stating that her application for admission had been withdrawn. Dkt. 115 at 4. The portion of the form to be completed when an application is withdrawn was blank, undated, and unsigned. *Id*. at 5. The government nevertheless continued to defend the visa cancellation on the theory that Ms. Petrova had withdrawn her application, even though she was not permitted to return to France and was instead arrested, detained, and placed in removal proceedings. Dkt. 125 at 8, 17-20.

When this Court held that CBP's cancellation of Ms. Petrova's visa was arbitrary and capricious, contrary to law, beyond CBP's authority, and procedurally unlawful, it set the cancellation aside. The government nevertheless refused to recognize the consequence of that ruling. When Ms. Petrova asked the IJ presiding over her removal proceedings to admit her after this Court had set aside CBP's cancellation of her J-1 visa, DHS opposed, asserting without authority that this Court's order was not final. Dkt. 128-2. Ms. Petrova then had to bring a separate mandamus action to compel the IJ to rule. And when the IJ finally did so, he treated the unlawful cancellation as controlling unless CBP or the Department of State independently "reinstated" the visa – despite this Court's unambiguous order setting the cancellation aside. Dkt. 130-1. This was not a close question or a reasonable defense of an uncertain record. At every stage, the government defended a position that its own documents and the governing regulation (22 C.F.R. § 41.122(e)) could not support.

3. CALCULATION OF FEES AND EXPENSES

Petitioner submits an itemized statement specifying the dates, tasks, and hours for Attorney Gregory Romanovsky's work on this action.[1] It represents a full and specific accounting of the tasks performed by Attorney Romanovsky, and includes "the date of performance, and the number of hours spent on each task." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 527 (1st Cir. 1991); 28 U.S.C. § 2412(d)(1)(B). A portion of the fee request represents time spent preparing this fee application. These fees are also reimbursable. *See Commissioner, INS v. Jean*, 496 U.S. 154 (1990).

**A. Adjusted statutory rate**

The statutory rate is $125 per hour, subject to a supported cost-of-living adjustment or special factor. 28 U.S.C. § 2412(d)(2)(A)(ii), *see also Castaneda-Castillo v. Holder*, 723 F.3d 48, 76 (1st Cir. 2013) (quoting *Sierra Club v. Sec'y of Army*, 820 F.2d 513, 523 (1st Cir. 1987) ("[F]ederal courts remain able to augment hourly rates by considering changes in the cost of living . . ."). The inflation adjustment requires an inquiry into the cost-of-living increase since March 1996, when the EAJA was last amended and the statutory rate was changed from $75/hr to $125/hr. *Id.* The statutory cap is adjusted by the change in the Consumer Price Index for Urban Consumers ("CPI-U") using the appropriate regional category of Boston-Cambridge-Newton. *Id.* (using the regional CPI-U to calculate the cost-of-living adjustment). The CPI-U for Boston-Cambridge-Newton in 1996 was 162.8. Petitioner's counsel performed the recoverable legal work in 2025 and 2026. The CPI-U for these years was 346.89 and 359.71, respectively. *See* **Exhibit C**. To calculate the adjusted rate for each year, one divides each of these numbers by 162.8 and multiplies the results by $125, to arrive at the EAJA's statutory cap for each of the relevant years, adjusted for inflation. *Id.* According to this formula,

---

[1] A summary of the hours and rates for which compensation is requested is attached as **Exhibit B**.

Petitioner is eligible to recover fees at the following rates: $266.35 for work completed in 2025, and $276.19 for work completed in 2026.

**B. Enhanced rate**

The EAJA also provides that the maximum statutory rate may be increased in light of the "limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A)(ii). The Supreme Court has interpreted this provision to permit market-rate awards where the litigation required "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question." *Pierce*, 487 U.S. at 572. Courts often find enhanced fees appropriate in complex immigration cases. *See, e.g., Nadarajah v. Holder, 569 F.3d 906*, 914 (9th Cir. 2009) (holding enhanced rates were appropriate because the "case involved more than established principles of [immigration] law with which the majority of attorneys are familiar"); *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004) (noting "immigration lawyers are not ipso facto entitled to fees above the statutory ceiling" but finding immigration expertise, "such as knowledge of …esoteric nooks and crannies of immigration law," warrants a special factor rate adjustment when sufficient evidence is presented); *Rueda-Menicucci v. Immigration Naturalization Serv*., 132 F.3d 493, 496 (9th Cir. 1997) (stating that "a specialty in immigration law could be a special factor warranting an enhancement of the statutory rate" if it were necessary to the litigation); *Douglas v. Baker*, 809 F. Supp. 131, 135 & n.7 (D.D.C. 1992) (awarding enhanced EAJA rate based, in part, on attorney's extensive experience in immigration law).

Attorney Romanovsky has previously been awarded attorney's fees at market rates. *See, e.g.*, *Thompson v. Barr*, 959 F.3d 476, 490 (1st Cir. 2020); *Perez-Trujillo v. Garland*, 84 F.4th 37 (1st Cir. 2023), *Badose v. Garland*, 125 F.4th 1 (1st Cir. 2024). Ms. Petrova's case was anything but ordinary. This Court has observed that "what happened in this case was extraordinary and novel." Dkt. 11-2 at

63-64. As stated in the accompanying declaration of Attorney Harvey Kaplan – an immigration litigator with decades of federal court experience – "that combination of emergency federal-court litigation, specialized immigration law, administrative-law analysis, and factual development requires uncommon judgment and skill." **Exhibit D**.

Attorney Romanovsky has been practicing immigration law for more than 25 years and possesses the distinctive and complex knowledge and specialized skill required for the successful resolution of this case. The rate sought for Attorney Romanovsky's work ($750.00 per hour) is within the range of fees previously awarded to lawyers with comparable levels of experience in immigration cases around the country. *See, e.g., Cantero Garcia v. Wamsley,* No. 2:25-cv-02092, Dkt. 38 at 13 (W.D. Wash. May 21, 2026) (finding that petitioners were entitled to an award of attorney's fees at market rates based on the "limited availability of qualified attorneys for the proceedings involved" and finding the lead attorney's hourly rate of $900.00 reasonable).

## IV. CONCLUSION

The government lacked a reasonable basis for canceling Ms. Petrova's visa and detaining her for several months. Petitioner secured her release and obtained a final judgment setting aside the visa cancellation. She should recover the reasonable cost of litigating this matter under 28 U.S.C. § 2412(d).

Dated: October 28, 2026

Respectfully submitted,

/s/ *Brian Scott Green*
Brian Scott Green
Law Office of Brian Green
9609 S University Boulevard #630084
Highlands Ranch, CO 80130
(443) 799-4225

/s/ *Gregory Romanovsky**
Gregory Romanovsky
Romanovsky Law Offices
12 Marshall Street
Boston, MA 02108
(617) 787-0000
gr@romanovskylaw.com

**Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I, Gregory Romanovsky, certify that on October 28, 2026, the foregoing motion was filed through CM/ECF, which will provide electronic notice to registered counsel of record.

Dated: October 28, 2026 By: /s/ Gregory Romanovsky
Gregory Romanovsky